Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

United States Courts
Southern District of Texas
**F I L E D**

for the

Southern District of Texas ☐ ▾

**DEC 27 2021**

Houston Division

Nathan Ochsner, Clerk of Court

|  |  |
|---|---|
| Neiman Nix | Case No. _____ |
| _____ | *(to be filled in by the Clerk's Office)* |
| Plaintiff(s) | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* ☑ Yes ☐ No |
| **-v-** | |
| Major League Baseball, Office of the Commissioner of Baseball; Robert D. Manfred Jr.; Major League Baseball Players Association; see attached | |
| _____ | |
| Defendant(s) | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Neiman Nix |
| Street Address | 25560 Ramrock Dr. |
| City and County | Porter (Montgomery County) |
| State and Zip Code | TX 77365 |
| Telephone Number | 813-992-0788 |
| E-mail Address | NNix9779@yahoo.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1**

Name      see attached, Pages 7 -14

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

**Defendant No. 2**

Name      see attached

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

**Defendant No. 3**

Name      see attached

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

**Defendant No. 4**

Name      see attached

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✔] Federal question          [✔] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
CIVIL RICO 18 U.S.C. § 1962 (d) (Federal Question); False and misleading representations in advertising in violation of section 43(a)(1)(B) of the Trademark Act of July 5, 1946, as amended (the Lanham Act), 15 U.S.C. §1125(a)(1)(B) (supplemental jurisdiction); Fraud; Defamation; Aiding and Abetting; Vicarious Liability; Tortious Interference; Unjust Enrichment; and Mental Anguish.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

        The plaintiff, *(name)*  Neiman Nix                    , is a citizen of the State of *(name)*  Texas                    .

    b.    If the plaintiff is a corporation

        The plaintiff, *(name)*                    , is incorporated under the laws of the State of *(name)*                    , and has its principal place of business in the State of *(name)*

                            .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

        The defendant, *(name)*  Robert D. Manfred Jr.            , is a citizen of the State of *(name)*  New York                . Or is a citizen of *(foreign nation)*

b.    If the defendant is a corporation

The defendant, *(name)* ___Major League Baseball, Office of Commi___ , is incorporated under
the laws of the State of *(name)* ___New York (unincorporated)___ , and has its
principal place of business in the State of *(name)* ___New York___ .
Or is incorporated under the laws of *(foreign nation)* _____ ,
and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the
same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at
stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:
Defendants have collectively engaged in a fraudulent scheme in an attempt to portray Plaintiff
as a 'PED producer' and/or seller of banned performance-enhancing substances. Defendants
greatly benefit from the exact same substance that is a natural animal derived growth factor like
insulin (IGF-1), which allows each party to profit millions, if not billions of dollars in revenue
annually, while unfairly eliminating Plaintiff from the same market within Major League Baseball.

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the
facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was
involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including
the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and
write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See Attached Pages 15-99

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal
arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include
the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any
punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or
punitive money damages.

See Attached Pages 99-100

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            12/27/2021

Signature of Plaintiff

Printed Name of Plaintiff        Neiman Nix  (Pro Se Plaintiff)

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

## Introduction:

All 30 Major League Baseball Clubs and MLB's Commissioner's Office, under the misguided direction of Defendant/Commissioner Robert D. Manfred Jr., have claimed to ban the natural growth factor that is like insulin, also called IGF-1. Plaintiff, former pro pitcher Neiman Nix, takes the obvious position that MLB and MLBPA do not truly ban natural IGF-1 at all, as they have never suspended a single player for such use and selectively enforce the ban against Plaintiff and his company.

In the event that MLB Commissioner's Office does not immediately suspend all related MLB players/employees for use, endorsement, participating in distribution, and/or being part of a sale of any related animal derived product (all of which naturally contain bio-available IGF-1), then Commissioner Manfred, MLB, MLBPA, The MLB Clubs, The AP, and ESPN, among others are lying about natural IGF-1 being banned in baseball. This should immediately lead to the removal of all parties in leadership roles in the Commissioner's Office along with MLBPA executives who have participated in this fraudulent scheme against Plaintiff and in committing multiple violations of fraud on United States Courts, the media, and the general public.

### Table of Contents:

I. The Parties to This Complaint 7
    A. The Plaintiff    7
    B. The Defendants    7
II. Basis for Jurisdiction    3
III. Statement of Claim    15
    A. Causes of Action 1-9   80
IV. Relief    99
V. Certification and Closing    5

## I. The Parties to This Complaint:

### Plaintiff:

1.      Neiman Nix ("Nix" or "Plaintiff")

25560 Ramrock Dr.  Porter, TX 77365  813-992-0788

Citizen of State of Texas.

### Defendants:

2.      Major League Baseball, Office of the Commissioner of Baseball (DBA "MLB")

1271 Avenue of the Americas  New York, NY 10020 212-931-7800

MLB is an unincorporated associated with its principle place of business in New York, NY;

whose members are 30 separately owned and operated, and economically distinct, baseball

Clubs in the United States and Canada.

3.      Robert D. Manfred Jr. ("Manfred")

1271 Avenue of the Americas  New York, NY 10020  212-931-7800

Citizen of State of New York.

4.      Major League Baseball Players Association ("MLBPA")

12 East 49th Street, 24th Floor  New York, NY 10017  212-826-0808

MLBPA is an unincorporated association based in NY.

### "MLB Club" Defendants (5-34)

5.      Angels Baseball LP; ("Angels")

2000 Gene Autry Way  Anaheim, CA 92806  714-940-2000

Upon information and belief, incorporated in California.

6.      Athletics Investment Group LLC d/b/a Oakland Athletics Baseball Company
("Athletics")

7000 Coliseum Way  Oakland, CA 94621  510-638-4900

Athletics Investment Group LLC is wholly owned by Athletics Holdings LLC, which is a
Delaware limited liability company.

7.      AZPB Limited Partnership ("Diamondbacks")

401 East Jefferson Street  Phoenix, AZ 85004  602-462-6500

AZPB Limited Partnership is a Delaware limited partnership.

8.      Baltimore Orioles Limited Partnership ("Orioles")

333 West Camden Street  Baltimore, MD 21201  401-685-9800

The general partner of Baltimore Orioles Limited Partnership is Baltimore Orioles, Inc., which
is a Maryland corporation.

9.      The Baseball Club of Seattle, LLLP ("Mariners")

P.O. Box 4100  Seattle, WA 98104  206-346-4000

The managing general partner of The Baseball Club of Seattle, LLLP is Mariners Baseball
LLC, which is a Washington limited liability company.

10.     Boston Red Sox Baseball Club Limited Partnership ("Red Sox")

4 Jersey Street  Boston, MA 02215  617-267-9440

The general partner of The Boston Red Sox Baseball Club Limited Partnership is NESV, LLC,
which is a Delaware limited liability company.

11.     Chicago Cubs Baseball Club, LLC ("Cubs")

8

1060 West Addison  Chicago, IL 60613-4397  773-404-2827

Chicago Cubs Baseball Club, LLC is wholly owned by Chicago Baseball Holdings, LLC, which

is a Delaware limited liability company.

    12.    Chicago White Sox, Ltd ("White Sox")

333 West 35th Street  Chicago, IL 60616  312-674-1000

The general partner of Chicago White Sox, Ltd. is Chisox Corporation, which is Delaware

corporation.

    13.    Cleveland Guardians Baseball Company, LLC

2401 Ontario Street  Cleveland, OH 44115  216-420-4200

Upon information and belief, incorporated in OH.

    14.    Colorado Rockies Baseball Club, Ltd. ("Rockies")

2001 Blake Street  Denver, CO 80205-2000  303-292-0200

The general partner of Colorado Rockies Baseball Club Ltd. is Colorado Baseball 1993, Inc.,

which is a Colorado corporation.

    15.    Detroit Tigers, Inc. ("Tigers")

2100 Woodward Avenue  Detroit, MI 48201  313-471-2000

Upon information and belief, incorporated in MI.

    16.    Houston Astros, LLC ("Astros")

501 Crawford Street  Houston, TX 77002  713-259-8000

Houston Astros, LLC is wholly owned by HBP Team Holdings, LLC, which is a Delaware

limited liability company.

17.    Kansas City Royals Baseball Club, LLC ("Royals")

One Royals Way  Kansas City, MO 64129  816-921-8000

Upon information and belief, incorporated in MO.

18.    Los Angeles Dodgers LLC ("Dodgers")

1000 Vin Scully Avenue  Los Angeles, CA 90012 866-DODGERS

Los Angeles Dodgers LLC is wholly owned by Los Angeles Dodgers Holding Company

19.    Marlins Teamco LLC ("Marlins")

501 Marlins Way  Miami, FL 33125  305-480-1300

Upon information and belief, incorporated in FL.

20.    Milwaukee Brewers Baseball Club, Limited Partnership ("Brewers")

One Brewers Way  Milwaukee, WI 53214  414-902-4400

The general partner of Milwaukee Brewers Baseball Club, Limited Partnership is Milwaukee

Brewers Holdings LLC, which is a Wisconsin limited liability company.

21.    Minnesota Twins, LLC ("Twins")

1 Twins Way  Minneapolis, MN 55403  612-659-3400

Minnesota Twins, LLC is a Delaware limited liability company.

22.    New York Yankees Partnership ("Yankees")

One East 161st Street  Bronx, NY 10451  718-293-4300

New York Yankees Partnership is an Ohio limited partnership.

23.    Padres L.P. ("Padres")

100 Park Boulevard  San Diego, CA 92101  619-795-5000

Padres L.P. is a Delaware limited partnership.

24.    Pittsburgh Associates ("Pirates")

115 Federal Street  Pittsburgh, PA 15212  412-323-5000

Pittsburgh Associates is a Pennsylvania limited partnership.

25.    Rangers Baseball LLC ("Rangers")

734 Stadium Dr.  Arlington, TX 76011  817-533-1972

Rangers Baseball LLC is a Delaware limited liability company.

26.    Rogers Blue Jays Baseball Partnership ("Blue Jays")

1 Blue Jays Way, Suite 3200  Toronto, Ontario, Canada M5V1J1  416-341-1000

Rogers Blue Jays Baseball Partnership is an Ontario general partnership, in a foreign nation.

27.    San Francisco Giants Baseball Club LLC ("Giants")

24 Willie Mays Plaza  San Francisco, CA 94107  415-972-2000

San Francisco Giants Baseball Club LLC is a Delaware limited liability company.

28.    St. Louis Cardinals, LLC ("Cardinals")

700 Clark Street  St. Louis, MO 63102  314-345-9600

St. Louis Cardinals, LLC is a Missouri limited liability company. St. Louis Cardinals, LLC is

wholly owned by SLC Holdings, L.L.C., which is a Missouri limited liability company.

29.    Sterling Mets, L.P. ("Mets")

41 Seaver Way  Flushing, NY 11368  718-507-6387

Sterling Mets, L.P. is a Delaware limited partnership.

30.    Rays Baseball Club, LLC ("Rays")

One Tropicana Drive  St. Petersburg, FL 33705  727-825-3137

Tampa Bay Rays Baseball Ltd. is a Florida limited partnership. The general partner of Tampa

Bay Rays Baseball Ltd. is 501SG, LLC, which is a Delaware limited liability company.

    31.    The Cincinnati Reds LLC ("Reds")

1000 Main Street  Cincinnati, OH 45202-4109  513-765-7000

The Cincinnati Reds LLC is a Delaware limited liability company.

    32.    The Phillies ("Phillies")

One Citizens Bank Way  Philadelphia, PA 19148  215-463-6000

The Phillies is a Pennsylvania limited partnership.

    33.    Washington Nationals Baseball Club, LLC ("Nationals")

1500 South Capitol Street, SE  Washington, DC 20003-1507  202-675-6287

Washington Nationals Baseball Club, LLC is a Delaware limited liability company.

    34.    Atlanta National League Baseball Club, LLC ("Braves")

755 Battery Avenue  Atlanta, GA 30339  404-614-2300

Wholly owned by Braves Baseball Holdco, LLC, which is a Delaware limited liability

company.

<u>"Media Defendants" (35-38)</u>

    35.    Associated Press, Inc. ("AP")

200 Liberty Street  New York, NY 10281  877-836-9477

A not-for-profit news cooperative organized and existing under the laws of the State of New

York and authorized to transact business in the State of Texas and worldwide.

36.     Howie Rumberg ("Rumberg")

351 6th Ave. #3 NY, NY 11215  212-226-5750

Citizen of State of New York.

37.     ESPN, Inc. ("ESPN")

935 Middle St.  Bristol, CT 06010  860-766-2000

A corporation organized and existing under the laws of the State of Connecticut and transacting

business in the State of Texas and worldwide.

38.     USA Today, Inc. ("USA Today")

7950 Jones Branch Drive  McLean, VA 22108  800-872-0001

A corporation organized and existing under the laws of the State of Delaware and the publisher

of a worldwide newspaper named "USA Today", owned and operated by parent company

GateHouse Media Inc., a NY based corporation.

<u>"Nutritional Defendants" (39-45)</u>

39.     Timothy Maxey ("Maxey")

36713 Glendenning St.  Avon, OH 44011  216-272-2153

Citizen of State of Ohio.

40.     NSF International ("NSF")

789 N. Dixboro  Ann Arbor, MI 48105  734-680-7544

A Michigan Nonprofit Corporation.

41.     The Gatorade Company ("Gatorade")

555 W. Monroe St.  Chicago, IL 60661-3605  312-821-1000

A subsidiary of PepsiCo, Inc. a Delaware corporation, principal place of business in Chicago, IL.

42.    NFI Consumer Products ("Blue-Emu")

501 5th St. Bristol, TN 37620  800-432-9334

Upon information and belief, incorporated in TN.

43.    Cytosport, Inc. ("Muscle Milk")

1340 Treat Blvd Ste 350  Walnut Creek, CA 94597-7581  707-751-3942

Upon information and belief, incorporated in CA.

44.    Klean Athlete (Douglas Laboratories) ("Klean Athlete")

600 Boyce Road  Pittsburgh, PA 15205  855-255-5326

Upon information and belief, incorporated in PA.

45.    Informed Choice (LGC Science, Inc.) ("Informed Choice")

1745 Alysheba Way, Suite 160  Lexington, KY 40509  859-721-0180

Upon information and belief, incorporated in KY.

46.    Zachary Grant Antero Britton ("Britton")

8409 Chalk Knoll Dr. Austin, TX 78735  410-528-8353 or 661-425-2814

Citizen of State of Texas.

47.    John and Jane Doe (1-10) ("Doe")

Unknown addresses and phone numbers

At all times relevant herein Doe(s) were agents, servants, partners, and or employees of MLB and or MLBPA, whose identities are unknown at this time.

### III. Statement of Claim:

48.     Major League Baseball (hereinafter "MLB"), including The Office of the

Commissioner of MLB and all 30 MLB Clubs and The Major League Baseball Players

Association (hereinafter "MLBPA") have jointly conspired against former pro player Plaintiff

Neiman Nix (hereinafter "Plaintiff" or "Nix") in the largest sports scandal in history in

baseball's nefarious attempts to coverup their numerous unlawful acts involving the BioGenesis

scandal, illegal computer hacking, the Cardinals/Astros trade secret misappropriations,

numerous fake investigators posing as law enforcement by MLB employees, numerous

coverups in multi-million dollar bribes, fake doctors, fake drugs, and countless acts of invasion

of privacy and corporate espionage. While Baseball used to be known as America's Pastime,

Baseball's recent time under the direction of Commissioners' Selig and Manfred can be

summed up in one word: FRAUD.

49.     As of July 1, 2015, per the MLB Joint Drug and Prevention Treatment Program,

MLB bans the prohibited substance Insulin-like Growth Factor ("IGF-1"), including all isomers

of IGF-1 sometimes referred to as Mechano Growth Factors. MLB, under the direction of

Defendant Robert D. Manfred Jr., must now ban every single player since July 1, 2015 who has

consumed any form of an animal product (which naturally contains the substance IGF-1), as

basic as a glass of milk or even a hamburger, based on MLB and MLBPA's own legally

recognized definition of what they jointly consider banned substances. It is now a matter of

United States Federal Law (Nix v ESPN, AP, et. al., 11th Circuit, No. 18-14107)  to which MLB

is in serious violation of. Based on MLB's own provisions, MLB should be forced to shut down

and/or become a business catering only to vegan players/employees.

50.    One of MLB and MLBPA's schemes was to falsely portray Plaintiff Nix and his company (DNA Sports Performance Lab, Inc.) engaging in sales and distribution of banned performance enhancing substances. When in fact Plaintiff Nix personally sells and consumes natural animal substances derived from cows, deer, and emu, and in no way deals in any banned performance enhancing substances and/or drugs of any sort.

51.    The substance in question is a naturally occurring growth factor that is like insulin, commonly called insulin like growth factor, also known as "IGF-1".

52.    MLB and MLBPA are on record stating numerous times that all forms of IGF-1 are banned, including natural and synthetic IGF-1.

53.    Plaintiff and Defendants MLB and MLBPA do not dispute that a synthetic medically prescribed drug, which sometimes is referred to by a slang name "IGF-1" is banned by MLB as part of the MLB's Joint Drug Agreement (hereinafter "JDA"). This lab made injectable drug is rarely used in the medical community due to the extremely high cost and is referred to in the medical community as Mecasermin, which is sold under a prescribed brand name called Increlex and is an FDA-approved treatment for children with severe primary insulin-like growth factor Deficiency, or "SPIGFD". This drug is over a hundred times more potent than the naturally occurring IGF-1 naturally found in animal products such as milk or meat.

54.    Plaintiff brings this action based on a dispute with Defendants MLB (including all MLB Clubs) and MLBPA (representatives for all MLB level players and player agents) to

which MLB and MLBPA state that the natural (and/or bio-identical) form of IGF-1 is considered a banned substance in baseball.

55.     In an email dated January 3, 2018, The Associated Press's general counsel, Brian Barrett, sent Plaintiff Nix's former attorney an email in reference to an article the Associated Press (hereinafter "AP") wrote for the AP, and also published by ESPN and USA Today. The AP's Barrett stated: *"To the extent you take issue with the description of IGF-1 as being "on baseball's list of banned substances," I would point you to MLB's "Prohibited Substance List," which includes at entry number 68 "Insulin-like Growth Factor (IGF-1), including all isomer of IGF-1 sometimes referred to as Mechano Growth Factors." We confirmed with MLB that this category includes the "bioidentical" form of IGF-1."*

56.     Merriam-Webster's dictionary clearly defines the word "bioidentical" as: *"having the same molecular structure as a substance produced in the body."*

57.     Plaintiff had his previous attorney reach out to ESPN, AP, and USA Today to correct articles to which Plaintiff believed were incorrect as Plaintiff had just learned that the ESPN article, authored by the AP, was being unlawfully used against him by MLB in a NY Court. The AP's Barrett noted in his Jan. 3, 2018 email that: *"In particular you complained about the following statement: "The suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances."*

58.     Plaintiff's attorney stated to the AP, ESPN, and USA Today that: "elk antlers" are not found on baseball's list of banned substances. Note, MLB does not ban products such as

animal products, but bans substances. Plaintiff and his attorney were quite shocked to hear such an odd response as Plaintiff had been informed by MLBPA's own in house attorney Bob Lenaghan in July 2016 that deer (and/or elk) antler was not ever banned in baseball, nor were any animal products/substances banned.

59.     Plaintiff informed the AP's Barrett that natural IGF-1 is commonly found in animal products such as milk, meat, deer, fish, and every animal product and provided expert reports. The AP's Barrett responded on January 9, 2018: *"In particular, you asked whether we have "concrete evidence" to support the statement that bioidentical insulin growth factor (IGF-1) is on baseball's list of banned substances. As I mentioned in my initial letter, IGF-1 appears at entry number 68 on MLB's "Prohibited Substance List." In addition, **MLB confirmed to the AP that "all natural, synthetic and bioidentical versions of any prohibited substances— including, but not limited to, IGF-1— are considered banned."***  See: https://drive.google.com/file/d/16sUmEm9x8VaOuifRiSf7QOc-Q2VR1OLH/view?usp=sharing

60.     This absolutely wild, uneducated statement by MLB shocked Plaintiff Nix, as Nix is an expert in the anti-doping field and knew immediately that MLB was simply lying to the AP and media in general, as the AP was the author of ESPN and USA Today articles defaming Nix. The 3 media outlets refused to correct the articles, even after Plaintiff Nix and his former attorney sent the AP numerous medical reports from experts showing that milk and meat also contain the same amount of natural IGF-1 as deer, and that all humans consume the natural growth factor that is like insulin ("IGF-1") from the first day they are born, and humans cannot survive without it.

61.     MLB relied on the July 2016 ESPN article (authored by AP) multiple times throughout the Nix v MLB, Selig, Manfred, Boland, and Santana matter in New York's State Supreme Court (Case No. 159953/2016) to quasi-enforce their banned substance policy. First, as an exhibit in Nix v MLB (Docket Entry 23: https://iapps.courts.state.ny.us/nyscef/ ViewDocument?docIndex=QGa2SyHrecptXUZefN4mgA== ). As well as during MLB's November 2017 motion to dismiss oral argument ( Docket Entry 51, page 28: https:// iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=QGa2SyHrecptXUZefN4mgA== )

62.     Plaintiff Nix filed suit against ESPN, AP, and USA Today for defamation claims in early 2018, as they refused to change their published untrue statement, as ESPN, AP, and USA Today relied on MLB's statement issued to the AP's Barrett, to which Plaintiff believes is untrue.

63.     MLB prevailed over Nix in the NY State matter after seriously misleading the NY Court in relation to the IGF-1 defamation claims and a wild and untrue statement in relation to the two-dismissal rule, which also was untrue and misleading, which led Plaintiff to seek further review on appeal.

64.     ESPN, AP, and USA Today were quickly tipped off of the dismissal of Plaintiff's matter in NY by representatives of MLB and within a matter of hours before the ESPN, AP, and USA Today filed their motion to dismiss (due the following day), the media outlets and their unethical attorneys (Law Firm of Thomas and LoCicero, Tampa, FL) attempted to take judicial notice of the ruling in the NY matter, Nix v. MLB, stating that MLB bans all forms of IGF-1, including the natural version.

65.     Based on the misleading evidence MLB presented to the AP, the media outlets

were able to dismiss Plaintiff's case in the Southern District of Florida based on the (false)

premise that MLB bans all forms of IGF-1.

66.     Plaintiff Nix appealed the Nix v. ESPN, AP, and USA Today matter and lost,

based once again on the premise that MLB bans all forms of IGF-1. On May 15, 2019, the

Eleventh Circuit *Neiman Nix, and DNA Sports Performance Lab, Inc. v. ESPN, Inc., The*

*Associated Press Inc., and USA Today*, Case No. 18-14107, specifically stated that: *"The MLB*

*Prohibited Substances List includes 'Insulin-like Growth Factor (IGF-1), including all isomers*

*of IGF-1 sometimes referred to as Mechano Growth Factors.' The List does not describe the*

*source of the substance or distinguish between synthetic and natural IGF-1. Therefore, the*

*omission of any distinction between synthetic and natural IGF-1 does not render the statement*

*untrue of defamatory."*

See: https://law.justia.com/cases/federal/appellate-courts/

ca11/18-14107/18-14107-2019-05-15.html

67.     Because the Eleventh Circuit decision is now final, it is clear that the prohibited

substance in the MLB Program at 2.B.68 (and/or recently changed to number 69) is Insulin-like

Growth Factor (IGF-1), including all isomers of IGF-1 regardless of the source of the substance

or if it is synthetic or natural IGF-1, **as a matter of law**. See MLB JDA: https://

drive.google.com/file/d/1J5xw24om7vC3QRZUipxLEhommzIjHzvM/view?usp=sharing

68.     Fast forward to just a few months later on March 18, 2020 MLB completely

changes it's position on IGF-1, without changing the Joint Drug Policy. Here, MLB states to the

20

NY Appellate Court that: *"MLB bans substances, not products, and it is the amount of IGF-1 ingested - not the natural or synthetic source - that matters."* See: https://drive.google.com/file/d/1y9t_tILaJNcrOfgfLKp6pRCOQ6Ynp1Ib/view?usp=sharing

69.    MLB's statement on March 18, 2020 is clear evidence that MLB unlawfully misled the AP's Brian Barrett in January 2018, as MLB stated to the AP that: *"all natural, synthetic and bioidentical versions of any prohibited substances— including, but not limited to, IGF-1 — are considered banned."* See Barrett email: https://drive.google.com/file/d/16sUmEm9x8VaOuifRiSf7QOc-Q2VR1OLH/view?usp=sharing

70.    Another very recent finding by Plaintiff is MLB's own Joint Drug Agreement ("JDA") does not state any "amount of IGF-1" to which determines a ban on IGF-1. In fact the only items the JDA states of any amount of any substance are stated on page 76 of 121, publicly posted at: https://d39ba378-ae47-4003-86d3-147e4fa6e51b.filesusr.com/ugd/b0a4c2_df9222b1bea34634a60f154499aedcff.pdf *"B. PERFORMANCE ENHANCING SUBSTANCES A test will be considered positive if any Performance Enhancing Substance as defined in Section 2.B of the Program is present. Notwithstanding the foregoing, the presence of Nandrolone shall be considered a positive test result only if the confirmation test level exceeds 2 ng/mL, and the presence of Clenbuterol shall be considered a positive test result only if the confirmation test level exceeds 0.9 ng/mL."*

71.    In the March 18, 2020 MLB NY appellate filing, MLB admits and acknowledges that milk and hamburgers contain traces amounts of IGF-1. Yet MLB Clubs provide such basic items to all players in the clubhouses in all MLB stadiums.

72.     For MLB to state that it is *"the amount of IGF-1 ingested"* to dictate if a product is

banned, is like saying there is a speed limit on a certain road, but does not give the speed limit.

If MLB's made up "amount" was correct a person would be limited in the amount he or she ate

of natural animal derived meat, or limited on the amount of milk they could drink. This is

absolutely not the case and no "amount" of IGF-1 level is listed in the published Joint Drug

Agreement, yet drugs/substances such as Nandrolone (found in meat) and Clenbuterol (found in

cough medicine) are clearly listed with the exact amount of what is needed for a positive test

result. The fact is clear, MLB does not ban natural IGF-1, and lied to multiple Courts and the

media to the detriment of Nix.

73.     During the Nix v MLB NY oral argument while on appeal, November 17, 2020,

MLB attempted once again to rely on the ESPN/AP article and outcome of the Nix v. ESPN,

AP, and USA Today FL matter, as detailed by MLB's own attorney, as Steven Kobre states the

final ruling from the May 15, 2019 Federal Opinion in Nix v ESPN. It is one hundred percent

clear that MLB used the AP and ESPN as a tool in their defense as they knowingly mislead the

Courts and the media and then used the misinformation to their benefit. The oral argument is

available for public viewing via YouTube at:  https://www.youtube.com/watch?

v=6dOlykD3Hp4 : more specifically Kobre's misleading statement(s) at the 3:06 mark thru

3:09.

74.     In multiple attempts in 2021, Plaintiff Nix reached out to the AP, ESPN, and USA

Today attorneys to inform them of how MLB mislead them. Plaintiff asked for the AP, ESPN,

and USA Today to once again correct their articles. The media outlets refused to consider

MLB's updated position, even after being presented irrefutable evidence that MLB misled them. Plaintiff even presented the media with further expert medical reports and testing of approved MLB supplements all of which showed bio-available levels of IGF-1 were present, yet the media continued to refuse to correct the articles. This is clear evidence that the AP, ESPN, and USA Today are knowingly conspiring and/or aiding and abetting MLB's unlawful behavior against Nix and multiple courts.

**MLB forced to produced discovery, but fails to comply with a Court Order:**

75.    MLB was compelled and ordered to produce all related discovery to Plaintiff Nix and his Florida based company DNA Sports Lab. Per Judge Martin Zilber's order in December 2020. See order: https://drive.google.com/file/d/1Flgz5wzvcj61kEJ8jVb2WglKVJmyJpOU/view?usp=sharing

76.    MLB failed to produce all discovery and intentionally tried to hide well over 100 items related to Nix and his company. See Nix's attorneys email to MLB counsel: https://drive.google.com/file/d/1l6dB-e9C9DwzbOAkBNJiQTRi82bL7Vj2/view?usp=sharing

77.    Judge Zilber's order details how MLB is subject to sanctions of $1,000 per day (until all items are produced), to which not a dollar has been paid to date, totaling well over 350 days as of current date of this filing.

78.    The Miami Dade Judge Zilber saw right thru the many alleged unlawful acts by MLB and was not at all persuaded by MLB's wild defense in the computer hacking/invasion of privacy matter of: Nix v MLB, Manfred, Selig, Boland, and Burnham, see complaint: https://drive.google.com/file/d/1c5tv8PWoJG87PA4cDO_qY3NrEGahPV_A/view?usp=sharing

79.     Judge Zilber was also the judge in an earlier criminal court, which Zilber

personally signed a search warrant in relation to the death of former MLB/Marlins' pitcher Jose

Fernandez's death in a cocaine and alcohol fueled boat crash in Miami Beach in 2016.

Fernandez was found liable for killing two passengers upon operating his boat under the

influence of drugs. MLB and/or the Marlins were not held responsible, but likely should have in

some capacity, as Fernandez was knowingly using drugs in violation of the MLB JDA while

employed with his MLB Club. Which just shows how MLB often brushes problems under the

rug, no matter how serious the matter. See: https://www.usatoday.com/story/sports/mlb/

2016/10/26/jose-fernandez-boat-crash-alcohol-odor/92784342/

80.     Judge Zilber was recently removed as a Miami judge due to a number of curiously

timed allegations against him. See: https://www.cnn.com/2021/05/18/us/miami-judge-zilber-

resigns-trnd/index.html

81.     In April of 2021, The Florida Supreme Court rejected Zilber's proposed sanctions.

See: https://efactssc-public.flcourts.org/casedocuments/

2021/526/2021-526_order_248153_o03ed.pdf

82.     One of the 7 FL Supreme Court judges is the newly appointed John D. Couriel,

who up until recently was an attorney for Kobre and Kim in Miami, FL and represented MLB in

the Biogenesis investigation and subsequent lawsuit of a fake doctor and unlicensed medical

clinic in MLB v Biogenesis of America / Anthony Bosch. See: https://www.newsday.com/

sports/baseball/yankees/mlb-s-alex-rodriguez-inquiry-probers-were-told-documents-were-

stolen-but-bought-records-anyway-in-1.7984717

83.     Kobre and Kim attorney for MLB, Adriana Riviere-Badell mistakenly did not delete an email thread upon sending an email to Biogenesis whistleblower Porter Fischer, who MLB allegedly bribed and/or made cash payments to and six figure offers to buy evidence (to which Fischer refused). In this recently discovered email, MLB's in-house labor lawyer Steven Gonzalez forwards a very suspicious email stating: *"He can never know how we got it, but I now have his e-mail address"*. Also in the email, newly minted FL Supreme Court Justice John D. Couriel, actually signs for another Kobre attorney, as Couriel knowingly conspired with MLB's unlawful hacking scheme, under the direction of then Deputy Commissioner Defendant Manfred and alleged hacker MLB's Neil Boland. See: https://drive.google.com/file/d/1zSH3gjPP-Lan0zxjnHt14leOODFCH1-A/view?usp=sharing

84.     Couriel was the lead attorney for MLB against Biogenesis in 2013 and upon these items becoming revealed publicly in mid 2018, Couriel quickly changed his career path and sought to get away from being associated with Kobre and Kim and MLB.

85.     MLB's Gonzalez then appeared in a Palm Beach County Florida Courtroom in a non-related MLB Team matter (not involving the MLB Commissioners Office) involving Nix v. Luhnow, Astros and Cardinals, where Nix personally observed MLB's Steven Gonzalez instructing the Cardinals and Astros attorneys from the row just behind where the attorneys sat in their failed 3 hour attempt to dismiss the Nix v. Luhnow matter in August of 2019. Gonzalez then exited the Courtroom and appeared to angrily direct the Astros and Cardinals attorneys their next moves. Based on this it is obvious MLB and Gonzalez are likely attempting to cover up many other corrupt actions within MLB, as they continue to interfere with Plaintiff Nix's

matters which they are not even associated with.

86.     Upon information and belief, Kobre and Kim attorneys Riviere-Badell, Matthew

Menchel, Lindsey Weiss Harris, Steven Kobre, and numerous others related have conspired

with Couriel and/or MLB. These agents in association with MLB were likely part of a scheme

to remove Miami Judge Zilber as he saw right through MLB's corrupt activities and was

holding them accountable in a court of law, which would expose their knowledge of MLB's

widespread hacking scheme. It is Plaintiff's belief, based on numerous connections and

evidence, that MLB and Kobre and Kim attorneys have repeatedly violated the Crime-Fraud

Exception (*U.S. v. Zolin*, 491 U.S. 554, 562-63 (1989)) and are knowingly hiding numerous key

pieces of evidence which if produced will forever destroy the business of Major League

Baseball.

### AP falsely states Plaintiff Nix is a "PED producer":

87.     One interesting document produced by MLB on or about January 11, 2021

contained an email from the AP's Deputy Sports Editor, Howie Rumberg, dated September 6,

2018. Plaintiff had no knowledge of the AP's Rumberg, but his email was sent to MLB's head of

Public Relations Pat Courtney and Michael Teevan. Rumberg's email states: "*Not sure you*

*even remember helping me with a few things on a defamation case involving PED producer*

*Neiman Nix but wanted to let you know his suit was tossed out of court.*"

88.     First, this email details that there are more unproduced emails and/or

communication that have taken place and that the AP, Rumberg, MLB, Courtney, and Teevan

conspired against Nix and DNA. Second, Rumberg defames Nix by falsely stating he is a "*PED*

*producer*".

89.    Defendant Rumberg's email depicts Plaintiff Nix in a false light of portraying Nix as a drug dealer.

90.    'PED' stands for 'performance enhancing **drug**'. MLB has a banned substance list which consists of some substances which are found in drugs. Drugs are only obtainable through a medical prescription, otherwise they are illegal.

91.    It is clear that Defendant Rumberg was also referring to drugs when in reference to stating Plaintiff was a PED producer, as Rumberg has even written articles on PEDs in relation to former MLB player Alex Rodriguez and the Taylor Hooton Foundation (an anti-doping charity). See: https://apnews.com/571c008f9ccf4d9ba04ec10332d943ff

92.    MLB made it very clear in public filings that the natural IGF-1 found in Nix's products <u>were not illegal drugs</u>, but instead banned substances. Plaintiff disputes that natural IGF-1 is <u>truly banned.</u> The Nix v. MLB filing found in NYSCEF docket detail just how Nix's animal derived products are clearly not drugs at all, but rather natural substances derived from animals. MLB's former attorney Lindsey Weiss Harris stated: "*[Nix] admitted to selling a product that contains a substance that is banned by Major League Baseball. That doesn't mean the substance is illegal.*" See p.20  <u>https://iapps.courts.state.ny.us/nyscef/ViewDocument?</u> <u>docIndex=MHYqcIh0hU22J09wbye1_PLUS_g==</u>

93.    Also, MLB attorneys stated publicly that: "*... claiming it accused Nix of selling illegal products and being a dope dealer...*" ..."*but MLB's statement did not use the words "illegal" or "dope", nor is that a reasonable interpretation of MLB's statement*". Footnote 16

then states: "*MLB prohibits substances "irrespective" of whether they are covered by Schedule*

*III of the Code of Federal Regulations' Schedule of Controlled Substances*." See p. 14 /18 of

22: https://iapps.courts.state.ny.us/nyscef/ViewDocument?

docIndex=xj1fgUCpuE4QLzdX7N5bjA==

94.     Therefore, it is clear that the AP's Howie Rumberg defamed Nix to MLB and the

statute of limitations of such defamation started upon the learning of this when it was disclosed

by MLB's produced discovery on or about Jan. 11, 2021. Texas law states that the discovery

rule can apply to an action for defamation when a defamatory statement is "inherently

undiscoverable" or not a matter of public knowledge. *Velocity Databank, Inc. v. Shell Offshore,*

*Inc.*, 456 S.W.3d 605, 609 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Newson v. Brod*,

89 S.W.3d 732, 736 (Tex. App.—Houston [1st Dist.] 2002, no pet.). A defamatory statement is

"inherently undiscoverable" where, by its nature, it is unlikely to be discovered within the

prescribed limitations period despite due diligence. *S.V. v. R.V.*, 933 S.W.2d 1, 7 (1996). If this

rule applies, the limitations period begins to run when the plaintiff learns, or though the exercise

of reasonable diligence should have learned, of the existence of the defamatory statement.

*Childs v. Haussecker*, 974 S.W.2d 31, 37 (Tex. 1998).

95.     Plaintiff Nix recalls the exact date of the Nix v ESPN dismissal by the Southern

District's Judge Ungaro, as Nix was residing in Texas and received a devastating phone call

from his Florida counsel sharing the ruling on or about August 30, 2018. Plaintiff Nix was

residing in Texas at the time of discovery of Rumberg's email via the MLB discovery

production on or about January 11, 2021.

96.     Defendant Rumberg's defaming email went directly to the MLB Commissioner's Office and the two people who oversee and participate in communication with the media and throughout the entire league, including the 30 MLB Clubs. MLB's Pat Courtney and Michael Teevan are agents for not just MLB, but all 30 Clubs. Plaintiff can't think of anything worse than to be called a "PED producer", when it is his mission to rid America's Pastime of drugs and banned performance enhancing substances, to the point where he even created an ultra unique business which sells (and tests) natural animal derived substances as an alternative to PEDs/performance enhancing drugs.

97.     Defendant MLB was apparently so proud of Michael Teevan's conspiring fraudulent actions that they awarded him just recently with MLB's Public Relations Excellence Award, which ironically was first published by none other than the AP. See: https://www.yahoo.com/news/mlbs-michael-teevan-earns-fishel-202802799.html . It is also important to note just after MLB's Teevan received the AP's Rumberg's email, Teevan forwarded the message to MLB Vice President and Chief Information Security Officer Neil Boland. Boland was sued for his role in illegal computer hacking against Nix and his company, which is one of the many activities MLB was trying to cover up during the Biogenesis scandal, and the reason why MLB likely lied about natural IGF-1 being banned, in their attempt to avoid producing discovery and/or depositions. In summary, MLB chose fraud over fear of litigation failure.

98.     Plaintiff does not even consume alcohol, much less produce drugs. Rumberg's email is equivalent to emailing a school board and falsely stating a teacher is a child molester/rapist, or emailing the police and falsely stating someone is producing fake money. Fact is, it is

false, and is the exact opposite of what is really going on in Plaintiff's matter.

99.     It is no wonder no Major League Club or baseball entity will hire Plaintiff, when a great number of under qualified individuals who either worked for Plaintiff or attended his baseball academy (American Baseball Institute) were hired and are now directors of Clubs, pitching coaches, and even executives in high level positions when Plaintiff's resume and background are far superior. In summary, Mr. Rumberg, as an executive level employee of the AP, did serious damage to Plaintiff's reputation and his actions have caused a great deal of damage financially, reputationally, and emotionally which no person should ever have to endure.

100.   If Defendant Rumberg would have taken the time to actually read the Nix v ESPN, AP, and USA Today complaint he would learn that Paragraph 15 clearly stated: *"Neither <u>Nix</u> nor DNA has ever sold or even recommended the use of anabolic steroids, commonly known as performance enhancing drugs ("PEDS")*. *The formulas they developed were designed as natural and safe <u>alternatives to PEDS</u>. The sports world has had a well-publicized problem with PEDS for many years now. DNA's business philosophy was in the opposite direction, advocating against the use of such illegal substances…The active ingredient in the supplements developed and sold by NIX and DNA is a naturally occurring, bio-identical form of IGF-1 which is found in foods such as milk, meat, whey protein, and in the human body."* See 2018 complaint: https://drive.google.com/file/d/1y_QA7kJblXZHsBVqjDqzitrdDQ4L4UJ2/view?usp=sharing

**MLB changes its banned substance list in mid 2015, hides this fact to the NY Court and 3**

**media outlets, and selectively enforces the policy only against Plaintiff:**

101.   Recent discoveries by Plaintiff Nix detail just how Defendant MLB misled the NY
Court in Nix v. MLB, Manfred, Selig, Boland, and Santana, (Case No: 159953/2016). MLB
produced a different drug policy to the NY Court, which started in July 2015. See:  https://
iapps.courts.state.ny.us/nyscef/ViewDocument?
docIndex=D7u_PLUS_cyMCZNOEbsgpZYcj9Q==

102.   The issue here is that the 2016 NY matter involved items dating back to early 2013
(as lawsuits look backward), when MLB's Department of Investigation was wrongfully
investigating Plaintiff Nix and DNA during the Biogenesis baseball scandal. This investigation
was led by recently elected Commissioner Manfred, and resulted in MLB's Commissioners
Office firing (for cause) at least 5 of their top investigators, part of their so called Department of
Investigations, before MLB allegedly paid off at-least 4 of these former law enforcement
individuals to keep them quiet.

103.   Plaintiff's recent finding reveals MLB's banned substance list from before the
2015 update, as detailed in the 2015 MLB Memo: https://drive.google.com/file/d/
1V53auEEkObep3x04mM5DbXiygSy53CjS/view?usp=sharing . During the time MLB was
wrongfully investigating Nix in or around 2013 and 2014, pre the 2015 policy update, the
earlier policy shows that IGF-1 did not have the catch-all language. Stating specifically: "**B.
Performance Enhancing Substances**: *Any and* all *anabolic androgenic steroids covered by
Schedule III of the Code of Federal Regulations's Schedule of Controlled Substance ("Schedule
III"), as amended from time to time, and the categories of hormones and agents with*

*antiestrogenic  activity that are set forth in **Nos. 68-73** below, shall be considered Performance*

*Enhancing Substances covered by the Program. Anabolic androgenic steroids and agents*

*(including hormones) with antiestrogenic activity, that may not be lawfully obtained or used in*

*the United States (including, for example, "designer steroids") also shall be considered*

*Performance Enhancing Substances irrespective of whether they are covered by Schedule III.*

*The following is a non-exhaustive list of substances that shall be considered Performance*

*Enhancing Substances covered by the Program:"… "**66**. Insulin-like Growth factor (IGF-1),*

*including all isomers of IGF-1 sometimes referred to as Mechano Growth Factors"* See Page 16

of 34: http://www.oklahomacriminallaw.com/Arod-Complaint-Attachment.pdf

104.   Take special notice above that IGF-1 was listed as number 66 and was not subject

to the catch-all language in Nos. 68-73, pre-2015. Therefore to be considered a banned

substance, IGF-1 would have had to be in the form of a Schedule III drug/substance. Plaintiff

sells natural IGF-1 products derived from cows, deer, emu, all of which are natural animals and

are not subject to any sort of a Schedule III substance.

105.   This recent find details that the MLB Defendants, Manfred, and Selig should have

provided the NY Court with the actual banned substance list of when it was wrongfully

investigating Plaintiff (2013-2014), as well as provided Media Defendants' AP, ESPN, and

USA Today with this list as well, instead of only pointing to their post July 2015 list, which is a

clear sign Defendant MLB was ultra misleading to the Courts and the media.

106.   Discovery will reveal if MLB Defendants specifically changed the policy and the

catch-all (as to IGF-1) on purpose, as Plaintiff's original Florida lawsuit against MLB was filed

in 2014 (which ended in Nov. 2014 due to never being served and his attorney disappearing), and then filed again (with other claims and new attorneys) in NY in 2016.

107.   The events detailed in the July 2016 ESPN, AP, and USA Today articles were reported on happening between 2013 and 2014 (during which time MLB was investigating Plaintiff and many other innocent parties throughout South Florida during the Biogensis scandal).

108.   If Defendant MLB was simply honest with the NY Court, Nix, AP, ESPN, and USA Today, these events and multiple lawsuits would have never happened. But instead MLB took a wild approach to defeat Plaintiff in anyway possible. Simply put, MLB chose fraud over litigation failure.

**Series of events which MLB originally defamed Plaintiff:**

109.   In the spring of 2016, Plaintiff hired a NY attorney, who had been representing a NY Met's pitcher who was curiously suspended for multiple violations (3) of banned substances, before being reinstated by the league.  In 2016 Plaintiff's NY attorneys sent MLB and MLB attorneys a detailed demand letter with numerous items related to MLB's Department of Investigations staff and other related MLB employees tampering with Plaintiff's accounts around the time of the Biogenesis baseball investigation. One of the key informants was a former investigator of MLB, who did not agree to a golden-parachute type severance package after being fired in 2014 along with numerous other top investigators.

110.   Upon MLB and their attorneys at the Proskauer Rose law firm receiving a detailed demand letter, MLB quickly changed attorneys to the Kobre and Kim law firm and got

extremely defensive towards Plaintiff. MLB and its attorneys offered to meet and attempt to
settle the matter in the spring of 2016. Plaintiff's attorneys agreed to meet, but Plaintiff declined
as Plaintiff made it clear he had no interest in hearing MLB's side of things unless MLB
officials were under oath. MLB was given a financial offer to which they did not meet, and
Plaintiff Nix saw no need to meet and instructed his attorneys to file the matter on his behalf.

111.   Plaintiff's NY attorneys drafted a complaint and forwarded a copy to MLB in an
attempt to resolve the matters privately, out of the court system. MLB quickly threatened
sanctions, even though there was no such basis for sanctions at all. Plaintiff's NY attorneys
informed MLB and their counsel that Plaintiff's attorneys would walk away if MLB Defendants
Manfred, Selig, Santana, and Boland would sign affidavits (under penalty of perjury) stating
that none of the items in the complaint were true, MLB immediately declined the chance for the
matter to completely go away and Plaintiff filed the Nix v MLB matter in July 2016.

112.   Just hours after the July 14, 2016 Nix v MLB Complaint was filed, Defendant
MLB released an ultra misleading statement (defaming Nix) to the press on behalf of MLB,
falsely stating that: *"…Nix admits to selling products purportedly containing at least one
banned performance-enhancing substance (IGF-1)…"* MLB's entire statement can be found in
the following link, notice that former attorney turned MLB lead sportswriter for NBC, Craig
Calcaterra, noted: *"Not the usual "this is meritless" rhetoric you see."* Another sports attorney
stated: *"Usually you can tell if sanctionable from the face of the complaint; this isn't obviously
frivolous in my opinion"*. Calcaterra further noted: *"Me neither. And the nod to the "disgruntled
employee" seemed kind of desperate. Like there's real fear/anger"* https://drive.google.com/

file/d/1XQ2hFv6VGS0i6jF9B4Dt-nsfAFF9f5iO/view?usp=sharing

113.   It is now clear that MLB was in a rush to defend themselves anyway possible and did not rely on their medical experts who oversee their drug policy, nor did they even inform their own Joint Strength and Conditioning Coordinator Timothy Maxey of the lawsuit or the ban of on all forms of IGF-1, including the natural IGF-1 commonly found in all animal products.

114.   Defendant Maxey is the point man for MLB players to contact, when players have questions on taking supplements, as he jointly oversees all supplements for Defendants MLB and MLBPA.

### MLB and MLBPA's Joint Strength and Condition Coordinator, Timothy Maxey's positions on IGF-1 do not align:

115.   Plaintiff Nix wrote an email to Defendant Maxey on September 5, 2018, stating: he was released from a MLB team due to multiple injuries and was planning on returning to play and/or coach again either in MLB or the World Baseball Classic (jointly run and or funded by MLB and MLBPA via The World Baseball/Softball Confederation, based in Switzerland). Plaintiff asked Maxey a number of basic questions such as: Is Natural IGF-1, in the form of milk, whey protein, and any animal product banned by MLB or MLBPA and have any MLB or Minor League players ever been suspended for use of natural IGF-1? Maxey was unresponsive to Nix's email.

116.   On September 12, 2018 Plaintiff called Maxey and spoke at length about his lawsuit against MLB and MLB's ban on all forms of IGF-1. Maxey was unaware of Plaintiff's lawsuit against MLB and **unaware that MLB banned natural IGF-1**. Mr. Maxey informed

Nix that natural IGF-1 was commonly found in MLB's approved NSF Certified for Sport

Supplements, such as protein powders and bars, which players are allowed and encouraged to

use. See Nix's emails to Maxey: https://iapps.courts.state.ny.us/nyscef/ViewDocument?

docIndex=RK3C6QuXjGP3eJZJXrucWQ==

117.   Plaintiff Nix has since tested NSF approved proteins and Gatorade's whey protein

bar (the official protein provider for MLB, NFL, NBA, NHL; and also marketed as the official

fuel of MLB) via third party testing labs. Each contain bio-available IGF-1, shown to raise

IGF-1 levels upon consumption per blood tests. Interesting enough the Gatorade whey bar is not

even NSF Certified for Sport, and does in fact contain a much higher amount of bio-available

IGF-1 compared to the NSF proteins tested.

118.   While employed with MLB Club, The Milwaukee Brewers, Plaintiff was provided

food and supplements on a daily basis which naturally contain IGF-1. Plaintiff personally

witnessed hundreds of players consume IGF-1 animal derived products without being

penalized.

119.   Plaintiff attempted to follow MLB Rules and Regulations per learning of the IGF-1

ban in and around 2018, and changed his diet to remove IGF-1 based animal products,

unfortunately Plaintiff got very sick from not consuming IGF-1 and started consuming animal

products again. Due to this selectively enforced rule against Plaintiff, he (nor other non-vegans)

could not legally be employed by MLB, based on his knowledge of MLB Rules and

Regulations in relation to all forms of IGF-1 being banned.

**MLBPA reaches out to Nix in 2016 seeking information about MLB corruption:**

36

120.   Just after Plaintiff Nix filed his 2016 lawsuit against MLB. MLBPA (based in NYC) had their outside counsel, Michael Rubin, an attorney who has long been involved with MLBPA, and based in San Francisco, CA at the law firm of Altshuler Berzon LLP, reached out to Nix's NY attorneys seeking information. Nix's attorneys wanted nothing to do with MLBPA and Nix and MLBPA agreed to speak a number of times in 2016 and 2017.

121.   Defendant MLBPA learned that Plaintiff Nix had obtained a great deal of knowledge and documents throughout his very detailed investigation of MLB and their role in the wild Biogenesis investigation. Nix gathered so much information based on he and his attorneys hiring a number of experts and private detectives, along with lawfully obtaining subpoena produced material in related matters including a Florida lawsuit involving former Yankee player Alex Rodriguez.

122.   MLBPA begged Nix for information and made it sound as if he would be helping the players and his fellow friends. MLBPA's Rubin often gave Nix legal advice, even as Rubin learned through many conversations with Nix, that Nix had met with the FBI multiple times. Rubin often even referred to Nix as his "buddy", due to the many lengthy, friendly conversations they had together.

123.   Rubin and MLBPA asked Nix to provide MLBPA with any and all documents related his MLB investigation. Specifically Rubin and MLBPA wanted to get their hands on information that would assist them with their upcoming Collective Bargaining Agreement which ended in Dec. 2016. MLBPA knew Nix had found evidence of MLB violating State and Federal laws, as an MLB past investigator disclosed to Nix's attorneys and private detectives of

how MLB (via their IT employee Neil Boland) had set up a ticket will-call system that tracked

MLB players upon providing tickets to their friends and family. Select parties would then be

investigated and allegedly hacked into by MLB employees under the direction of MLB's

Boland. Upon information and belief this is how a number of players were connected to and

suspended by MLB during the Biogenesis scandal to which Plaintiff was wrongfully accused of

being involved in. Before Nix's findings, MLBPA had no idea who Boland was or his role at

MLB's Commissioners Office.

124.   Plaintiff informed Rubin/MLBPA that he had spent a great deal of time, financial

resources, and energy in order to obtain over a decade worth of corruption inside MLB, that had

never been revealed, and shocked Plaintiff upon learning of so much corruption and illegal

behavior inside MLB, specifically the MLB Commissioners Office under the direction of

Commissioners' Selig and Manfred.

125.   Plaintiff Nix and MLBPA's Rubin finally came to a verbal agreement for MLBPA

to provide Nix with all related documents related to IGF-1 and animal products (specifically

deer/elk antler items), along with their 2011 memo showing that deer antler nor IGF-1 was not

banned, but one product related to deer antler spray may contain a tainted drug called

methyltestosterone, which was in no way connected to natural IGF-1 or deer antler. In

exchange, Nix would provide MLBPA with a portion of the "Nix Report" and various

unredacted items related to MLBPA, which detailed the invasion of privacy by MLB into the

players' friends and family and connected many investigations and revealed countless events of

illegal acts by MLB, including direct knowledge and admissions by former MLB employees

and/or members of MLB's Department of Investigation.

126.   The Nix Report further detailed how MLB often broomed unlawful activities under the rug after the MLB's Resident Security Agents (RSAs) for each MLB Club and MLB's own Department of Investigations (DOI) informed MLB of serious problems, including the rampant steroid use in the Dominican Republic among players and children. Further revelations detailed how: MLB did not follow the guidelines of the Mitchell Report; MLB had a black ops investigation unit outside of the MLB DOI to do it's dirty work; Manfred ordered the DOI not to talk to the DEA upon the start of Biogenesis in 2013; MLB covered up police incidents, making sure no reports were filed in certain matters; that Manfred's right hand man, Neil Boland, was a known computer hacker; Boland often hacked into computer systems to spy on players, player's families and friends, trainers, and others, and worked in conjunction with MLB in order to spy on former Dodger's owner Frank McCourt just before he sold the Dodgers; Many in the MLB Commissioners Office and DOI knew of Boland's unlawful hacking activity including but not limited to: Commissioner Manfred, Ricardo Burnham, Dan Mullin, Tom Reilly, George Hanna, Eddie Dominguez, Stephanie Navarrete, and Derek M. Smith; Smith was Boland's assistant, and has since left MLB (at the exact same time Nix's 2016 attorney's letter to MLB exposed he and Boland's alleged roles); MLB's Commissioners Office often privately leaked information about MLBPA members to the media; MLB attempted major insurance fraud; MLB's Commissioners Office often covers up players banned substance use; former MLB investigators believe Manfred and MLB's labor department obstructed justice; and MLB's DOI only reacts (in recent years) when items are big news in the press.

127.   Nix sent these items to MLBPA and MLBPA's Rubin upon their agreement in late 2016 just before the MLB/MLBPA Collective Bargaining Agreement was in its final negotiations. Rubin and MLBPA reneged on the agreement and ghosted Plaintiff Nix, never providing him the agreed upon items.

128.   Nix later tracked down the 2011 MLBPA memo after visiting a Miami Court house clerk's office and obtaining a copy via a lawsuit that was filed against MLBPA, by an unrelated deer antler nutrition company called Nutronics. This lawsuit revealed that MLBPA had allowed players such as Carlos Pena and Johnny Damon to use deer antler products and approved the use. Upon information and belief the lawsuit was quickly dismissed after MLBPA informed the nutrition company that deer products are not and have never been banned.

129.   In 2018, Plaintiff Nix had to spend a great deal of money in legal fees related to MLBPA and asked via his attorneys for MLBPA to provide a statement that: Natural IGF-1 in the form of animal products, such as milk, meat, deer antler, and whey protein were allowed to be consumed by MLBPA members and baseball players. MLBPA refused to provide the basic document. Upon information and belief, MLBPA and MLB will not even answer the media upon being asked if specific animal products are banned, often not even replying to email requests, and upon the rare reply simply state they follow their Joint Drug Agreement and go around the question.

130.   MLBPA via Rubin, sent an email to Nix's attorneys on September 11, 2018, stating: *"the Joint Drug Prevention and Treatment Program expressly lists IGF-1 as a banned Performance Enhancing Substance and does not distinguish between natural and other sources*

40

*of IGF-1 in that listing. No determination has been made in any proceeding to limit the scope or*

*meaning of that listing.*"   Based on MLBPA's position, they too state that they ban natural

IGF-1, yet fail to tell their own players that items such as milk, meat, and even the whey protein

(Klean Athlete) the MLBPA endorses contains natural IGF-1.

131.   In 2019, Nix via his attorney sent a detailed letter to MLBPA, showing that

numerous supplements MLB and MLBPA endorses do in fact contain IGF-1. Plaintiff Nix was

specific that he was not seeking money, but instead a statement from MLBPA, stating that

MLBPA allows and encourages players to consume products such as NSF approved

supplements and food items including milk, meat, deer products, and natural animal products

which contain the natural growth factor that is like insulin, also called IGF-1. MLBPA refused

and threatened sanctions.

132.   In January 2020, Plaintiff filed suit against MLB and MLBPA in the Northern

District of California for false advertising and unfair business practices, as MLBPA and MLB

endorse products which naturally contain IGF-1, but ban Plaintiff's items from being allowed to

market for use in baseball, yet they contain the same natural substance, IGF-1.

133.   MLBPA repeatedly lied to the California Court, falsely stating numerous times that

Plaintiff Nix sells "Human Growth Hormone ("HGH")", when in fact Nix does not sell any

human hormones, much less the drug, HGH. Nix's CA complaint never mentioned selling

HGH, nor was there any basis for MLBPA to make up such wild allegations. MLBPA, under the

representation of Altshuler Berzon's Rubin, even falsely stated to the CA Court upon seeking

over $100,000 in sanctions: *"The only way to ensure the union is fairly compensated for what*

*Nix and his lawyers subjected it to, and to provide some measure of deterrence to Nix and his lawyers as they consider their next efforts to use the courts as an instrument of their campaign* **_to promote the use of human growth hormone among professional athletes (and those who emulate them, including children_**) *is to impose the requested sanctions upon plaintiffs and their lawyer, jointly and severally, with any failure to promptly pay those sanctions in full punishable by contempt."…* MLBPA's unethical attorneys Rubin, Hunter B. Thomson, in-house counsel Jeff Perconte actually stated in the same document that: *"Litigation is expensive. Developing litigation strategies and **writing clear and accurate briefs** take time and costs money."* MLBPA's filing was in no way clear or accurate, as they intentionally and fraudulently misled a federal court and attempted to claim Nix was a drug dealer.  See MLBPA's filing: https://drive.google.com/file/d/1dHgGkNcNbcHUDZfn6Najx6vFx1PeELXz/view?usp=sharing

134.   Oddly enough, Rubin and MLBPA falsely stated to the Court in 2020, that "it doesn't know" what was in the very whey protein powder (NSF approved Klean Athlete) they profit from endorsing and encourage players to consume. Yet, their own point person, Timothy Maxey, who oversees supplements for MLB and MLBPA, informed Plaintiff Nix in 2018 that all whey proteins products naturally contain IGF-1, but MLBPA and MLB kept their experts in the dark over the entire matter and simply lied to the Courts.

135.   In the summer of 2020, a Washington Nationals player was suspended for a picogram level of a metabolite referred to as M-3, which allegedly is derived from the banned substance DHCMT. MLB suspended he and over 20 others for this violation in previous years, even though he and others did not test positive for the actual substance DHCMT. The player

hired a Texas attorney and filed suit against MLB and various related parties. His attorney also

reached out and specifically asked MLBPA in-house attorney Jeff Perconte in July 2020: "If the

IGF-1 commonly found in steak is banned". MLBPA refused to answer the player and did not

suspend he or any other player for use of IGF-1 found in animal products. But the fact remains,

MLBPA cannot even be honest with their own current members (who are subject to drug

testing), nor do they perform their specific duties in answering simple questions, as this player

and many others are fearful to consume any banned substance, especially after failing one drug

test and being suspended for an extended period of time. This is very concerning to many

current and future baseball players, and this Court should take into consideration of just how

evasive MLBPA truly is to it's very own members.

136.   According to the Nationals player, he and numerous other players since about 2016

have sent countless items to labs, including KorvaLabs, based in California and Aegis Lab,

based in Nashville, TN, to check for banned substances. Many of these players also sent in

samples of the protein powder (Klean Athlete) given to them by their clubs (employer),

endorsed by MLBPA, and NSF approved. MLBPA informed each of these players that their

items did not test positive for any banned substances. Yet in 2020, MLBPA informed the CA

Court that "it doesn't know" what is in the Klean Athlete protein and that they had never tested

it, both statements were untrue. See investigation declaration by Nix: https://drive.google.com/

file/d/1FaICeJTN7ndwx8jdEXqUrQ_QiFolPOhl/view?usp=sharing

137.   Unlike the MLBPA, Plaintiff Nix stood up for all current and future players in their

right to consume natural, healthy animal products, which have forever contained the natural

growth factor that is like insulin (IGF-1) and is an essential natural resource just as water and oxygen, required for all humans and animals to survive.

138.   The fact remains that MLBPA repeatedly lied to a Court of law and attempted to paint Plaintiff as a drug dealer, when that is completely false. Based on the evidence Plaintiff has recently gained knowledge of and the actions of MLBPA since 2018, it is now clear that MLBPA has been unlawfully conspiring with MLB Defendants behind the scenes against Plaintiff Nix for some time now and should be held jointly liable in their unlawful attempts to commit fraud against Nix and bankrupt him through illegal means.

**Therapeutic Use Exemption for use of a banned substance:**

139.   MLB's Independent Program Administer ("IPA"), Thomas M. Martin, nor any other MLB IPA, who oversees the Joint Drug Agreement, has ever granted or acknowledged a player obtained a Therapeutic Use Exemption ("TUE") for any form of the allegedly banned substance IGF-1.

140.   Each December, as required by the JDA, the MLB IPA issues an annual report. This report details how many urine and drug tests were preformed, positive tests, as well as the amount of players who are issued a TUE. In the latest report: https://www.espn.com/mlb/story/ _/id/32748162/mlb-union-stopped-blood-testing-hgh-due-covid-19-pandemic  Only five players tested positive, yet 79 players were issued TUEs for ADHD stimulants, which are Class II controlled substances per the US DEA regulations and 5 other TUEs were issued for various disorders including hypogonadism, altitude sickness, hypertension, and sleep disorder. Yet, not a single TUE issue for the banned substance IGF-1, yet every player commonly consumes such

daily via food and NSF approved products. The recent ESPN story was authored by the AP (no writer listed), which details just how informed the AP and ESPN are positioned by MLB and are constantly working together.

141.   The ESPN article details that MLB stopped blood testing upon the recent pandemic. It is interesting to point out that this was also right around the time of Plaintiff Nix's CA lawsuit detailing how MLB was allowing players to regularly consume IGF-1 and that IGF-1 is commonly tested via blood and not urine. Therefore, once again MLB and MLBPA are attempting to coverup their fake ban on natural IGF-1.

142.   The Biogenesis investigation suspensions for many of the players were based on MLB's precedent of non-analytical positive tests, where a player does not have to actually test positive, but instead have evidence presented to which he was in fact consuming or in the possession or distribution or part of a sale of a prohibited substance, per the language in the JDA, 7E,7F, and 7G.

### CBA Language on Nutrition:

143.   Per the MLB Collective Bargaining Agreement (hereinafter "CBA"), MLB and MLBPA agree to certain standards in relation to Nutritional Supplements and Nutrition via food products. See MLB CBA: https://d39ba378-ae47-4003-86d3-147e4fa6e51b.filesusr.com/ugd/b0a4c2_95883690627349e0a5203f61b93715b5.pdf

144.   Page 64 (78/373) States: *(3) Nutritional Supplements: Each Club shall be required to provide certain categories of NSF Certified for Sport nutritional supplements to all 25-man roster Players during the championship season (including while on the road), all 40-man roster*

*Players during the off-season and Spring Training, its AAA affiliates during the championship season, and to any Player who becomes a free agent under Article XIX or Article XX (limit one off-season if the free agent does not sign a Major League contract), as determined by the SCAC.*

145.   Page 297 (311/373) States: *3. Nutrition: (a) Chefs and Dietitians.  All Clubs shall provide access to a full-times chef, but only while the Clubs is at home, and all Clubs shall provide access to a registered dietitian, but need not do so on a full-time basis. The <u>Joint Strength & Conditioning Coordinator</u>* **[Defendant Maxey]** *will communicate relevant information regarding nutritional and dietary supplements to the Clubs' chef and dietitian. The Parties jointly will retain registered dietitian to field questions and provide advice and recommendations to Clubs, Players, and the bargaining Parties.*

146.   Page 298 (312/373) States: *(v) All dietary supplements and functional foods (e.g. protein bars and shakes) made available at home and on the road must be NSF Certified for Sport.*

147.   Based on the CBA and the fact that all 30 MLB Clubs are providing animal based food products per 3-4 meals per day in every clubhouse and providing NSF approved protein items, it is clear that all 30 Clubs are jointly conspiring to go against MLB's own JDA in relation to the ban of natural IGF-1 products. The teams are literally providing players with the banned substance IGF-1 on a daily basis via their own approved animal derived foods and supplements.

148.   Oddly enough all 30 MLB Clubs also provide Gatorade products, including Gatorade protein based snack bars and drinks which contain whey protein which is derived

from milk and contains bio-available IGF-1. Yet these Gatorade products are not NSF approved.

149.   The MLB logo even appears on the Gatorade whey protein bar wrapper and states that it is the Official "Protein Bar Provider" for MLB.

**Testing Results for MLB approved and endorsed supplements and products:**

150.   Plaintiff Nix conducted testing, via a third party independent lab, of NSF approved protein products: MuscleMilk and Klean Athlete, Gatorade Whey Protein Bars, H-E-B Houston Astro sponsored Ice Cream, and Blue-Emu. Each product did in fact contain bio-available levels of IGF-1. See detailed IGF-1 test results pages 25-35 https://drive.google.com/file/d/ 1OIb0k5OZvIuSaa6IIaVoqsS0jJ0KFHdd/view?usp=sharing

**NSF International: "Certified for Sport", yet contains the banned substance IGF-1:**

151.   On June 10, 2020, MLB counsel's "litigation assistant", Peter Schilling, of Kobre and Kim, presented an ultra-misleading affidavit to the California Court. Stating: he *"spoke with an NSF International representative regarding the list of substances that NSF International tests for in determining whether to label as "certified for sport." The representative confirmed that NSF International tests for IGF-1 and only certifies products that do not contain IGF-1 "for sport.""* https://drive.google.com/file/d/1vZoF-O4u2DWNbrxD0AMtGHNRyQ6V__6M/ view?usp=sharing

152.   MLB's Schilling's statement is not accurate, as Plaintiff had multiple NSF protein items tested (via third party labs) and each contained significant bio-available levels of IGF-1, just as all animal products do. In fact, according to medical experts it is impossible for any animal product, including milk, not to have IGF-1 present.

153.   Around the same time as this misleading affidavit was produced, NSF was likely informed of Nix's lawsuit against MLB in California, with IGF-1 being the main issue. NSF then produced a non-dated online brochure stating: *"11. Does NSF test for every substance on the WADA or MLB banned substance lists? __No,__ the sport banned substance lists (e.g. WADA, NCAA, NFL, etc.) are purposely open ended to account for new substances and for various methods of administration (e.g. injection, inhalation, etc.) The Certified for Sport (Trademark) program tests products that you eat or drink and is specific to substances that are orally bioavailable or would represent an doping risk if ingested."* See: https://www.nsfsport.com/ news-resources/documents/ds_cert_for_sport_faq.pdf

154.   Based on the above statement by NSF and the admission that it does not test for every banned substance on the MLB list, it is clear that the entire NSF program is a sham. Furthermore, the fact that NSF claims the products they approve are "Certified for Sport" and do not present a doping risk, is completely false as proven by third party testing showing that bio-available levels of the banned substance in MLB is absolutely present and at bio-available high levels upon consumption.

**Expert Reports detailing IGF-1 is present in animal products, milk, meat, etc.**

155.   Per the JDA, MLB uses the WADA approved Montreal lab to conduct drug testing. WADA's own science director, Dr. Oliver Rabin, provided a detailed deposition during the professional golfer, Vijay Singh's overturned suspension for use of deer antler, and stated to the Court that: natural IGF-1 is found in deer antlers and colostrum (milk).  https:// drive.google.com/file/d/1MTA6FcpAHSNKDFY8aUk5alblQCrtL0nB/view?usp=sharing

156.   Dr. Douglas Kalman's expert report details: how natural IGF-1 is found in numerous MLB approved and sponsored products.

https://drive.google.com/file/d/1W2otrfjuFLWrxO-ruUVFqz-cg8MxcyrE/view

157.   Dr. Stanley Korenman / UCLA expert report details that: "amount of IGF-1 peptides found in the UCLA and SMRTL samples were consistent with deer antler IGF-1 and other foods that naturally have IGF-1 in them such as milk and meat." https:// iapps.courts.state.ny.us/nyscef/ViewDocument? docIndex=7_PLUS_NZqDdeRW3PwIMCdLwZmg==

158.   A recent medical study detailed how important it is for humans to have a high enough IGF-1 level in order to survive the deadly Coronavirus disease 2019 (COVID-19) and conclusions state: *"Higher IGF-1 concentrations are associated with a lower risk of COVID-19 mortality*." See: https://www.medrxiv.org/content/10.1101/2020.07.09.20149369v1.full.pdf

159.   Therefore, MLB and MLBPA are engaging in serious negligence in their potential and fatal harm to their players and the public by their confusing positions on the ban of IGF-1, as humans must have a healthy IGF-1 level in order to survive the deadly COVID-19, which to date has killed over 5 million people worldwide.

**Klean Athlete's false advertising online and on packaging:**

160.   Klean Athlete's current whey protein ads on amazon.com, state: *"Klean Athlete (TM) is tested clean of banned substances"… "The NSF Certified for Sport (TM) certification program helps athletes, coaches and trainers make more informed decisions when choosing sports supplements. The program is recognized by the NFL, NFL Players Association, MLB,*

*MLB Players Association"*

https://www.amazon.com/Klean-Athlete-Integrity-Certified-Chocolate/dp/B072Z3PD8V/

ref=sr_1_5?keywords=klean%2Bprotein%2Bpowder&qid=1639223878&sr=8-5&th=1

161.   This is false advertising, as Plaintiff has tested this exact product (via third party

lab) and it contains bioavailable levels of IGF-1, which deem it banned in baseball. Klean

Athlete's attempts to rely on NSF claims to further their scheme.

162.   Third party lab testing resulted in an increase of 14.53% bioavailable in IGF-1, per

blood test, upon consumption of approximately 300 grams of Klean Athlete whey protein within

a 24 hour window, with no interference and/or consumption of any other substance expect water

consumed during testing period.

**Muscle Milk promotes MLB Clubs per its labeling and sponsors numerous MLB players:**

163.   Muscle Milk, parent organization CytoSport Inc., produces ads in print, online, and

worldwide while displaying the MLB trademarked logos of MLB Clubs (Chicago Cubs,

Chicago White Sox, Texas Rangers, and Los Angeles Dodgers) and using the likeness of many

MLBPA members (Clayton Kershaw, Noah Syndergaard, and Corey Seager), each of which

require a license issued by MLB and or MLBPA entities.

164.   Muscle Milk also presents the NSF Certified for Sport logo, which is false

advertising, as it contains bio-available levels of IGF-1, which are banned in baseball. See pages

26-28 of testing results and MLB related ads: https://drive.google.com/file/d/

1OIb0k5OZvIuSaa6IIaVoqsS0jJ0KFHdd/view

**Blue-Emu endorsement on MLB.com and 13 MLB Clubs with exclusive endorsement**

**deals:**

165.   On February 20, 2020: MLB.com stated: *"Major League Baseball and NFI Consumer Products today announced a new multi-year sponsorship agreement between MLB and NFI's Blue-Emu product line, naming it the Official Pain Cream, Spray and Patch of MLB. With this new partnership, Blue-Emu plans to focus baseball-themed marketing around their line of pain-relieving creams, sprays and patches across a variety of digital and broadcast media, and in-store at major retail locations."* *"In addition to the MLB sponsorship, Blue-Emu has exclusive deals with 13 MLB Clubs, including the Arizona Diamondbacks, Atlanta Braves, Baltimore Orioles, Chicago White Sox, Cincinnati Reds, Cleveland Indians, Colorado Rockies, Houston Astros, Kansas City Royals, Miami Marlins, New York Mets, Pittsburgh Pirates, and Tampa Bay Rays."* See: https://www.mlb.com/press-release/press-release-blue-emu-leads-off-baseball-season-with-new-mlb-partnership

166.   Plaintiff has tested this exact product with a third party lab and it contains bio-available levels of IGF-1, which deem it banned in baseball. Blue-Emu is not an NSF approved product.

167.   Blue-Emu also appears in the MLB dugouts and bullpens (aka: arm barns), readily available for players use during games. See pages 32-33: https://drive.google.com/file/d/1OIb0k5OZvIuSaa6IIaVoqsS0jJ0KFHdd/view

168.   MLB and these 13 MLB Clubs are in violation of the Lanham Act, for false advertising.

**Informed Choice / Informed Sport - false adverting:**

169. Informed Choices' website states: *"Testing Specifications: Informed Sport tests sports supplement products for a wide range of banned substances on the WADA Prohibited List, as well as lists for organisations such as the AFL, NRL, NFL, NCAA and <u>MLB</u>."* https://sport.wetestyoutrust.com/about/science-testing

170. Informed Choice is a third part testing group, similar to NSF and has a Sport branch which falsely states its products are free of MLB banned substances. Informed certifies numerous products derived from animals, including whey protein, which naturally contains bio-available IGF-1, just as all other whey protein products as they are each derived from milk.

171. Informed's slogan on their website is: *"Why Risk It?"* Their site further states: *"To ensure our certified supplements are safer for athletes, we test every single sports supplement batch for banned substances before being released to market. Our sports supplements certification process is trusted by sports professionals all over the world - with Informed Sport, you can be confident your reputation is in safe hands."*

172. Plaintiff wrote to Informed Choice and asked about IGF-1 being present in their approved products and what level of IGF-1 was in there animal derived approved protein products. Rob Graf, their head of business development in America, stated: *"I must pass on your request at this time."*

**The Houston Astros are portrayed as World Champion cheaters, but MLB's Commissioners Office is the common denominator and epicenter of all baseball related malfunctions**

173. It is widely assumed that the Astros' organization are the biggest cheaters in

baseball, with the recent revelations of the trash-can banging sign stealing scheme and the sticky substances their pitchers unlawfully added to the baseball.

174.    Under the direction of former GM/executive Jeff Luhnow and former pitching coach Brent Strom, the Astros and Cardinals misappropriated Plaintiff's trade secrets in relation to his unique enhancements to pitching, known as The Nix Method. See ongoing 2018 lawsuit set for trial in August 2022: Nix v Luhnow: https://drive.google.com/file/d/1l-9z9CV9CP4lD2qUYFaRQmBRgJOdazYt/view?usp=sharing

175.    Nix was also a whistleblower in the FBI's investigations of multiple MLB matters, including the Astros and Cardinals database hacking scandal. The FBI informed Nix of MLB employee (and alleged computer hacker) Neil Boland's role as MLB's point man in the FBI's investigation. Boland's name kept appearing as the FBI dug deeper and the FBI was provided detailed information by former MLB Department of Investigations employees, which raised concern with the FBI about how MLB was going about its non-legally enforceable internal investigations, including the Biogenesis matter. Nix informed the FBI well in advance of many of unknown unlawful activities within MLB, including some items that have recently rocked baseball. Upon information and belief, The MLB's Commissioners Office selectively enforced many rule violations against the Astros, including the sign stealing issues, while numerous teams were doing similar activities, yet went unpunished.

176.    Upon the Astros firing of their GM Jeff Luhnow and Manager Andrew Jay Hinch, the Astros hired Johnny B. "Dusty" Baker Jr. in early 2020. Ironically, Baker endorses deer antler products, which contain IGF-1. Upon Baker's hiring, Plaintiff Nix's attorney immediately

sent the Astros and MLB counsel an email reminding each that IGF-1 is a banned substance. Neither MLB or the Astros took action against Baker, which is evidence once again MLB selectively enforces its seven near identical drug policies, which cover all MLB related employees. See email to Astros and MLB Commissioners Office: https://drive.google.com/file/d/1saaagtUV9bsnY8iFXkm78Y4MnTbNV2Ao/view?usp=sharing

177.   Numerous publications also detail how the Astros' Baker kindly goes out of his way to bring players exotic foods including jerky meats and various meals, including providing oxtail to Latin players. The Astros under the former direction of Luhnow also hired sports performance coaches and nutritionists, including dietitian Roberta Anding, who manipulated players' diets and nutritional intake with numerous performance enhancing items including IGF-1, as the Astros sought every possible advantage regardless of MLB rules. Upon information and belief, in or around 2018 Luhnow on behalf of the Astros, reached out to MLB for clarity on the alleged ban on natural animal products/IGF-1 and MLB did not stop the Astros or any team in providing their players the banned substance, as MLB directed them to only use NSF approved items.

178.   The Astros core players in the past years consist of Carlos Correa, Jose Altuve, George Springer, and Alex Bregman. Each of these players regularly appear along with the Astros mascot, Orbit, in promotions for the Texas based grocery giant H-E-B. In the many commercials, these MLBPA members are shown consuming and promoting H-E-B ice cream, meats, and numerous other products which are derived from animals and naturally contain the banned substance IGF-1. See: https://www.youtube.com/watch?v=LS37ThXCjJ0

179.   The Astros, MLB, the Astros' players, and MLBPA each profit from these endorsements. Per the MLBPA license agreement: *"MLBPA holds the exclusive, worldwide right to use, license and sublicense the names, numbers, nicknames, likenesses, signatures, playing records and biographical data (known as "publicity rights") of all active MLB players (collectively, the "Rights") for use in or in connection with any brand, product, service or product line in various circumstances, including **when more than 2 players are involved** in such brand, product line or other venture."* See pages 34-37: https://drive.google.com/file/d/1OIb0k5OZvIuSaa6IIaVoqsS0jJ0KFHdd/view

180.   Therefore, MLBPA, the Astros, Astros' players, MLB, and even the Astros' mascot are conspiring and unlawfully profiting upon endorsement and participating in the sale of the banned substance IGF-1 via multiple sponsored products including but not limited to H-E-B and Blue-Emu.

181.   Plaintiff Nix randomly met Astros' strength coach, Taylor Rhoades, at a local Houston area public gym in or around January 2021. Rhoades kindly informed him of his role with the Astros and Plaintiff asked him if the Astros and MLB truly ban animal products which contain IGF-1. Rhoades had never heard of such ban and informed Plaintiff he often spoke to MLB Joint Strength and Conditioning Coordinator Timothy Maxey, who oversees supplements and strength coaches, yet Maxey had never mentioned that protein products were banned. Rhoades informed Plaintiff of how he knew the inner workings of NSF and said it was a money making scheme and many players, such as the Yankees' Giancarlo Stanton, endorse non-approved NSF products, such as protein powder that he cannot even legally use, simply because

it is not NSF certified. When Plaintiff fully informed Rhoades of the matter and ban, Rhoades

stated MLB is simply all about making as much money as they can and confirmed that Gatorade

whey protein bars and Blue-Emu is in fact found in the dugouts, especially during playoff time,

as they are being marketed to a larger audience. Rhoades stated the Astros serve animal food

products and allow players to regularly consume many animal proteins and no player is ever

suspended for such use.

### 2020 MLB NL Cy Young Award Winner Trevor Bauer's habitual cheating and Agent Luba's unlawful activities:

182.   In late 2019 then Reds pitcher Trevor Bauer and his agent Rachel Luba were

constantly in the news and on social media complaining about MLB's selective enforcement of

countless rules. Bauer even started a social media campaign to push his agenda through a

company he founded with Taiki Green, called Watch Momentum. Upon information and belief

neither Bauer or Watch Momentum has obtained licensing agreements with MLBPA or MLB

for use of commercial publicity rights.

183.   On January 29, 2020, Plaintiff informed former MLBPA attorney turned sports

agent Rachel Luba of the Federal lawsuit, DNA/Nix v. MLB; MLBPA in California regarding

the ban of IGF-1 found in approved/sponsored supplements. Nix sent Luba a short text

message, stating: *"Is this the correct contact for attorney/baseball agent Rachel Luba? You and

your clients may want to read over this matter."* (inserted- copy of the publicly filed lawsuit just

days before). Luba responded: *"Who is this"*. Nix responded: *"This is Neiman Nix. I am

informing agents of the positions of MLB and MLBPA, as I do not believe either are informing

*the players of the true specifics of the drug policy. The recently filed lawsuit explains each*

*parties position and it would be in the best interest for all agents to be aware of and inform*

*their clients. It is my understanding that you have preciously* [sic- autocorrected from

previously] *worked with the PA in limited roles. Should you or any clients want to speak about*

*this, feel free to reach out. Many things are going on that players and agents should be aware*

*of. Thank you.*"

184.   Luba and her top client pitcher Bauer, quickly contacted the MLBPA office (and

possibly MLB and NSF) and communicated at length with MLBPA to clarify if natural animal

products, which contain IGF-1, are truly banned. Discovery will likely reveal the nature of their

conversation and how they did not deter Luba's clients from consuming IGF-1.

185.   MLBPA, upon learning from ex-MLBPA intern/employee/attorney Luba that Nix

had sent her a short text message, which Luba allegedly forwarded to MLBPA's Bob Lenaghan

and likely others at MLBPA, had their attorney Rubin quickly contact Nix's attorneys and

demanded Nix stop talking with agents immediately. MLBPA Rubin's January 30, 2020 email

states: *"I just left you a voice mail. Please let me know this afternoon what Neiman Nix told you*

*about his outreach to player agents, and how we can ensure it does not happen again."*

186.   MLBPA tortiously interfered with Nix's prospective and business relationships

with baseball agents to which he has had long connections with many, but none with newly

certified Luba. MLBPA did not want agents to know of their positions on IGF-1 and tried hard

to stop Nix from sending public documents out to any person MLBPA had affiliation with, and/

or for Nix to be in contact with, as MLBPA did not want the truth to get out. Upon information

from numerous MLB players, MLBPA did not even tell their own members of the ban on natural IGF-1, how approved/sponsored products contained IGF-1, or even the fact that MLBPA was being sued, to which every member should have been notified.

187.   Defendant MLBPA stated to Nix's attorneys in September 2018 that: *"the Joint Drug Prevention and Treatment Program expressly lists IGF-1 as a banned Performance Enhancing Substance and does not distinguish between natural and other sources of IGF-1 in that listing."* This is completely different than what MLBPA likely presented to Luba and Bauer, as they continued to endorse and/or consume IGF-1 after even checking with MLBPA, thus conspiring together unfairly against Plaintiff.

188.   Bauer continued his regular use of animal products and double-downed on consuming a great deal of IGF-1 per his actions viewed on his YouTube video blog, where Defendant Bauer is regularly consuming NSF approved protein shakes and various vitamins, while under the direction of Luba and a hired performance enhancement coach Dr. Andy Galpin (Ph.D.), with the goal of a performance enhancing advantage.

189.   Luba is depicted in Bauer's social media feeds, including numerous YouTube videos, even hosting a quasi-talk show with reporter Jessica Kleinschmidt, called CorkedUp, to which they basically endorse and/or encourage PEDs and/or banned substances as a way for future ballplayers to unlawfully profit from such use. Bauer's company also sells shirts that state: *"Steroids saved Baseball"*.

190.   Bauer went as far to even purchase an expensive blood testing machine, called a Reflotron Plus, which tests numerous parameters from blood, plasma or serum. This was

detailed in Bauer's daily video blogs entries, publicly available on on YouTube at Watch

Momentum, where his co-agent Rachel Luba often publicly participates and oversees content.

Source: https://www.youtube.com/watch?v=xeatu7NBLtg

191.   In or around 2020 to mid 2021, Luba is routinely seen in the Watch Momentum

videos on YouTube endorsing a supplement called Built Bar. The Built Bar labels detail that

they contain whey protein, which naturally contains IGF-1 derived from milk, a banned MLB

substance. Built Bar is not NSF certified.

192.   Luba is a certified MLBPA agent. MLBPA regulations state: "*§5(B)(20) –*

*Providing Banned Substances – No Player Agent, Expert Agent Advisor or Applicant shall*

*provide or assist any player in obtaining any substance prohibited under Major League*

*Baseball's Joint Drug Prevention and Treatment Program or any other rules applicable to that*

*player. No Player Agent, Expert Agent Advisor or Applicant shall engage in any other conduct*

*that could subject a player to discipline under Major League Baseball's Joint Drug Prevention*

*and Treatment Program.*"

193.   Not only does Luba provides and assist her clients with banned substances (in

many forms), but also participates in the sale as she endorses Built Bar and offers a 20% off

coupon code through Bauer's Watch Momentum.

194.   Based on this detailed evidence, MLBPA must cancel Luba's certification, and in

fairness cancel all player agents certifications if they engage in providing banned substances,

per MLBPA policies.

195.   Public records reveal that Luba is currently being sued by a former teacher that she

allegedly had fired for revealing her alleged improper relationship with her client Bauer along

with sales of banned substances among other claims. See: https://drive.google.com/file/d/

1xg4GPkoomVqxsUmW4QkOzkT9kbRDFMjG/view?usp=sharing

196.    Plaintiff Nix, once again put MLB, MLBPA, and all 30 MLB Clubs (via interested

parties) on notice December 23, 2020, detailing his findings and lab results of IGF-1 being

present in MLB approved/sponsored products. This detailed packet informed MLB of numerous

players, including Defendant Bauer who endorse the banned substance IGF-1. https://

drive.google.com/file/d/1OIb0k5OZvIuSaa6IIaVoqsS0jJ0KFHdd/view

197.    MLB's Commissioners Office did not suspend Bauer or any of these players for

their open use and endorsement of banned substances, as Bauer received multiple $100 plus

million dollar offers from MLB Clubs. Bauer would end up signing with the Los Angeles

Dodgers for a reported $102 million dollars for a 3 year guaranteed contract in February 2021.

Therefore Bauer, in association with his agents Jon Fetterolf and Luba, unjustly enriched

themselves over $100 million dollars.

198.    Bauer knowingly cheated his way to his abbreviated season 2020 Cy Young Award,

where he greatly increased his daily IGF-1 intake and used a foreign substance on the baseball

to create a greater spin velocity.

199.    Bauer enhanced his pitching abilities while at Driveline Baseball Enterprises, in

Seattle. Driveline was sued by Plaintiff in 2018 for Fraud, Copyright Infringement, False

Advertising, Trade Secret Misappropriation, Deceptive Trade, Unjust Enrichment, among other

claims. Nix v Driveline complaint: https://drive.google.com/file/d/

1FTuzdzOoj4YqLoLBVLzm1_7jdOXIHMwb/view?usp=sharing

200.   Agent Luba has since retained former Driveline coaches who went on to coach for MLB Clubs as well as various Driveline trainees. Bauer and Luba abruptly left Driveline and dissolved their relationship with Driveline for unknown reasons. Driveline has been accused of selling and promoting banned substances. Driveline's very own long-time general counsel (who defended against Nix) and the owner/founder's long-term best friend has recently died at the age of 42 of an alleged drug overdose involving heroin, fentanyl, and many other related illegal drugs. See recent police report: https://drive.google.com/file/d/ 1Y64PPxdTdzOctQAoXd5KMp71RyG03OH3/view?usp=sharing

201.   Since Nix was not able to communicate with agents, per MLBPA's interference, Nix has been unable to secure baseball employment of any sort, while Luba has secured multiple contracts for ex-Driveline pitching coaches with no true pro baseball background and are likely infringing on Nix's protected/copyrighted material via the Driveline items that were copied as alleged in Nix v Driveline.

202.   Bauer was suspended with pay by MLB in the summer of 2021 for an alleged physical assault and non-consensual sex while the alleged victim was not conscious. Bauer had more than one allegation against him and is awaiting possible punishment from the State of California and Major League Baseball. https://www.tmz.com/2021/06/30/los-angeles-dodgers-mlb-star-trevor-bauer-disturbing-allegations-restraining-order-alleged-assault/

203.   While this extremely disturbing allegation is never acceptable behavior, MLB, MLBPA, and Luba ironically may very well be partially responsible. MLB knowingly allowed

Bauer to regularly consume a banned substance at an extremely high level which may have influenced his hormones to which he may not have been able to control. If MLB would have punished him and followed their own rules and regulations the alleged rapes and assaults may never have happened. Now, MLB is likely to seek a long term suspension of Bauer based on items to which MLB Clubs have knowingly provided him to which likely influenced his behavior. This is similar to a bar over serving a patron who then proceeds to drive intoxicated and injure an innocent party, State laws have serious consequences for this type of negligence. The sad irony here is that MLB selectively chose not to punish Bauer for violations of using a foreign substance on the baseball, selectively chose not to enforce its drug policy in actually providing him with a banned substance, and now may choose to selectively enforce its Domestic Violence Policy in severely punishing a player based in part of public pressure.

**MLBPA Executive Member/Yankees Pitcher Zack Britton and MLBPA refuse to follow US Law:**

204.    In late January 2021, Plaintiff was at a college baseball field in Texas and said hello to a number of college and pro players working out in the offseason. One of the fellow ball players was drafted by the same team scouts that had drafted Plaintiff out of HS, also in Texas. Another player was Yankees pitcher Zack Britton.

205.    Defendant Britton was voted by the MLB Players to represent them as 1 of the 8 executive committee members of the MLBPA. Britton is in constant communication with Defendant MLBPA and is a liaison for the other players. Britton is also the MLBPA appointed player representative for the NY Yankees.

206.   Plaintiff Nix spoke to Britton and asked him if he or the other players were aware of his lawsuit against MLBPA or the ban of natural animal products / IGF-1. Defendant Britton was standoffish and at first did not believe Plaintiff, but upon Plaintiff mentioning countless names and events related to MLBPA, Britton could then see Plaintiff was serious and actually much better informed on the current issues involving MLBPA than himself.

207.   Britton stated that he was completely unaware of the lawsuit against MLBPA and thought the ban of IGF-1 found in animal products made no sense. Plaintiff further explained to a few select players, including Cubs pitcher Jake Arrieta. The players and Britton were very concerned, but as Arrieta explained to Plaintiff, he didn't really care, "as long as he got paid".

208.   Defendant Britton stated he would speak to his wife who is an attorney and she could find the filing, but refused to provide an email address for Plaintiff to send over non-filed information. Plaintiff found this odd, as Britton was literally appointed to represent other pro player's interests such as Plaintiff. Defendant Britton then relaxed as he could tell Plaintiff meant well and was working for the greater good in not seeking money from the MLBPA, but instead attempting to resolve the ban on natural animal products, where Britton stated every player takes protein and consumes meat, after Plaintiff explained to a few of the pro and college players just what the natural substance IGF-1 truly is.

209.   Plaintiff also detailed to Britton and the other players just how corrupt MLB truly is, as Plaintiff described the many allegations made in a recent book titled Baseball Cop, written by former MLB employee Eddie Dominguez, detailing countless unlawful activities for decades behind the scenes in baseball. But the most disturbing items Plaintiff and Britton discussed was

the fact that the MLBPA did not inform the executive committee players or their own members of the alleged invasion of privacy by MLB's Neil Boland as he allegedly set up a will-call ticket database to spy on the players. Plaintiff informed the players that he personally provided MLBPA and their lawyer Michael Rubin items relating to the corruption in the Commissioners Office, including the invasion of privacy allegations, as part of the Nix Report, to which none of the players were aware of.

210.   Plaintiff watched the players throw during their short afternoon practice and noticed some serious flaws in Britton's throwing motion and explained to Britton he could help him improve his throwing efficiency. Plaintiff did not reveal his trade secret methods during the brief conversation, but did inform Britton of his background to which Britton and many of the players had little knowledge of such comprehensive history in baseball or medical sports science related fields, but were left intrigued. In an odd coincidence, the Yankees employ a few ex-Driveline coaches, including the Yankees' Director of Pitching.

211.   MLB pitcher Arrieta requested Plaintiff send over a copy of the complaint and testing as he said he was interested in learning more, Plaintiff provided the information later that afternoon via an email.

212.   Defendant Britton contacted MLBPA representatives and likely communicated at length, as Britton was very curious as to what was going on and why he was not informed of the MLBPA being sued, to which he is an executive board member and should have been consulted. Upon detailed information and reasonable belief Britton also asked MLBPA if natural IGF-1 was truly banned.

213.  Plaintiff then received a nasty email from MLBPA's Michael Rubin threatening

sanctions if Plaintiff returned to the Texas college or any other location where MLBPA's

member and player reps gather. As it is quite clear MLBPA and Rubin did not want Plaintiff to

discuss the ongoing matter to which the MLBPA was attempting to hide from their own

members, as Plaintiff simply informed the players of the truth. See Rubin's threatening letter:

https://drive.google.com/file/d/1La77AposCtX52TO7fU5oQzL76Wm9-CPc/view?usp=sharing

214.  MLBPA and Rubin tortiously interfered with Plaintiff's ability to work with

prospective clients, as Plaintiff's background and training is in sports and baseball related

activities. Neither Britton or any of the players ever reached back out to Plaintiff for future

training, even though a few showed a great deal of interest, but were likely informed by

MLBPA not to associate with Plaintiff. Sadly, the Yankees' entire organization suffered greatly

as Britton required two arm surgeries during 2021, similar to procedures Plaintiff had and

successfully recovered from in record time. These surgeries will put Britton on the injured list

for nearly two years and cost the Yankees roughly $26 million dollars in lost services.

215.  Upon information and belief Defendant Britton informed his agent (Scott Boras)

and the 7 other members of the MLBPA executive committee (consisting of: Max Scherzer,

Andrew Miller, James Paxton, Gerrit Cole, Jason Castro, Francisco Lindor, and Marcus

Semien), among other Does, of his detailed conversation with Plaintiff, as well as the

information relayed, along with the ban of natural IGF-1. It is important to note that 5 of the 8

executive members retain agent Scott Boras, and upon information and belief these players

greatly influence the MLBPA's decisions. Upon information and belief each of these parties is

conspiring and/or aiding and abetting the activities of MLBPA in order to greatly profit and

unjustly enrich themselves, in a multi-billion dollar scheme.

216.   Defendant Britton had a duty to the Yankees' players to inform them that they were

in violation of the Joint Drug Agreement, as they regularly consumed IGF-1 items, including

but not limited to Giancarlo Stanton's endorsement of the non-NSF certified Six Star Protein

and Aaron Judge's endorsement of the delicious sandwich shop Jersey Mike's. Defendant

Britton should be held partially liable for the Yankees $205 million dollar (unjustly enriched)

payroll as he allowed his team to break MLB rules and violate the Nix v ESPN Federal law,

which states all forms of IGF-1 are banned in baseball.

217.   Defendant Britton, MLBPA, and the executive committee members were negligent

in not taking steps to correct the issues related to IGF-1. The correct step would have been to

bring in more competent leaders to oversee the MLBPA and/or take drastic steps in dissolving

the MLBPA union, as the MLBPA was clearly not serving their best interests or honestly

representing their members. Because Britton knowingly went along with the corruption within

MLBPA, he therefore unlawfully conspired with Defendant MLBPA's unlawful activities.

**MLBPA and MLB continues to tortiously interfere with Plaintiff's business relations:**

218.   MLBPA's attorney Rubin and MLB's attorneys reached out to Nix's NY based

attorney Paul Golden, in late November 2020, who Nix had a previous business relationship

with. MLB and MLBPA's attorneys both threatened sanctions against Golden if he were to take

on Nix's California appeal in DNA /Nix v MLB/MLBPA. These threats happened before

Golden was signed up to even take on Plaintiff's California appeal and caused Golden to

become skittish and remove himself from representing Nix based on fear that MLB and MLBPA would again lie and state that IGF-1 was banned or even worse falsely re-claim that Nix was dealing the illegal drug human growth hormone, to which Nix has never been associated with selling.

219.   On or about November 25, 2020, MLB attorney Steven G. Kobre wrote Nix's NY attorney Paul Golden who was not retained to work on Nix's CA appeal, yet Kobre on behalf of MLB threatened Golden with a lengthy email stating: *"Should any other harassing litigation be filed we will also ask the Court to hold you and your clients accountable to the fullest extent under the law."* Golden wrote back, stating: *"Note that this firm did not file a notice of appearance in the California federal case, or handle any portion of that litigation.  You should contact appropriate counsel if you wish to raise an issue concerning that matter.  Also, please refrain from making further unprofessional threats against this firm."*

220.   Golden knew that MLB and MLBPA had no problem lying to U.S. Courts and was not yet retained, so Golden informed Nix that he was now scared of the great lengths MLB would go against him personally. Golden informed Nix that this made him feel skittish and/or nervous as no attorneys had ever threatened him like this, much less multiple attorneys, therefore Golden resigned from representing Nix based on the interference of both MLB and MLBPA, as Nix was left to go at his appeal alone in California, having to drop his company DNA from the appeal.

221.   MLBPA's Rubin also interfered with Nix's relationships with baseball agents and demanded he stop speaking with them and or informing of the ban on IGF-1 products to which

were not enforced except against Nix. Since Nix is a former pro baseball player and long time

coach as well as an expert in the sports fields, Nix has a more than reasonable probability that

Nix would have entered into a business relationship with other baseball agents as he has done so

for many years since he was 18 years old and drafted into pro baseball straight out of high

school. Many of these agents, including the very one Rubin informed Nix to stop talking to,

Agent Luba, secured multiple coaching jobs for baseball pitching coaches to which Nix was far

more qualified, but Nix was not able to pursue these based on MLBPA's interference. Plaintiff

suffered harm as it severely limited his business opportunities due to MLBPA's unlawful threats

and interference.

      222.    MLBPA's Rubin again interfered with Nix's baseball relationships to other players

and prospective clients who would want to train with Nix. Nix has privately developed an

entirely unique method of pitching, training, and diagnosis called the Nix Method, which some

MLB Clubs have unlawfully stolen/misappropriated from Nix. In January 2021 MLBPA's

Rubin learned that Nix met with a number of baseball players, some of which were MLBPA

members. Nix informed them of his legal matter, the wild ban on natural IGF-1, and that he

works as a specialty trainer with baseball players/athletes/clients could benefit from his

services. MLBPA's Rubin threatened Nix on behalf of the MLBPA to not go to any places where

MLBPA members gather (including college fields), even if they are not at all affiliated with

MLB or MLBPA. Due to this interference Nix was unable to secure clients who could have

used his expertise in baseball, nutrition, fitness, or sports science related fields where Nix is a

leading experts in such industries.

223. Due to these multiple acts of intentional interference Plaintiff has suffered financial and emotional harm via current relationships and contracts with parties and probable prospective business relations.

**All relevant cases and outcomes related to IGF-1 and Defendants in this suit regarding the conspiracy against Nix:**

224. Nix v MLB Miami Dade, FL, Feb. 2014: https://drive.google.com/file/d/ 11RxnJfvkawG5C0rI5GnyW_UNByMVZAMF/view?usp=sharing  First suit v MLB: Upon filing, MLB agents immediately had Plaintiffs' business relationships and accounts terminated with such companies as YouTube/Google, Facebook, and PayPal. At least five MLB Department of Investigations employees were fired by MLB for cause, just after this matter was filed. Plaintiffs' attorney disappeared and was later disbarred after the case was abandoned before ever being served. It was later learned upon receiving a subpoena in 2016, Nix, his company and his attorney were hacked into by MLB agents, under the direction of MLB's Neil Boland, resulting in 2019 the filing of: Nix v MLB, Manfred, Selig, Burnham, and Boland: https://drive.google.com/file/d/1c5tv8PWoJG87PA4cDO_qY3NrEGahPV_A/view?usp=sharing

225. Nix v MLB NY, July 2016 / November 2016: https://iapps.courts.state.ny.us/ nyscef/ViewDocument?docIndex=zQDULX/uMClZqKzar6kcPA==  First filed in NY Federal Court, then quickly re-filed in NY State Court with added defamation claim. Outcome: MLB lied and stated all forms of IGF-1 are banned, then completely changed their position in the appeal and said it was high levels of IGF-1 which are banned, which is also fraudulent. The interference claim was also wrongfully dismissed based on the two dismissal rule, which MLB

also lied about, saying Plaintiff should have known he was hacked into (before a subpoena

detailed the unlawful hacking and resulting IP address), which is not even possible absent being

psychic.  NY appeal: https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=o/

Vy7S5SnChsva9yUjNKzg==

226.   Nix v ESPN, AP, USA Today, March 2018: https://drive.google.com/file/d/

1y_QA7kJblXZHsBVqjDqzitrdDQ4L4UJ2/view?usp=sharing  Defamation claim, Nix lost on

account of MLB stating to AP reps that all forms of IGF-1 are banned, which is not true based

on MLB's revealing in NY appeal as they stated only high levels are banned, which is also

false.

https://drive.google.com/file/d/1y_QA7kJblXZHsBVqjDqzitrdDQ4L4UJ2/view?usp=sharing

227.   DNA; Nix v MLB; MLBPA, Northern District of CA:  https://drive.google.com/

file/d/1gEYbIu1TZzguk746ZmEU4JM7OBvGMeBo/view?usp=sharing  Claims associated with

based on MLB and MLBPA allegedly banning IGF-1, yet unfairly profiting and falsely

adverting products, which lab tests proved contain IGF-1 in bio-available levels, thus engaging

in unfair competition and violating the Lanham Act. Currently on appeal: https://

drive.google.com/file/d/1gEYbIu1TZzguk746ZmEU4JM7OBvGMeBo/view?usp=sharing .

228.   Based on these Court orders MLB and MLBPA have sanctioned Nix hundreds of

thousands of dollars in multiple Courts and continue to unlawfully threaten Nix with further

sanctions all based on the fact that MLB and MLBPA say they ban the natural IGF-1 found in

all animal products, which is a complete fabrication of the truth.

229.   MLB and MLBPA's material misrepresentations to multiple Courts related to the

IGF-1 ban and MLBPA falsely stating that Nix sells human growth hormone have resulted in

Nix not just being sanctioned, but also falsely held in contempt for his inability to pay hundreds

of thousands of dollars in fraudulently acquired sanctions, but also unlawfully subjected Nix to

depositions. In January 2021, MLB and MLBPA spent a full day deposing Nix on all things

under the moon, as they went on a wild fishing expedition seeking information non-related to

the CA case at issue and unlawfully threatened sanctions should Nix not comply. Defendants

MLB and MLBPA sought an enormous amount of information outside the scope of the IGF-1

matter (as Nix drank a glass of milk and reminded each party that IGF-1 was present in all

animal products), which they misled courts to be able to depose Nix and violated his Fourth

Amendment right to privacy, all based on lies in order to unlawfully seek discovery.

**Case laws banning both natural and synthetic IGF-1 in Major League Baseball:**

230.   Plaintiff respectfully asks this Court to formally **take judicial notice** of the

following outcomes in New York, California, and Florida per the 11th Federal Circuit. Because

the Eleventh Circuit decision is now final, it is clear that the prohibited substance in the MLB

Joint Drug Prevention and Treatment Program at 2.B.68 is Insulin-like Growth Factor (IGF-1),

including all isomers of IGF-1 regardless of the source of the substance or if it is synthetic or

natural IGF-1, as a matter of law.

(A) NY Order, Nix v MLB, June 7, 2018: https://iapps.courts.state.ny.us/nyscef/

ViewDocument?docIndex=CVOK94KeoSaxfsvk69r3jQ==

States: *"MLB provides evidence that it bans IGF-1 in all forms, whether synthetic or natural*

*(NYSCEF 11)."*

(B) DNA;Nix v MLB;MLBPA, October 27, 2020 Northern District of CA: https://
iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=tyuK2L5FZcC96eMaaFxpBQ==
States: *"Major League Baseball ("the league") and the Major League Baseball Players
Association ("the union") have banned players from using both natural and synthetic IGF-1
under their Joint Drug Prevention and Treatment Program."*

(C) Nix; DNA v ESPN; AP; USA Today, 11th Circuit, May 15, 2019: https://law.justia.com/
cases/federal/appellate-courts/ca11/18-14107/18-14107-2019-05-15.html  States: *"The MLB
Prohibited Substances List includes 'Insulin-like Growth Factor (IGF-1), including all isomers
of IGF-1 sometimes referred to as Mechano Growth Factors.' The List does not describe the
source of the substance or distinguish between synthetic and natural IGF-1. Therefore, the
omission of any distinction between synthetic and natural IGF-1 does not render the statements
untrue or defamatory."*

**Every human and mammal that has ever lived has consumed natural IGF-1:**

231.   The indisputable fact remains that every human who has ever lived has and will
consume the natural substance IGF-1. It is important for this Court to fully understand that
humans cannot survive without the essential natural substance IGF-1, and for Major League
Baseball to state publicly to the media and multiple courts that they ban the natural source of
IGF-1 would mean that humans could not legally play baseball. MLB has committed a serious
human rights violation and should be held accountable as MLB Defendants are not at all above
the law.

232.   No baseball player or related employee at any level (Major or Minor League) has

ever been suspended for use, consumption, promotion, distribution, or being part of a sale of natural IGF-1. Nor has any player ever tested positive for any form of IGF-1.

233.    The only player ever suspended for IGF-1, former Yankee Alex Rodriguez, was suspended for a non-analytical positive of the synthetic lab made injectable peptide form of the drug IGF-1, along with HGH, and testosterone during his involvement in the Biogenesis matter, which MLB unfairly tied many innocent parties to, including Plaintiff.

234.    According to an ESPN investigative report (along with multiple firsthand eyewitness accounts): *"Sources also said Bosch injected some non-athlete patients with fake drugs, either saline or bacteriostatic water instead of the HGH or HCG they thought they had paid for."* Source: http://www.espn.com/espn/otl/story/_/id/9215008/forged-prescription-forms-friends-performance-enhancing-drugs-supply-chain-major-league-baseball-players-used-south-florida-clinic  According to medical experts, MLB likely suspended many players allegedly involved in the Biogenesis matter for use of fake drugs, as numerous players were suspended while never testing positive, as MLB bribed a fake doctor with approximately $5 million dollars to falsely testify against MLBPA members, according to a recent 2018 Netflix documentary, Screwball.

235.    Former MLB Department of Investigation manager Eddie Dominguez, recently published a book in 2018, which detailed how Nix exposed MLB's hacker and corrupt activity during Biogenesis, per Chapter 12, aptly titled '*Hacker.*' Amazon.com describes Dominguez's book as shinning *"a light on the inner workings of the commissioner's office and the complicity of baseball's bosses in dealing with the misdeeds comprising the integrity of the*

*game."…"Bracing and eye-opening, Baseball Cop is a wake-up call for anyone concerned about America's national pastime."*

236.   Nix also spoke with the ESPN's Pedro Gomez, after learning of how ESPN was conspiring with MLB during Biogenesis, pushing MLB's false narratives, as ESPN is a longtime business partner of MLB to the tune of a $5.6 Billion Dollar broadcast agreement, as agreed upon in August 2012, just before the Biogenesis mess. The movie Screwball details how ESPN used Gomez to set up a fake interview in a parking lot with the fake doctor (who was allegedly drunk at the time) who ran the fake Miami medical clinic and created a fake narrative for the public to view on ESPN. According to Gomez (a Cuban born former longtime resident of Miami and baseball junkie), MLB used ESPN to conspire with the fake doctor and others associated in order to eventually bribe him with millions of dollars and even a lengthy leniency letter authored by MLB to be presented to a federal criminal court upon pleading guilty to conspiracy to distribute illegal drugs (including to underage minors) and sentenced to four years in prison. Gomez informed Nix that MLB is beyond corrupt and he could never report on all of the illegal activities he knew of or he would be fired or even killed. Gomez noted that ESPN absolutely was part of the Biogenesis conspiracy and helped MLB coverup countless crimes during the Biogenesis scandal and countless other times. Gomez also privately and shamefully detailed the horrible culture at ESPN, how ESPN was full of yes men (but not him), as they followed MLB's lead at all times, which bothered Gomez as he could not truly report independently, yet his honesty gained Gomez countless friends behind the scenes in the baseball world. Sadly, Gomez died at the age of 58 in February of 2021.

74

237.    Based on the related evidence recently discovered, Plaintiff believes ESPN, AP, USA Today, and MLB related Defendants jointly conspired against him with the use of fraudulent methods in further covering up unlawful activities directly related to evidence in the Biogenesis matter and other Nix related matters. Further discovery will reveal even more conspiring acts to which MLB related Defendants, ESPN, and AP should be held accountable for.

**All 30 MLB Clubs put on notice of all forms of IGF-1 banned in Baseball:**

238.    In April 2018, Plaintiff put all 30 MLB Clubs on written notice, stating that MLB has stated all forms of IGF-1 are banned in baseball. Plaintiff further detailed the fact that natural IGF-1 is commonly found in all forms of milk, meat, fish, and even in whey protein. The MLB Clubs did not stop providing their players with IGF-1 based items at all. See email template sent to the Cubs, identically sent to all Clubs: https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=I4VQ4disWFZHuYm7IOo0WA==

239.    MLB's in-house counsel, Patrick Houlihan, who oversees the JDA and CBA for MLB, states at the 57:00 minute mark of this video, that *"MLB encourages players to take NSF certified supplements"…"Under our drug program Clubs actually provide, free of charge, with NSF supplements, and the goal there is to be realistic that players are going to use supplements, protein, things like that, and to give them the tools so they never have to go into a GNC* [supplement store]"  See: https://www.youtube.com/watch?v=nA5zIw6YSdw

240.    Just after Nix had filed a lawsuit claiming unfair trade practices against MLB and MLBPA in January 2020, MLB.com announced that 13 of MLB's Clubs agreed to exclusive

contracts to promote Blue Emu as the Official Pain Cream, Spray, and Patch of their team

(Diamondbacks, Braves, Orioles, White Sox, Reds, Indians, Rockies, Astros, Royals, Marlins,

Mets, Pirates, and Rays) and MLB. Blue-Emu is derived from emu oil and like all animal

products, naturally contains IGF-1, which is banned by MLB. Blue-Emu is not NSF certified,

neither is Gatorade protein, or any animal derived food products, all of which contain IGF-1.

**MLB and MLBPA's Joint Drug Prevention and Treatment Program Discipline:**

241.   Paragraph F. page 42 clearly states: ***"Participation in the Sale or Distribution of***
***a Prohibited Substance  A Player who participates in the sale or distribution of a Prohibited***
***Substance shall be subject to the following discipline: 1. First offense involving a***
***Performance Enhancing Substance: At least an 80-game but not more than a 100-game***
***suspension; First offense involving a Stimulant, DHEA or a Drug of Abuse: At least a 60-***
***game but not more than a 90-game suspension. Notwithstanding the foregoing, if the Player***
***previously was suspended for a minimum of 40 games for a violation of Section 7.A, 7.E and/***
***or 7.G.2 involving a Performance Enhancing Substance, the penalty for a first offense***
***involving a Performance Enhancing Substance shall be a 162-game suspension and a loss of***
***183 days of pay."***

242.   Therefore, the MLB Commissioner's Office must suspend the following players/

employees/teams for participating in the use, sale, distribution, and/or promotion of the banned

substance at Section B. Performance Enhancing Substances, No. 69. Insulin-like Growth Factor

(IGF-1), including all isomers of IGF-1 sometimes referred to as Mechano Growth Factors: Los

Angeles Dodgers, Chicago Cubs, Chicago White Sox, Texas Rangers, Corey Seager, Clayton

Kershaw, Noah Syndergaard, Bryce Harper, Carlos Correa, Alex Bregman, Jose Altuve, George Springer, Astros' mascot Orbit, Albert Puljos, Adam Wainwright, Joey Votto, Johnny B. "Dusty" Baker Jr., Trevor Bauer, among countless others. Based on evidence on pages 28-38, see: https://drive.google.com/file/d/1OIb0k5OZvIuSaa6IIaVoqsS0jJ0KFHdd/view?usp=sharing

243.    Furthermore, Plaintiff saw first hand evidence that MLB players who participate with the Player Alliance, also distribute prohibited substances, including but not limited to food items which contain IGF-1. At an event in Houston, TX, Plaintiff politely put director Christine Coleman and secretary Edwin Jackson on notice of the ban and they have ignored MLB Rules and continued distributing numerous IGF-1 based foods. The Players Alliance is prominently featured on the MLBPA's website, https://www.mlbplayers.com/the-players-alliance. MLB is so proud of these players in association with their charitable work and distribution of food items to people in need, they overlook the fact that MLB bans these IGF-1 animal derived food items and granted the charity with a $150 million dollar donation in July 2021, see: https://www.mlb.com/news/mlb-players-alliance-donation. Based on MLB's own provisions in accordance with their ban on IGF-1, MLB must suspend the hundreds of players who took part in distributing the banned substance in association with the Players Alliance, along with suspending the many MLB owners and executives also involved including: The Orioles' John Angelos, Brewers' Mark Attanasio, Marlins' Derek Jeter, Rockies' Richard Monfort, Rays' Stuart Sternberg, Dodgers' Mark Walter, Indian's Chris Antonetti, Red Sox's Chaim Bloom, Yankees' Brian Cashman, MLB's Theo Epstein, MLB's Michael Hill, Blue Jays' Mark Shapiro, White Sox's Ken Hill, and Giants' Farhan Zaidi.

244.   Furthermore, MLB expressly defined their prohibited substances ban in January 2018 to the Associated Press, stating: *"**MLB confirmed to the AP that "all natural, synthetic and bioidentical versions of any prohibited substances— including, but not limited to, IGF-1 — are considered banned."**"* See: https://drive.google.com/file/d/16sUmEm9x8VaOuifRiSf7QOc-Q2VR1OLH/view?usp=sharing

Based on this definition, players/MLB related employees are also subject natural substances being banned such as list items: (61) Testosterone; (68) Human Growth Hormone (hGH); (70) Human Chorionic Gonadotrophin (hCG); among other items. Based on the natural forms of these substances which are commonly shared through daily human to human interaction including intimacy, virtually every player is subject to being forever removed based on MLB's prohibited substances in relation to a 3 different substance violation, based under section K. 1. *"the Player shall be treated as if he was disciplined for each positive test result separately."* A player does not even have to test positive for the substance, as a precedent has already been set for non-analytical positives to result in violations.

245.   Plaintiff states for the record, that he does not believe any of these players or MLB employees are truly in violation of any rules (as MLB's ban on natural IGF-1 is likely fraudulent), and wishes to point out every human consumes IGF-1 daily. Plaintiff has taken the ultimate stand against the corruption in baseball and is speaking for every past, current, and future player for their right to consume animal products and not to be subject to selective enforcement by the con artists who have run the Major League Baseball cartel for the past many years.

**MLB must choose its fate:**

246.   Since the Commissioner's Office, under the misguided direction of Defendant

Robert D. Manfred, has been put on notice of the ban on natural IGF-1, as have all 30 MLB

Clubs, Plaintiff takes the obvious position that MLB and MLBPA do not truly ban natural IGF-1

at all, as they have never suspended a single player and only enforce the ban against Plaintiff

Nix and his company.

247.   In the event that the Commissioner does not immediately suspend all related MLB

employees for current and/or past use, endorsement, participating in distribution and/or being

part of a sale, then the Commissioner, MLB, MLBPA, The MLB Clubs, The AP, and ESPN,

among others are lying about natural IGF-1 being banned. This should immediately lead to the

removal of all parties in the leadership of the Commissioner Office and MLBPA who have

participated in this massive fraud against Plaintiff and in committing multiple violations of

fraud on the Court and the general public.

248.   Based on the now lengthy history, it is clear MLB, MLB Clubs, and MLBPA chose

to engage in fraud against Nix instead of accepting litigation failure, which should lead to

punitive damages to be awarded to Plaintiff as MLB as a whole have unjustly enriched it's

entire business, the teams values, all players salaries, all related IGF-1 endorsements, IGF-1

related concessions sales, ticket sales, media rights, sports betting, and all other related profits

from players who all consume the banned substance IGF-1 derived from animal products. These

damages are estimated at over $10 Billion per year and would date back to when MLB stated in

a July 2016 press release that Plaintiff Nix admitted to selling at-least one banned performance-

enhancing substance, IGF-1. Therefore, since that date MLB as a whole has unjustly enriched

its entire business over an estimated $50 Billion Dollars, and an estimated $10 plus Billion

Dollars from unjust profits related to the Nutrition Defendants, while completely discriminating

against Plaintiff in the most kafkaesque way, destroying Plaintiff in every possible way

repeatedly, all based on the biggest lies in sports history.

249.   Based on the narrowed scope in relation to if natural IGF-1 is banned in baseball,

<u>Defendants now have the choice to either: (a) End baseball by suspending all parties who</u>

<u>engage in the use, sale, promotion, or distribution of the natural IGF-1 substance or to: (b)</u>

<u>Admit to this Court that they have engaged in countless lies to multiple courts, the media, and</u>

<u>the general public, and that players are free to consume natural animal products without fear of</u>

<u>being selectively sanctioned by the league.</u>

## **FIRST CAUSE OF ACTION**

### **(CIVIL RICO 18 U.S.C. § 1962 (d))**

(Against all Defendants)

250.   Plaintiff realleges and incorporates herein by this reference the allegations in all

paragraphs, as if fully set forth herein.

251.   Major League Baseball has jointly conspired with each Defendant in a manner in

which they have a joint policy in place with Major League Baseball Players Association which

bans all forms of IGF-1. MLB does not at all enforce this ban except for against Plaintiff. Each

Defendant in their own capacity engages in use, distribution, promotion, being part of a sale, or

representing IGF-1 in a manner to which it may be listed on the MLB banned list, but in no way

is this truly enforced or even recognized as a banned performance enhancing substance in the natural form.

252. Each Defendant through a pattern of racketeering activity plays along with MLB to benefit from numerous associated engagements to benefit their own affairs in interstate commerce.

253. The ring leader in this conspiracy is Major League Baseball and it's agent, the MLB Commissioners Office, led by Commissioner Manfred.

254. MLB has conspired with the MLBPA to keep quiet the fact that they allow players and MLBPA union members (including Defendant Britton) to readily use, promote, distribute, and be part of the sale of IGF-1 on a daily basis, contrary to what the Joint Drug Agreement states as to the ban on IGF-1.

255. MLB has conspired and influenced major media outlets such as AP, ESPN, and USA Today, among others, and its agents to consider their completely fabricated lie that MLB bans all forms of IGF-1, including the natural and bioidentical version commonly found in all animal products. The media outlets know this is false, but have gone along with this fake narrative and used it as a defense in a Court of law.

256. MLB and MLBPA sponsor and allow numerous endorsements to use their logos and/or likeness, including but not limited to NSF approved products, Gatorade, Blue-Emu, Muscle Milk, and Klean Athlete. MLB and MLBPA use their Joint Strength and Conditioning employee Tim Maxey to guide players to only use NSF approved supplements, when in fact Maxey knowingly goes along with the fact that the NSF protein products all contain IGF-1

naturally, just as he informed Plaintiff in 2018. MLB in association with MLBPA have silenced

MLB Clubs, MLB Agents, and MLBPA members from speaking with Plaintiff or speaking out

about selective enforcement items in relation to the Joint Drug Policy, directing teams and

players to only consume NSF approved products and not to worry if they have banned

substances as they associate a get out of jail free system where they cannot be punished for use

of NSF items, despite the known fact that NSF items contain the banned substance IGF-1. MLB

does not stop other testing companies such as Informed Sport from saying their approved

products are free of banned substances within the MLB guidelines, when in fact they too

contain at-least one banned substance.

257.   MLB released a press release stating that Plaintiff was selling a banned

performance enhancing substance, IGF-1. Yet MLB does not truly ban this natural form of

IGF-1, which is commonly found in animal products, such as milk and meat. MLB pushed this

false narrative to numerous parties including the media defendants.

258.   The AP, author of articles posted for ESPN and USA Today sought clarity from

MLB after questioning MLB's policy in relation to natural animal products containing the

banned substance IGF-1. In January 2018, MLB informed them that all forms of any prohibited

substance are banned, natural, synthetic, or bioidentical, including all forms of IGF-1. MLB

then completely changed their position in early 2020 to a NY Appellate Court on the IGF-1 ban

stating that only high levels were banned, not the source natural or synthetic, but did not give an

amount, or change their policy on IGF-1, or show any exert of this provision per their policy,

they just simply made it up. The AP, ESPN, and USA Today went along with this knowingly

false statement and prevailed against Nix in a 2018 defamation suit and follow up appeal in 2019. To date the AP, ESPN, and USA Today refuse to correct their articles about Plaintiff, despite being on notice of MLB's latest position as stated in March 2020. Therefore each party conspired together to the detriment of Nix and lessened his goodwill associated with his reputation and business matters greatly.

## SECOND CAUSE OF ACTION

### (FRAUD)

(Against all Defendants)

259.   Plaintiff realleges and incorporates herein by this reference the allegations in all paragraphs, as if fully set forth herein.

260.   Plaintiff reaalleges all items contained in the above First Cause of Action, as fraud is the underlying cause of action under Civil RICO.

261.   In January 2018, Defendant MLB stated to Defendant AP that: ***MLB confirmed to the AP that "all natural, synthetic and bioidentical versions of any prohibited substances— including, but not limited to, IGF-1— are considered banned."*** This was later found to be a fraudulent misstatement of fact. Fast forward to March 18, 2020, where MLB completely changes it's position on IGF-1, without changing the Joint Drug Policy. Here MLB states to the NY Appellate Court that: ***"MLB bans substances, not products, and it is the amount of IGF-1 ingested - not the natural or synthetic source - that matters."***

262.   The MLB Joint Drug Policy does not list any amount of IGF-1, yet does list two other unrelated drugs with threshold amounts to be deemed banned. During this time and until

present MLB has not changed their policy in relation to IGF-1. On May 15, 2019, the Eleventh

Circuit *Neiman Nix, and DNA Sports Performance Lab, Inc. v. ESPN, Inc., The Associated*

*Press Inc., and USA Today*, Case No. 18-14107, specifically stated that: *"The MLB Prohibited*

*Substances List includes 'Insulin-like Growth Factor (IGF-1), including all isomers of IGF-1*

*sometimes referred to as Mechano Growth Factors.' The List does not describe the source of*

*the substance or distinguish between synthetic and natural IGF-1. Therefore, the omission of*

*any distinction between synthetic and natural IGF-1 does not render the statement untrue of*

*defamatory."*

263.   Because the Eleventh Circuit decision is now final, it is clear that the prohibited

substance in the MLB Program at 2.B.68 (and/or recently changed to number 69) is Insulin-like

Growth Factor (IGF-1), including all isomers of IGF-1 regardless of the source of the substance

or if it is synthetic or natural IGF-1, **as a matter of law**.

264.   The fact remains that MLB has never suspended any player for use, promotion,

distribution, or being part of a sale in relation to IGF-1, therefore it is clear MLB lied to the AP.

While the AP may say they justifiably relied on MLB's position, they were also informed by

Plaintiff and provided numerous expert medical reports detailing how IGF-1 is commonly

found in milk, meat, deer, whey protein, and all animal products. Therefore the AP knew MLB

was lying and furthered their conspiracy along with other media publishers for whom the AP

authored false and misleading articles about Plaintiff in relation to his products and natural

animal derived products being banned due to containing IGF-1.

265.   The AP, ESPN, and USA Today and their agents furthered the fraud as they

informed Florida's Southern District and the Eleventh Circuit that all forms of IGF-1 are

banned in baseball, despite knowing that MLB sponsors animal derived protein products and

MLBPA members promote these items through interstate commerce.

266.    Defendant MLBPA sent an email in September 2018 to Nix's attorney, stating:

*"the Joint Drug Prevention and Treatment Program expressly lists IGF-1 as a banned*

*Performance Enhancing Substance and does not distinguish between natural and other sources*

*of IGF-1 in that listing. No determination has been made in any proceeding to limit the scope or*

*meaning of that listing."* This was a fraudulent misleading statement, as MLBPA knew that the

Joint Drug Policy stated IGF-1 was banned, but this referred to the synthetic form of a drug, not

the natural animal products to which MLBPA even sponsors (Klean Athlete). MLBPA

fraudulently suppressed the fact that neither MLB or MLBPA truly ban natural IGF-1. This can

be shown through the MLB and MLBPA Joint Strength Coordinator, Tim Maxey, as he

informed Plaintiff in September of 2018 that natural IGF-1 was commonly found in the MLB

approved NSF products such as protein bars and powders. Maxey was unaware of Nix's NY

lawsuit and was quickly shut up by MLB's attorneys. As MLB, MLBPA, Maxey, and their

attorneys fraudulently misled multiple Courts of the fact that natural IGF-1 was not truly

banned at all, but rather endorsed and promoted by MLB and MLBPA. Defendant Britton

formally entered the scheme in January 2021, after Plaintiff met him and numerous other pro

and college players while working out at a college in the offseason in Texas. Britton is 1 of the 8

MLB players on the MLBPA executive board as well as the Yankees' player representative for

all things MLBPA related. Upon knowing about the false ban of IGF-1, Britton communicated

at length with MLBPA. MLBPA then threatened Plaintiff with sanctions, etc, as MLBPA did not

want the truth to get out to their own members. Upon information and belief Britton suppressed

the information from most MLB players and went along with the fraud.

267.   In April 2018 Plaintiff put all 30 MLB Clubs on notice that IGF-1 is banned in

baseball in all forms, according to the MLB Commissioners Office and that each team was in

violation of the Joint Drug Agreement as the team's players all consume animal products. The

MLB Clubs continued to provide the players with food and supplements that contain IGF-1,

furthering the fraud scheme in having a policy that states IGF-1 is banned, but not following it

when it comes to the natural form.

268.   The Nutritional Defendants: NSF, Gatorade, Blue-Emu, Muscle Milk, Klean

Athlete, Informed Choice, and their agents; played along with the fraud as they each knew of

the MLB Joint Drug Agreement and the substances which are banned, yet continued to promote

their testing company and/or products as free of banned substances, along with using the logos

and likeness of MLB, MLB Clubs, MLBPA, and MLBPA members.

269.   The MLBPA went as far to try to confuse the Northern District of California that

Plaintiff was selling human growth hormone instead of natural animal derived products derived

from cows and deer. MLBPA furthered the fraudulent scheme in their refusal to give a position

to MLB players as to the ban on IGF-1 in items so basic as steak. MLBPA did not even tell their

own members of a lawsuit Plaintiff brought against the MLBPA in January 2020.

270.   The Defendants knew they were all part of a huge lie in the fact that MLB related

entities were creating serious material misrepresentations. This fraudulent scheme was directly

under the supervision of MLB, Commissioner Manfred, MLBPA, and all 30 Clubs.

## THIRD CAUSE OF ACTION

### (DEFAMATION)

(Against AP and Rumberg)

271.   Plaintiff realleges and incorporates herein by this reference the allegations in all

paragraphs, as if fully set forth herein.

272.   Defendant Rumberg, via his AP.org email, while working in the capacity of

Defendant AP falsely stated via an email sent to MLB's Commissioners Office, stating: *"Not*

*sure you even remember helping me with a few things on a defamation case involving PED*

*producer Neiman Nix but wanted to let you know his suit was tossed out of court."* PED stands

for performance enhancing drug. Under no circumstance has Plaintiff ever produced any form

of a drug. In fact, Plaintiff had earlier sued AP, ESPN, and USA Today and even stated in his

complaint that: *"Neither Nix nor DNA has ever sold or even recommended the use of anabolic*

*steroids, commonly known as performance enhancing drugs ("PEDS"). The formulas they*

*developed were designed as natural and safe alternatives to PEDS. The sports world has had a*

*well-publicized problem with PEDS for many years now. DNA's business philosophy was in the*

*opposite direction, advocating against the use of such illegal substances…The active*

*ingredient in the supplements developed and sold by NIX and DNA is a naturally occurring,*

*bio-identical form of IGF-1 which is found in foods such as milk, meat, whey protein, and in the*

*human body."* See 2018 complaint: https://drive.google.com/file/d/

1y_QA7kJblXZHsBVqjDqzitrdDQ4L4UJ2/view?usp=sharing

273.   Rumberg acted negligently and likely knew and/or should have known his statement was false, but purposefully emailed it anyway.

274.   Plaintiff easily meets all requirements to prove defamation and suffered serious reputational harm and mental anguish.

## FOURTH CAUSE OF ACTION

### (AIDING AND ABETTING)

(Against ESPN, AP, USA Today, Maxey, Britton, Muscle Milk, and Klean Athlete)

275.   Plaintiff realleges and incorporates herein by this reference the allegations in all paragraphs, as if fully set forth herein.

276.   Each of these defendants knew of Defendant MLB and or MLBPA's Joint Drug Agreement and wrongful conduct and provided substantial assistance to cover up MLB related entities fraud in relation to the fake ban of natural IGF-1.

277.   The media defendants (ESPN, AP, and USA Today) were given numerous expert reports by Plaintiff and Plaintiff's former attorneys detailing the fact that IGF-1 is naturally found in all forms of animal products, including meat, milk, deer, whey protein, etc. Yet the media continued to aid and abet MLB's false statements when it was not even remotely possible to say that all forms of IGF-1 are banned in baseball, as all humans consume animal products daily.

278.   Defendants Muscle Milk and Klean Athlete each relied on the wrongful conduct of MLB, MLBPA, and NSF, as they each knew that their animal derived protein products contained IGF-1. Muscle Milk and Klean Athlete used the NSF "safe for sport" and free of

banned substance claims to their benefit, when they in fact contain the MLB banned substance
IGF-1. Furthermore, Muscle Milk unlawfully benefits from using MLB team logos and the
likeness of MLBPA members to further their promotional advertising. Klean Athlete uses the
MLBPA and MLB logos upon ads placed online, with such third party retailers as Amazon,
where they rely on NSF's approval of MLB items to be free of banned substances, which they
know is not true.

279.    Defendant Maxey informed Plaintiff in September of 2018 that NSF approved
products such as protein powders and bars contain naturally derived IGF-1. Upon learning of
Nix's earlier NY lawsuit against MLB, Maxey quickly sided with MLB (one of his employers)
and kept quiet about the fact that MLB cannot ban IGF-1, yet allow the same substance to be in
the approved items via NSF. Maxey works as the Joint Strength and Conditioning Coordinator
for MLB and MLBPA, he is the point man for players who have any nutrition or supplement
questions, yet will now not answer anything related to IGF-1 and even tells registered agents to
contact MLBPA or MLB for any further answers as Maxey simply directs players to only use
NSF approved products, which makes no sense as even the official protein bar of MLB,
produced by Gatorade, is not approved by NSF. Maxey is aiding and abetting MLB and
MLBPA's wrongful conduct in relation to their drug policy and more specifically, the fake ban
of IGF-1, to which MLB does not enforce except against Nix.

280.    Defendant Britton was put on notice by Nix in January 2021. Britton is 1 of the 8
MLB players on the MLBPA executive committee as well as being the New York Yankees
MLBPA player rep. In this role Britton is informed by MLBPA and directs MLBPA on

numerous policies. Upon learning of the ban of IGF-1 in animal products, Britton stated he had

no idea about such ban, nor was he even aware that Nix was suing the MLBPA. Britton then

contacted MLBPA and informed the union leaders of how Nix let him know of MLB rules.

Britton then aided and abetted MLBPA's unlawful behavior over the fake ban of IGF-1 and did

not warn his fellow teammates or MLBPA members, except for (upon belief) other MLBPA

executive members and his agent Scott Boras. Britton knowingly went along with MLBPA and

MLB's wrongful conduct and continued to profit from the league and union's scheme.

## FIFTH CAUSE OF ACTION

### (LANGHAM ACT §43(a)(1)(B), 15 U.S.C. §1125(a)(1)(B))

(Against Gatorade, NSF, Blue-Emu, Informed Choice, MLB Clubs- Diamondbacks, Braves,

Orioles, White Sox, Reds, Indians, Rockies, Astros, Royals, Marlins, Mets, Pirates, and Rays)

281.   Plaintiff realleges and incorporates herein by this reference the allegations in all

paragraphs, as if fully set forth herein.

282.   Plaintiff meets all required elements for false advertising claims against Gatorade,

NSF, Blue-Emu, Informed Choice, and MLB Clubs- Diamondbacks, Braves, Orioles, White

Sox, Reds, Indians, Rockies, Astros, Royals, Marlins, Mets, Pirates, and Rays.

283.   Each of these Defendants: (1) made false statements of facts in commercial

advertisements about it its own or another's product; (2) these statements actually deceived or

had the tendency to deceive a substantial segment of its audience; (3) the deception is/was

material, in that it is likely to influence the purchasing decision; (4) each defendant cause its

false statement to enter interstate commerce; and (5) the plaintiff has been or likely to be injured

90

as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

284.   Gatorade, states on its whey protein bar, that it is the Official Protein Bar Provider for the MLB and displays the MLB logo on the wrapper. Yet, Gatorade contains a high bioavailable level of IGF-1, as their product, like all whey products are derived from milk.

285.   NSF International states their numerous tested products are "safe for sport" and free of banned substances, but this is not true, as many of the NSF approved products such as Muscle Milk and Klean Athlete, among many others are in the form of animal derived protein, which contains bioavailable levels of IGF-1. NSF is the official third party testing program for nutritional supplements for MLB and MLBPA via their Joint Drug Program, yet unlawfully approved numerous items which contain the banned substance IGF-1.

286.   Blue-Emu is the official pain cream, spray, and patch of MLB and has exclusive deals with 13 MLB Clubs (Diamondbacks, Braves, Orioles, White Sox, Reds, Indians, Rockies, Astros, Royals, Marlins, Mets, Pirates, and Rays), as detailed on the MLB.com website: https://www.mlb.com/press-release/press-release-blue-emu-leads-off-baseball-season-with-new-mlb-partnership  Blue-Emu contains the banned substance IGF-1 in bio-available levels, as the product is derived from emu oil. Blue-Emu and the 13 MLB Clubs are engaging in false advertising as they cannot lawfully promote a banned substance. Also, Blue-Emu is found in the dugouts and bullpens of MLB games for players to consume before, during, and after games.

287.   Informed Choice is another third party testing company, similar to NSF. Informed Choice has a division called Informed Sport which states: *"Informed Sport tests sports*

*supplement products for a wide range of banned substances on the WADA Prohibited List, as*

*well as lists for organisations such as the AFL, NRL, NFL, NCAA and MLB."* The Informed

Choice approved products contain IGF-1 via animal derived proteins, including but not limited

to whey protein, and therefore cannot be free of banned substances in MLB.

## SIXTH CAUSE OF ACTION

### (VICARIOUS LIABILITY)

(Gatorade, NSF, Britton)

288.   Plaintiff realleges and incorporates herein by this reference the allegations in all

paragraphs, as if fully set forth herein.

289.   Defendants Gatorade, NSF, and Britton each have formal relationships via

contracts with or within MLB and/or MLBPA. Each of these defendants had or should have had

knowledge of MLB's plan to say IGF-1 was banned per the MLB Joint Drug Agreement, yet

not enforce such ban, and each Defendant agreed to MLB and MLBPA's plan.

290.   MLB and MLBPA agreed to terms with Gatorade and NSF. Gatorade was allowed

to advertise as the Official Protein Bar of MLB. NSF was allowed to be the official third party

testing company to oversee supplements in that they are free of banned substances on the MLB

Joint Drug List. NSF recently published a brochure stating that they do not even test for all

MLB banned substances, which raises serious concern, and details the fact that their entire

testing company is a sham and its singular goal is to make as much money as possible. Both

Gatorade whey protein and NSF approved products contain the MLB banned substance IGF-1.

291.   Defendant Britton had knowledge as of January 2021 after being informed by Nix

that MLB and MLBPA jointly ban all forms of IGF-1. Britton failed to stop consuming IGF-1 and failed to stop other MLBPA members from stopping the use of the banned substance IGF-1. Britton failed to inform his fellow MLBPA members as he had a legal duty as their appointed representative.

## SEVENTH CAUSE OF ACTION

### (TORTIOUS INTERFERENCE)

(Against MLBPA and MLB)

292.   Plaintiff realleges and incorporates herein by this reference the allegations in all paragraphs, as if fully set forth herein.

293.   MLBPA interfered with numerous business relationships in association to Plaintiff Nix.

294.   MLBPA's attorney Rubin and MLB's attorneys reached out to Nix's NY based attorney Paul Golden, in late November 2020, who Nix had a business relationship with. MLB and MLBPA's attorneys both threatened sanctions against Golden if he were to take on Nix's California appeal in DNA/Nix v MLB/MLBPA. These threats happened before Golden was signed up to even take on the appeal and caused Golden to become skittish and remove himself from representing Nix based on fear that MLB and MLBPA would again lie and state that IGF-1 was banned or even worse falsely re-claim that Nix was dealing the illegal drug human growth hormone, to which Nix has never been associated with selling.

295.   On or about November 25, 2020, MLB attorney Steven G. Kobre wrote Nix's NY attorney Paul Golden who was not retained to work on Nix's CA appeal, yet Kobre on behalf of

MLB threatened Golden with a lengthy email stating: *"Should any other harassing litigation be filed we will also ask the Court to hold you and your clients accountable to the fullest extent under the law."* Golden wrote back, stating: *"Note that this firm did not file a notice of appearance in the California federal case, or handle any portion of that litigation. You should contact appropriate counsel if you wish to raise an issue concerning that matter. Also, please refrain from making further unprofessional threats against this firm."*

296.   Golden knew that MLB and MLBPA had no problem lying to U.S. Courts and was not yet retained, so Golden informed Nix that he was now scared of the great lengths MLB would go against him personally. Golden informed Nix that this made him feel skittish and or nervous as no attorneys had ever threatened him like this, much less multiple attorneys, therefore Golden resigned from representing Nix based on the interference of both MLB and MLBPA.

297.   MLBPA's Rubin also interfered with Nix's relationships with baseball agents and demanded he stop speaking with them and or informing of the ban on IGF-1 products to which were not enforced except against Nix. Since Nix is a former pro baseball player and long time coach as well as an expert in the sports fields, Nix has a more than reasonable probability that Nix would have entered into a business relationship with other baseball agents as he has done so for many years since he was 18 years old and drafted into pro baseball straight out of high school. Many of these agents, including the very one Rubin informed Nix to stop talking to, Agent Luba, secured multiple coaching jobs for baseball pitching coaches to which Nix was far more qualified, but Nix was not able to pursue these based on MLBPA's interference, as

MLBPA desired for any relationship from occurring. Plaintiff suffered harm as it severely limited his business opportunities due to MLBPA's unlawful threats and interference.

298.   MLBPA's Rubin again interfered with Nix's baseball relationships to other players and prospective clients who would want to train with Nix. Nix has privately developed an entire unique method of pitching, training, and diagnosis called the Nix Method, which some MLB teams have unlawfully stolen/misappropriated from Nix. In January 2021 MLBPA's Rubin learned that Nix met with a number of baseball players, some of which were MLBPA members. Nix informed them of his legal matter, the alleged ban on natural IGF-1, and that he works as a trainer with baseball players and athletes and clients could benefit from his services. MLBPA's Rubin threatened Nix on behalf of the MLBPA to not go to any places where MLBPA members gather (including college fields), even if they are not at all affiliated with MLB or MLBPA. Due to this interference Nix was unable to secure clients who could have used his expertise in baseball, nutrition, fitness, or sports science related fields where Nix is a leading expert in such industries.

299.   Due to these multiple acts of intentional interference Plaintiff has suffered financial and emotional harm via current relationships and contracts with parties and probable prospective business relations.

## EIGTH CAUSE OF ACTION

### (UNJUST ENRICHMENT)

(Against all Defendants)

300.   Plaintiff realleges and incorporates herein by this reference the allegations in all

paragraphs, as if fully set forth herein.

301.   Each Defendant unjustly enriched themselves based on the fact that each was unwilling to follow the MLB rule that IGF-1 is banned in baseball. MLB and MLBPA allowed for players to use, promote, distribute, and be part of a sale of IGF-1 items. MLB and MLBPA allowed for companies such as Defendants NSF, Gatorade, Blue-Emu, Muscle Milk, Klean Athlete, Informed Choice, and others to promote and distribute items that contain the natural banned substance IGF-1. Each of these nutritional based companies greatly profited off of knowingly not following MLB rules and/or not being formally informed of the ban, which is in reality assumed to be a fake ban as MLB does not enforce such ban except against Plaintiff.

302.   Defendants Maxey and Britton are both employed by MLB related entities and each greatly profited while not following the ban on IGF-1, thus suppressing the known ban along with the other Defendants.

303.   The media Defendants (AP, ESPN, USA Today) and their agents greatly benefited as they suppressed the fact that MLB does not truly ban IGF-1 in the natural state, yet knowingly relied on this misstatement of fact by MLB in order to prevail over Plaintiff in a 2018 defamation matter in Nix v ESPN, et. al.

## NINTH CAUSE OF ACTION

### (MENTAL ANGUISH)

(Against All Defendants)

304.   Plaintiff realleges and incorporates herein by this reference the allegations in all paragraphs, as if fully set forth herein.

305.   Plaintiff's mental anguish can also be considered public humiliation, despair, grief, shame, wounded pride, and severe disappointment in the fact that Defendants have treated him completely different than everyone else. Such unfair discrimination by the Defendants has been prominent and critically important elements in American history. Any type of unfair treatment can result in significant and harmful effects on health and well-being.

306.   Defendant Rumberg unlawfully stated that Plaintiff is a PED producer, which is so far from the truth, as Nix even detailed that he was totally against performance enhancing drugs in the very case Nix sued Rumberg's employer AP. Furthermore, Nix does not even consume alcohol as part of his healthy lifestyle and commitment to living a clean healthy life, so to be called a 'PED producer' is virtually one of the worst things he could be possibly be called, yet Rumberg's email said just that and was sent to MLB's Commissioner's Office of all places.

307.   Defendants' AP, ESPN, and USA Today refused to change their lengthy defaming story on Nix, after Plaintiff provided them with numerous items of information showing them that natural IGF-1 was not really banned at all. Furthermore, Nix also provided the AP, ESPN, and USA Today proof of MLB admitting that it does not ban all forms of IGF-1, but rather high levels, yet never state an amount per any policy, or ever suspend players for use of such IGF-1 items as milk or protein, and continue to sponsor products which contain IGF-1. Yet AP, ESPN, and USA Today refused to change their easily searchable articles to which the public often relies on. If ESPN reported that X team won a SuperBowl or the World Series or any game, the public would reasonably rely on this report, just as the public and the NY Court relied on ESPN's article authored by AP, which is false/misleading reporting. It is the same situation if

USA Today or the AP reported on a certain person winning the Presidential Election, this would

assume to be true, and in the case that it was not, the publication would make a quick correction

as this type of news could cause wars, riots, and who knows what type of chaos may ensue.

Here, the media outlets could have easily changed this statement which greatly affects Nix and

MLB as an entire industry (causing great confusion), yet chooses not to.

308.   Based on the Media Defendants articles and articles related to Nix's lawsuits

against MLB, MLBPA, and Media Defendants; many people have since assumed Plaintiff was

selling drugs, as a reasonable person would not believe that animal products contain a banned

substance. Due to commonly done internet searches on Plaintiff, people have opted not to work

with him, associate with him, and have even declined leasing him a property as they wrongfully

questioned his character, all based on lies related to MLB, MLBPA, and the Media Defendants,

which falsely portray Plaintiff as selling banned substances, when every human in the history of

mankind has consumed the exact same substance.

309.   Defendants MLB, Manfred, MLBPA, all 30 Clubs, Britton, and Maxey have

caused great mental anguish to Plaintiff as they have each suppressed the truth about natural

animal derived IGF-1 being banned, and attempted to simply ignore the fact that they are each

in violation of the MLB Joint Drug Policy. Each of these MLB related people and entities have

no problem treating people (specifically Nix) differently while unjustly profiting and acting as if

they are doing nothing wrong.

310.   The Nutritional Defendants also enjoy the benefits of unlawfully profiting off of

the alleged ban on IGF-1, as Plaintiff is not allowed to enter the same market to sell and/or

promote his products despite having the exact same IGF-1 substance which MLB deems is

banned, but only enforces against Plaintiff.

## IV. Relief

WHEREFORE, Plaintiff Nix demands judgment against Defendants and hereby requests

that the Court:

A.     Enter judgment in favor of Plaintiff against Defendants on all causes of action;

B.     Issue an order restraining and enjoining Defendants and their officers, agents, and

employees from consuming, promoting, distributing, or being part of any sale related to any

form of a product which contains IGF-1 in relation to Major League Baseball;

C.      Issue an order restraining Defendants and their, officers, agents, and employees

from marketing, selling, using, offering for sale or otherwise distributing any form of product

containing IGF-1 to which relates to Major League Baseball;

D.     Issue an order compelling Defendants to compensate Plaintiff for any sales, use,

profits, and/or revenues obtained by Defendants, including salaries of all employees, ticket

sales, media contracts, and promotions as a result of the use, promotion, distribution, or

participation of any sale in relation to Defendants ban on IGF-1 based substances to which

Defendants greatly profit from;

E.     Issue an order that the Defendants account and pay damages adequate to

compensate Plaintiff for Defendant's unlawful use, distribution, and promotion of products

derived from animals which contain the banned substance IGF-1, in relation to the business of

Major and Minor League Baseball;

F.      Award Plaintiff compensatory damages, in an amount to be proven at trial by way of a jury;

G.      Award Plaintiff prejudgment interest;

H.      Award Plaintiff punitive and exemplary damages for Defendants intentionally fraudulent and unlawful conduct, pursuant to contract and statute;

I.      Award Plaintiff the costs of suit incurred herein, pursuant to contract and statute; and

J.      Grant any and all such further relief in law or equity as this Court finds just and proper to award under the circumstances.

### Demand for Jury Trial

Plaintiff Nix requests trial by jury.

DATED: December 27, 2021

Respectfully submitted,
By: /s/ Neiman Nix
Neiman Nix
25560 Ramrock Dr.
Porter, TX 77365
(813) 992-0788
NNix9779@yahoo.com
*Pro Se Plaintiff*