United States District Court
Southern District of Texas
**ENTERED**
June 13, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NEIMAN NIX, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-4180 |
| | § | |
| MAJOR LEAGUE BASEBALL, | § | |
| OFFICE OF THE COMMISSIONER OF | § | |
| BASEBALL, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Before he filed this lawsuit, Neiman Nix filed at least eight prior suits alleging the same facts and asserting similar claims against many of the same defendants. Judges sitting in federal and state courts in New York, Florida, and California, have dismissed those actions. Nix and his attorneys have been sanctioned and held in contempt for filing baseless litigation for the purpose of harassing the defendants.

Undeterred by the numerous dismissals and sanctions, or by his apparent inability to obtain counsel, Nix has filed a 100-page pro se complaint against 45 defendants in this court. The complaint names four groups of defendants:

- The Major League Baseball Defendants, which are Major League Baseball (the "League" or "MLB"); MLB Commissioner Robert D. Manfred, Jr.; MLB Strength and Conditioning Coordinator Tim Maxey, and 30 MLB clubs.

- The Major League Baseball Players Association Defendants, which are the Major League Players Association (the "Association" or "MLBPA") and Zack Britton (an MLB player and member of the MLBPA's Executive Committee).

- The Media Defendants, which are the Associated Press, ESPN, USA Today, and Howie Rumberg, a journalist.

- The Nutrition Company Defendants, which are Gatorade Company, Cytosport, Inc., NSF International, HVL LLC, LGC Science, and NFI Consumer Products.

The lawsuit alleges nine causes of action, including RICO conspiracy, fraud, defamation, aiding and abetting, and tortious interference with contract.  Nix alleges that the League and the Association have unfairly and selectively enforced a ban of IGF-1, a performance-enhancing substance, against him but not others.  Many of the claims Nix now seeks to bring against many of the defendants in this case are precluded.  And even if not precluded, Nix's claims fail on many other grounds.

Based on the pleadings, the motions to dismiss, the responses, and the applicable law, the court grants the motions to dismiss, Docket Entries No. 15, 20, 41, 56, 67, with prejudice.  The motions for sanctions filed by the League Defendants and the Association Defendants, Docket Entries Nos. 55, 58, are granted to the extent they seek an order precluding Nix from filing any action, pleading, or motion in the federal district courts in Southern District of Texas without seeking leave to do so from the Chief Judge or the judicial officer she designates.  The motion for additional financial sanctions and for broader injunctive relief is denied without prejudice in light of the outstanding and unpaid sanctions owed in the Northern District of California.

The reasons for this ruling are explained below.

## I.    Background

Nix is a former professional baseball player.  When he retired from playing, he founded a company, DNA Sports Performance Lab, which sold what he claimed were health supplements to athletes.  One of these supplements is derived from antler tissue naturally shed by deer and elks. The active ingredient in that supplement is an insulin growth factor called IGF-1.  Major League

Baseball and the Major League Baseball Players Association have banned IGF-1—whether synthetic or natural— under their Joint Drug Prevention and Treatment Program.

In 2013, the League and the Association launched an investigation into the sale of performance-enhancing drugs to Major League Baseball players.  Nix and his company, DNA Sports, were among the targets of this investigation.  Nix blames the failure of his business on the League, the Association, and the investigation.  For the past ten years, he has "sued *seriatum* the league, its affiliates, and others with some tangential connection to baseball, such as ESPN and Gatorade, in both state and federal court."  *DNA Sports Performance Lab, Inc. v. Major League Baseball*, Case No. 3:20-cv-00546-WHA, (N.D. Cal. Apr. 12, 2022), ECF No. 133, at 2.[1]

---

[1] Those lawsuits are: *Nix v. Major League Baseball, et al.*, No. 14-004294-CA-01 (Fla 11th Cir. Ct. filed Feb. 18, 2014) (dismissed for failure to perfect service on November 6, 2014; plaintiffs filed notice of appeal but voluntarily dismissed the appeal, recognized April 27, 2015); *Nix v. Major League Baseball, et al.*, No. 16-cv-05604 (S.D.N.Y. filed July 14, 2016) (voluntarily dismissed by plaintiffs on November 3, 2016); *Nix v. Major League Baseball, et al.*, No. 17-cv-01241 (S.D.N.Y. filed Feb. 17, 2017) (plaintiffs' federal Computer Fraud and Abuse Act claim dismissed with prejudice, 2017 WL 2889503; remaining case remanded back to New York State Supreme Court on July 6, 2017); *Nix v. Major League Baseball, et al.*, No. 159953/2016 (N.Y. Sup. Ct. filed Nov. 28, 2016) (after remand, plaintiffs' claims dismissed on June 7, 2018, 2018 WL 2739433; plaintiffs' motion for re-argument denied and sanctions imposed on December 31, 2018; orders dismissing complaint and issuing sanctions affirmed on appeal by the New York Supreme Court, First Department, Appellate Division, No. 2018-3597, on December 15, 2020; motion for re-argument or in the alternative for leave to appeal to the New York Court of Appeals denied on March 11, 2021); *Nix v. Luhnow, et al.*, No. 50-2018-CA-003920 (Fla. 15th Cir. Ct. filed April, 2, 2018) (plaintiff voluntarily dismissed the IGF-1 related claims (and others) as to MLB, most MLB Clubs, and Kobre & Kim defendants on December 7, 2018; currently pending based on unrelated allegations against two MLB Clubs and some MLB Club employees; Nix's counsel moved to withdraw on April 8, 2022); *Nix v. ESPN, Inc., et al.*, No. 18-cv-22208 (S.D. Fla. Filed June 4, 2018) (plaintiffs' claims against media defendants dismissed on August 30, 2018; dismissal affirmed by Eleventh Circuit, 772 F. App'x 807 (11th Cir. 2019); *Nix v. Major League Baseball, et al.*, No. 2019-002611-CA-01 (Fla. 11th Cir. Ct. filed Jan. 25, 2019) (motion for judgment on the pleadings granted on February 23, 2021; motion for reconsideration denied March 26, 2021; appeal pending in the Third District Court of Appeals of Florida, No. 3D21-928); *Nix v. Major League Baseball et al.*, No. 3:20-cv-00546-WHA (N.D. Cal. filed January 23, 2020) (voluntarily dismissed with prejudice on August 4, 2020, sanctions and pre-filing order imposed, Nix declared a vexatious litigant).

In this case, as in the previous similar cases he has filed, Nix alleges that Major League Baseball's ban on IGF-1 is "fake" and unfairly enforced.  (Docket Entry No. 1, at 45).  It is a "fake" ban, Nix alleges, because IGF-1 is commonly found in protein powders and bars, milk, and meat, and the League does not prohibit or punish baseball players for consuming these products.  In fact, Nix alleges, the League approves of and endorses several protein supplements, powders, and bars, that allegedly contain "bio-available levels of IGF-1."  (*Id.*, at 47).   Nix alleges that the League unfairly targeted and investigated him and his company for selling performance-enhancing products containing IGF-1, while allowing the sale of other products that he claims also contain IGF-1.

In 2016, Nix sued Major League Baseball and the Office of the Commissioner of Baseball, among other League-related Defendants, for tortious interference with current and prospective business relationships, in the Southern District of New York.  *See Nix v. Major League Baseball, et al.*, 1:16-cv-05604-ALC (S.D.N.Y.).[2]  The Associated Press reported on the lawsuit.  The article included the statement that "[t]he suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances."  (Docket Entry No. 1, at 17).  ESPN and USA Today republished the same article.

Nix sued ESPN, the Associated Press, and USA Today in federal district court in the Southern District of Florida, alleging that this statement was defamatory.  *See Nix v. ESPN, Inc., et al.*, 1:18-cv-22208-UU (S.D. Fla.).  The alleged defamation was that the statement did not distinguish between natural and synthetic IGF-1 or mention that Nix's products contained only naturally occurring, bio-identical IGF-1, which Nix alleges is not a controlled or illegal substance

---

[2] This was Nix's second lawsuit, which Nix voluntarily dismissed.  (*See* Docket Entry No. 15-2).

4

and is not prohibited by the League or the Association.  *Id.*, ECF No. 27.  Nix demanded that the news organizations retract the article.  The news organizations refused.  The organizations explained to Nix that Major League Baseball's Prohibited Substance List did in fact include IGF-1 and did not distinguish between its natural and synthetic forms.  The organizations also told Nix that the League had confirmed to the Associated Press that "all natural and bioidentical versions of any prohibited substances—including but not limited to IGF-1—are considered banned."  (*Id.*).

The Southern District of Florida dismissed the lawsuit, with prejudice, finding that Nix's defamation claim was barred by the statute of limitations, the fair report privilege, and the wire service defense.  The Eleventh Circuit affirmed.  *See Nix v. ESPN, Inc.*, 772 F. App'x 807 (11th Cir. 2019).

After the defamation lawsuit was dismissed, Howie Rumberg, a reporter at the Associated Press, emailed the MLB's Commissioners Office.  The email stated: "Not sure you even remember helping me with a few things on a defamation case involving PED producer Neiman Nix but wanted to let you know his suit was tossed out of court."  (Docket Entry No. 1, at 87).  "PED" stands for "performance-enhancing drugs."  This email was produced to Nix in discovery in another lawsuit.  (Docket Entry No. 1, at 26).  Nix alleges in this lawsuit that Rumberg defamed him by "falsely stating [that Nix] is a 'PED producer.'"

In addition to the defamation lawsuit in the Southern District of Florida and Nix's tortious interference lawsuit in the Southern District of New York, Nix filed several other lawsuits against Major League Baseball and other defendants in state and federal courts.  (*See* Docket Entry No. 15-2).  Most recently, Nix sued the League and the Association in the District Court for the Northern District of California.  *See Nix v. MLB, et al.*, No. 3:20-cv-00546-WHA (N.D. Cal.).

5

That court determined that Nix's claims failed under Rule 12(b)(6), but gave Nix leave to amend "[b]efore deciding whether to impose sanctions." *Id.*, ECF No. 53.  Nix did not amend, instead voluntarily dismissing the lawsuit with prejudice, (*see* Docket Entry No. 16-5).  The district court sanctioned Nix and his company, DNA Sports, finding that their "history of litigation demonstrates both that [the] suit [was] brought in bad faith to vex and that dismissal alone [would not] dissuade [them] from trying again." *Id.*, ECF No. 66.  After Nix failed to pay the sanctions amount of $137,446.25, the court held Nix and his company in contempt and required Nix's attorney to pay money sanctions as well, noting that Nix's attorney had "continued to enable these frivolous lawsuits" despite knowing "or willfully ignor[ing] the facts that DNA Sports had been hemorrhaging money for years; that Nix lived out of his car; that Nix lives on the charity of friends and family; that the suit was baseless; and that defendants would seek substantial sanctions." *Id.*, ECF. No. 93.  The district court issued an order declaring Nix a vexatious litigant, imposing a preclusion order for future lawsuits in the Northern District of California, and requiring Nix to submit an updated accounting of his finances, because Nix had not paid the $137,446.25 he owed in the Northern District of California in sanctions.  (Docket Entry No. 66-1).

Nix has sued again, asserting more claims against the same defendants and adding for the first time the Nutrition Company Defendants.  This new set of defendants consists of companies that sell or test nutritional supplements.  (Docket Entry No. 15, at 2).  Nix alleges that the baseball clubs are required to provide "certain categories of NSF Certified for Sport nutritional supplements" to the players in the clubs.  Products that are NSF Certified are supposed to be free from unsafe levels of contaminants and prohibited substances.  Nix alleges that some of the NSF-Certified nutritional supplements sold the Nutrition Company Defendants contain IGF-1, meaning

that "[t]he [Major League Baseball] teams are literally providing players with the banned substance IGF-1 on a daily basis . . . ." (Docket Entry No. 1, at 46). Nix alleges that the Nutrition Companies falsely advertise that the products they sell are "clean of banned substances," even though they contain IGF-1, and that Major League Baseball wrongly benefits from the sale of these products because some of the advertisements "display[] the MLB trademarked logos of MLB Clubs . . . and us[e] the likeness of many MLBPA members . . . ." (*Id.*, at 49–50). Nix alleges that the "[d]efendants greatly benefit from the exact same substance that is a natural animal derived growth factor like insulin (IGF-1), which allows each party to profit millions, if not billions of dollars in revenue annually, while unfairly eliminating [Nix] from the same market within Major League Baseball." (*Id.*, at 4).

Nix alleges the "[d]efendants have collectively engaged in a fraudulent scheme in an attempt to portray [Nix] as a [performance-enhancing drug] producer and/or seller of banned performance-enhancing substances." (*Id.*). Nix alleges that the defendants have hurt his reputation and business by suggesting that he sells performance-enhancing substances, even though the supplements he sells contain the same ingredients as some products that Major League Baseball has approved and endorsed. Nix asserts claims of RICO conspiracy, fraud, defamation, false advertising, aiding and abetting, tortious interference with contract, unjust enrichment, vicarious liability, and mental anguish.

The defendants have moved to dismiss all claims, in five separate motions to dismiss. (Docket Entries No. 15, 20, 41, 56, 67). The motions to dismiss are granted, and Nix's claims are dismissed with prejudice, for the reasons set out below.

## II.     Judicial Notice

The defendants have filed six motions for judicial notice (Docket Entries No. 16, 36, 57,

68, 69, 73).  The motions are granted.

The Nutrition Company Defendants ask the court to take judicial notice of six exhibits:

- the Order Granting Motion for Attorney's Fees, *Nix v. Major League Baseball, et al.*, 3:20-cv-00546-WHA (N.D. Cal. Oct. 27, 2020), ECF. No. 66;

- the Omnibus Order Re Sealing, Civil Contempt, and Attorney's Fees, *Nix v. Major League Baseball, et al.*, 3:20-cv-00546-WHA (N.D. Cal. Feb. 4, 2021), ECF No. 93;

- the complaint, *Nix v. Major League Baseball, et al.*, 3:20-cv-00546-WHA (N.D. Cal. Jan. 23, 2020), ECF No. 1;

- the Order re Motion for Sanctions, *Nix v. Major League Baseball, et al.*, 3:20-cv-00546-WHA (N.D. Cal. Aug. 1, 2020), ECF No. 53;

- the Notice of Voluntary Withdrawal with Prejudice, *Nix v. Major League Baseball, et al.*, 3:20-cv-00546-WHA (N.D. Cal. Aug. 4, 2020), ECF No. 54; and

-  a Motion for Imposition of Civil Contempt Remedy, *Nix v. Major League Baseball, et al.*, 3:20-cv-00546-WHA (N.D. Cal. Feb. 7, 2022), ECF No. 122.

The Nutrition Company Defendants also filed a second motion for judicial notice.  That

motion asks the court to consider:

- a declaration of Neiman Nix on Financial Position, *Nix v. MLB et al.*, No. 3:20-cv-00546-WHA (N.D. Cal. Feb. 11, 2021), ECF No. 95-2.

The Major League Baseball Defendants ask the court to take judicial notice of twenty

exhibits.  Many of these documents overlap with the Nutrition Company Defendants' first motion

for judicial notice.  In addition to six docket entries from the Northern District of California (five

of which are the same as the Nutrition Company Defendants' exhibits), the League Defendants

ask the court to take judicial notice of:

8

- the complaint and order dismissing case without prejudice in *Nix v. MLB, et al.*, No. 2014-CA-004294 (11th Fla. Cir. Ct.);

- the complaint and notice of voluntary dismissal in *Nix v. MLB, et al.*, No. 16-CV-5604 (S.D.N.Y.);

- the complaint, decision and order on motion to dismiss, and decision and order on motion for sanctions in *Nix v. MLB, et al.*, No. 159953/2016 (N.Y. Sup. Ct.);

- the opinion and order denying motion for injunction in *Nix v. MLB et al.*, No. 17-CV-01241-RJS (S.D.N.Y.);

- the complaint and notice of voluntary dismissal without prejudice in *Nix v. Luhnow, et al.*, No. 2018-CA-003920 (15th Fla. Cir. Ct.);

- the complaint and order granting motion for judgment on the pleadings in *Nix v. The Office of the Commissioner of Baseball, et al.*, No. 2019-CA-002611 (11th Fla. Cir. Ct.);

- the complaint in *Nix v. ESPN, Inc., et al.*, No. 18-cv-22208-UU (S.D. Fla.); and

- the opinion in *Nix v. ESPN, Inc., et al.*, 772 F. App'x 807 (11th Cir. 2019).

The Association Defendants moved to join the League's motion for judicial notice. (Docket Entry No. 68).  The League Defendants also filed a second motion for judicial notice. That motion asks the court to take judicial notice of:

- the Declaration of Neiman Nix in Support of Plaintiffs' Opposition to Defendants' Motion for Order to Show Cause Why Plaintiffs Should Not Be Held in Contempt, *Nix v. Major League Baseball, et al.*, 3:20-cv-00546-WHA (N.D. Cal. Feb. 7, 2022), ECF No. 79-1;

- MLB's appellate brief, and the appellate judgment in *Nix v. MLB, et al.*, No. 2018-5397 (N.Y. App. Div.).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "matters of which judicial notice may be taken under Federal Rule of Evidence 201."  *Inclusive Cmtys. Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).  "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst Tr.*, 500 F.3d 454, 461

n.9 (5th Cir. 2007).  These are public court records from state and federal courts.  The court may take judicial notice of the proceedings in these lawsuits.  *See Burns v. Mayes*, 369 F. App'x 526, 527 (5th Cir. 2010).

As to judicial notice of Nix's complaints and declarations, the court takes judicial notice of these documents "not for the truth of the matters asserted," but for the fact that Nix has raised similar claims and has made certain statements to other courts, and "to establish the fact of such litigation and related filings." *La. Oilfield Logistics, LLC v. Flotek Chem., LLC*, Case No. H-19-1272, 2020 WL 13240060, at *6 (S.D. Tex. June 29, 2020) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)); *see also Brito v. Rahman*, Case No. H-22-00799, 2022 WL 1719259, at *4 (S.D. Tex. May 27, 2022) ("The court may take notice of the fact that Rahman has sued Brito for negligence and breach of contract in state court, and that she has alleged [certain facts] . . . [b]ut the court may not consider the state-court detailed allegations for their truth.").

## III.    Analysis

Nix asserts RICO conspiracy, fraud, defamation, false advertising, aiding and abetting, tortious interference with contract, unjust enrichment, vicarious liability, and mental anguish. Some claims are against all defendants, others against a subset.  The defendants have moved to dismiss, arguing preclusion and other grounds.  Each ground is analyzed below.

### A.    Claim Preclusion

The defendants argue that Nix's claims in this lawsuit are precluded by the dismissal with prejudice of his lawsuit in Northern District of California.  That federal court judgment was decided by a court sitting in federal question and supplemental jurisdiction.  (*See* Docket Entry

No. 57-1, at 3).  The court applies federal rules of preclusion to determine the claim-preclusive effect of a dismissal by a federal court sitting in federal question jurisdiction.  *See Heiser v. Woodruff*, 327 U.S. 726, 733 (1946) ("It has been held in non-diversity cases since *Erie v. Tompkins*, that the federal courts will apply their own rule of res judicata.").  Neither the Supreme Court nor the Fifth Circuit has resolved whether federal or state claim-preclusion law applies when a federal court exercises supplemental jurisdiction over state-law claims.  Other courts have held, however, that "when a federal court exercises supplemental jurisdiction over a state law claim, federal common law governs the preclusive effect of the federal court's disposition of that claim." *Hately v. Watts*, 917 F.3d 770, 777(4th Cir. 2019) (citation and quotation marks omitted); *see also In re JPMorgan Chase Derivative Litig.*, 263 F. Supp. 3d 920, 931–31 (E.D. Cal. 2017).  Under federal common law, California preclusion law would apply.  *Am. Home Assurance Co. v. Chevron, USA, Inc.*, 400 F.3d 265, 271 n.20 (5th Cir. 2005).  This would mean that the court should apply California preclusion law to Nix's state-law claims in the Northern District of California, and federal preclusion law to Nix's federal-law claims.

"Neither party identifies any way in which federal and [California] state principles of preclusion law differ in any relevant respect," and the court finds no "such divergence."  *Smith v. Bayer Corp.*, 564 U.S. 299, 307 n.6 (2011); *see DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 824 (2015) ("Claim preclusion arises if the second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit"); *Hulsey v. Koehler*, 218 Cal. App. 3d 1150, 1157 (1990) ("The most important criterion in determining that two suits concern the same controversy is whether they both arose from the same transactional

nucleus of facts.").  Because there is no significant difference, the court applies federal rules of preclusion.  *See Am. Home Assurance Co.*, 400 F.3d at 271 n.20.

Claim preclusion, or res judicata, bars a plaintiff's claim when: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."  *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004).  Courts "employ[] a transactional test to assess whether multiple suits involve the same claim or cause or action."  *Houston v. Citi Mortg. Corp.*, No. 3:15-CV-3098-B, 2016 WL 3182003, at *2 (N.D. Tex. June 8, 2016).  "Under the transaction test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or a series of connected transactions, out of which the original action arose."  *Id.* (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)).  "The critical issue is whether the [repeated lawsuits] are based on the 'same nucleus of operative facts.'"  *Id.*; *see also Koehler*, 218 Cal. App. 3d at 1157 ("In sum, res judicata precludes parties from splitting a cause of action into series of suits in piecemeal litigation, since it operates as a bar not only when the grounds for recovery in the second action are identical to those pleaded in the first but also where a different theory or request for relief is asserted.").

Although Nix has filed many lawsuits against all but one set of the defendants he sues in this case, only two of those lawsuits have resulted in a final judgment on the merits—both times because Nix voluntarily dismissed his lawsuit with prejudice.  The League and the Association move to dismiss Nix's claims in this case as precluded by the dismissal of Nix's Northern District of California lawsuit.  The remaining League and Association Defendants were not parties to Nix's

California lawsuit, but they argue that privity makes preclusion apply to the claims asserted here because "the circumstances of this case warrant extending privity to these defendants."  (Docket Entry No. 55, at 19).  The Nutrition Company Defendants also argue for claim preclusion based on privity to the League and the Association.  The Media Defendants do not argue for dismissal based on claim preclusion.

The court first addresses whether res judicata applies to Nix's claims against the League and the Association, before turning to whether other defendants may also invoke claim preclusion.

### i.       The League and the Association

Claim prelusion applies when "cases are based on the same nucleus of operative facts." *Taylor v. Tex. S. Univ.*, No. H-19-1225, 2019 WL 4394696, at *3 (S.D. Tex. 2019).  This lawsuit is based on the same nucleus of operative facts as the lawsuit Nix filed, then dismissed with prejudice, in the Northern District of California.   In the California case, Nix alleged that the defendants—the League, the Players Association, Major League Baseball Enterprises, Inc., and Major League Baseball Advanced Media, L.P., were

> engaged in a pattern of unfair business practices targeting Nix and DNA, and deceived consumers about the nature of certain nutritional products sponsored and endorsed by defendants.  After engaging in strong-arm business tactics against Nix and DNA and making harmful statements to the press accusing plaintiffs of using and selling purportedly banned substances, defendants are themselves unfairly profiting from the sale of products containing those same substances.  Defendants' conduct constitutes unfair and deceptive trade practices and false advertising by

13

allowing MLB and MLB players to endorse products containing insulin-like growth factor (IGF-1) that are prohibited by MLB's own standards.

(Docket Entry No. 57-1, at 3).  Nix's state and federal law claims under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and the California Business Professions Code § 17200, 17500, were based on allegations that:

- the League and the Association targeted Nix and his company by unfairly enforcing a substance ban against him;

- the League and the Association continued to allow other companies to sell and endorse products that contained those substances because the League and Association profited from those substances; and

- these practices were unfair and deceptive.

In this case, Nix alleges that the defendants

jointly conspired . . . in a manner in which they have a joint policy in place . . . which bans all forms of IGF-1.  MLB does not at all enforce this ban except for against Plaintiff.  Each Defendant in their own capacity engages in use, distribution, promotion, being part of a sale, or representing IGF-1 in a manner to which it may be listed on the MLB banned list, but in no way is this truly enforced or even recognized as a banned performance enhancing substance in the natural form. . . . MLB has conspired with the MLBPA to keep quiet the fact that they allow players . . . to readily use, promote, distribute, and be part of the sale of IGF-1 on a daily basis . . . .  MLB and MLBPA sponsor and allow numerous endorsements to use their logos and/or likeness [on NSF-approved products] . . . despite the known fact that NSF items contain the banned substance IGF-1.

(Docket Entry No. 1, at 81–83).

Again, Nix alleges that:

- the League and the Association conspired against Nix by unfairly enforcing a substance ban against him but no one else;

- the League and the Association endorse and allow companies to sell products that contain the same substance that the League prevents Nix from marketing and selling; and

- these practices are unfair, fraudulent, and deceptive.

14

Nix's claims against the League and the Association in this case arise out of the same operative facts as his claims against the League and the Association in the case he filed in the Northern District of California.  *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 522 (5th Cir. 2016) ("True res judicata bars recovery when a party seeks to relitigate the same facts even when the party argues a novel legal theory."); *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1287 (5th Cir. 1989) ("[C]laim preclusion applies not only to 'causes of action' raised in pleadings, but also to claims which were raised, or could have been raised, as part of the same cause of action.").  Nix's civil RICO claim is based on Major League Baseball's "joint[] conspir[acy] with each Defendant in a manner in which they have a joint policy in place with Major League Baseball Players Association which bans all forms of IGF-1.  MLB does not at all enforce this ban except for against Plaintiff."  (Docket Entry No. 1, at 80).  Nix's fraud claim is based on the same facts as his civil RICO claim.  (*See* Docket Entry No. 1, at 83 ("Plaintiff realleges all items contained in the above First Cause of Action, as fraud is the underlying cause of action under Civil RICO.")).  Nix's unjust enrichment claim is based on an allegation that "[e]ach Defendant unjustly enriched [itself] based on the fact that each was unwilling to follow the MLB rule that IGF-1 is banned in baseball."  (Docket Entry No. 1, at 96).  And finally, Nix's mental anguish claim is that Major League Baseball and the Association "have caused great mental anguish to Plaintiff as they have each suppressed the truth about natural animal derived IGF-1 being banned, and attempted to simply ignore the fact that they are each in violation of the MLB Joint Drug Policy."  (Docket Entry No. 1, at 98).  Nix seeks to relitigate the same facts under new legal theories.  He cannot.

Only one claim against the League and the Association is based on facts that post-date the filing of Nix's California complaint.  Nix alleges that the League and the Association tortiously

15

interfered with Nix's relationship with a prospective lawyer.  (Docket Entry No. 1, at 93).  The League and Association concede that the tortious interference claim is not barred by res judicata, but that it fails for other reasons addressed below.

Nix's claims against the League and the Association—except for the claim for tortious interference—are precluded because the claims arise from the same nucleus of operative facts, and the League and Association were defendants in Nix's Northern District of California lawsuit, which Nix dismissed with prejudice.

### ii.    The Remaining MLB, MLBPA, and Nutrition Company Defendants

The remaining League defendants are Commissioner Robert D. Manfred, Jr., Timothy Maxey, and 30 MLB Clubs.[3]  Nix has filed claims for civil RICO conspiracy, fraud, unjust enrichment, and mental anguish, against all of these League Defendants.  Nix has also filed claims against some, but not all, of these League defendants, including an "aiding and abetting" claim against Maxey, and a false advertising claim against some, but not all, of the MLB Clubs (the Diamondbacks, Braves, Orioles, White Sox, Reds, Indians, Rockies, Astros, Royals, Marlins,

---

[3] The 30 MLB Clubs are: Angels Baseball LP; Athletics Investment Group LLC d/b/a/ Oakland Athletics Baseball Company; Atlanta National League Baseball Club, LLC; AZPB Limited Partnership; Baltimore Orioles Limited Partnership; The baseball Club of Seattle LLLP; Boston Red Sox Baseball Club Limited Partnership; Chicago Cubs Baseball Club, LLC; Chicago White Sox, Ltd.; Cleveland Guardians Baseball Company, LLC; Colorado Rockies Baseball Club, Ltd.; Detroit Tigers, Inc.; Houston Astros, LLC; Kansas City Royals Baseball Club, LLC; Los Angeles Dodgers LLC; Marlins Teamco LLC; Milwaukee Brewers Baseball Club, Limited Partnership; Minnesota Twins, LLC; New York Yankees Partnership; Padres L.P.; Pittsburgh Associates; Rangers Baseball LLC; Rogers Blue Jays Baseball Partnership; San Francisco Giants Baseball Club  LLC; St. Louis Cardinals, LLC; Sterling Mets L.P.; Rays Baseball Club, LLC; The Cincinnati Reds LLC; The Phillies; and Washington Nationals Baseball Club, LLC.

Mets, Pirates, and Rays).  These League Defendants argue that Nix's claims are barred by res judicata because they are in privity with the League.  (Docket Entry No. 55).

The remaining Major League Baseball Players Association defendant is Zackary Grant Britton, a baseball player and a member of the Association's executive committee.  Nix has asserted claims for RICO conspiracy, fraud, unjust enrichment, and mental anguish against both the Association and Britton.  Britton argues that Nix's claims are barred by res judicata because he is in privity with the Association.

Finally, the Nutrition Company Defendants are companies that sell and market nutritional products and companies that test nutritional products.[4]  The Nutrition Company Defendants have not been sued by Nix before, but they assert that Nix is precluded from bringing claims against them in this lawsuit, because they are in privity with the League Defendants as co-conspirators. (Docket Entry No. 15, at 18 ("Although the Nutritional Defendants were not named defendants in Nix's prior suit. . . many of them [were] *specifically* listed and referenced as co-conspirators to MLB's and MLBPA's alleged conspiracy and fraudulent scheme to 'deceive consumers about the nature of certain nutritional products' that supposedly contained a banned substance.")).

"[R]es judicata does not require the parties of . . . two actions to be identical, as long as they are in privity."  *Clyce v. Farley*, 836 F. App'x 262, 269 (5th Cir. 2020).  "Privity is merely another way of saying that there is sufficient identity between parties to prior and subsequent suits for res judicata to apply."  *Id.* (quoting *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990)).  The Fifth Circuit has recognized privity in three "narrowly-defined situations where non-

---

[4] The Nutrition Company Defendants are The Gatorade Company, CytoSport, Inc., NSF International, HVL LLC (named in the complaint as Klean Athlete (Douglas Laboratories), LGC Science, Inc., and NFI Consumer Products (named in the complaint as Blu-Emu).

parties are sufficiently close that they have privity with parties in the first lawsuit: (1) where the non-party is a successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Id.* (citation and quotation marks omitted).  Typically, a non-party's interests are adequately represented by a party to the original suit when they are "in a legally recognized relationship, such as agents, class representatives, trustees, legal guardians, and fiduciaries." *Id.* (quoting *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008)).

The remaining League, Association, and Nutrition Company Defendants do not argue that any of these three situations are present.  Instead, they argue that they are in privity with one another as alleged co-conspirators. (Docket Entry No. 55, at 19).  They assert that "[s]everal courts have held that alleged co-conspirators are in privity with one another, particularly where (as here) the only material difference between the original and subsequent suits is the addition of new parties as defendants." (Docket Entry No. 55, at 19).

The parties cite *New York Pizzeria, Inc. v. Syal*, 53 F. Supp. 3d 962 (S.D. Tex. 2014).  In a state court case that preceded *New York Pizzeria*, a plaintiff, Adrian Hembree, sued his former employer, New York Pizzeria, on breach of contract claims in state court.  New York Pizzeria filed a counterclaim against Hembree alleging that he had stolen recipes and other proprietary information so that he could open a competing pizza chain.  *Id.* at 963.  Hembree and New York Pizzeria settled, and the state court dismissed the case with prejudice.  *Id.* at 964.  A few months later, New York Pizzeria filed a federal suit against Hembree and several other individuals and entities that allegedly "conspired with [Hembree]" to steal New York Pizzeria's recipes and proprietary information.  *Id.* at 963.  The defendants argued that New York Pizzeria's dismissed

counterclaim in the state lawsuit precluded its federal one.  The district court agreed that New York Pizzeria had released any claims against Hembree in its earlier settlement, leaving the court to address the more "difficult question" of "whether *res judicata* bars the claims New York Pizzeria asserts against the other Defendants who were not parties in the first case but now are alleged to be Hembree's coconspirators."  *Id.*

The court noted that "[w]hile it is true that some courts have found that coconspirators are in privity, those cases are not all that common and do not purport to establish a categorical rule." *Id.* at 969.  "The cases in which courts have found privity for coconspirators," the court stated, "are ones in which the second suit appears to be 'no more than last desperate effort' by an unsuccessful plaintiff pursuing a 'thin claim' who 'cannot show any good reasons to justify a second chance,' and when 'the new party can show good reasons why he should have been joined in the first action.'"  *Id.* at 970 (quoting 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction § 4464.1 (2d ed. 2002)).  The court noted, for example, that in *Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972), the Third Circuit found privity between defendants when "'the essential allegations of the second complaint parallel[ed] those of the first' and 'the sole material change in the later suit was the addition of certain defendants, some of whom had been named in the original complaint as participating in the conspiracy but had not been named as parties defendant at that time.'"  *Id.* (quoting *Gambocz*, 468 F.2d at 842).

If any case justified a court finding a plaintiff's lawsuit to be nothing but a "desperate effort" to pursue a "thin claim" previously dismissed, without "any good reasons to justify" another litigation chance, it is this case.  But, as the leading federal procedure treatise has noted, there is

19

reason to hesitate extending res judicata to achieve dismissal, when, as here, there are other

grounds to reach that result.

> Nonmutual claim preclusion is much less developed than mutual issue preclusion.
> . . . One means adopted to accomplish nonmutual claim preclusion, is to state that
> the party invoking preclusion is in privity with a party to the earlier action [even
> though] the circumstances would support a finding of privity to invoke preclusion
> against the new party.  Although the results may be laudable, there is a price to be
> paid for this approach.  Bogus findings of privity may cloud reasoning as later
> courts confront real privity questions, and may prevent the present court from
> considering and articulating the factors that make it appropriate to allow nonmutual
> claim preclusion. . . .  Nonmutual claim preclusion is most attractive in cases that
> seem to reflect no more than a last desperate effort by a plaintiff who is pursuing a
> thin claim against defendants who were omitted from the first action because they
> were less directly involved than the original defendants. . . .  If courts and
> defendants can reasonably be protected in such circumstances, few would quarrel
> with the results.  The danger, however, is that it is very difficult to confine a
> principle that allows preclusion only when it is just and proper.  There may have
> been good reasons for the party-joinder decisions made in the first action, and
> claims that seem thin are deliberately protected against judicial impatience by a
> host of rules that should not be subverted by equally thin preclusion reasoning.  This
> danger will surely slow the growth of nonmutual claim preclusion, but does not
> seem likely to check it entirely.  The best probable outcome will be a limited rule
> that permits nonmutual claim preclusion only if the new party can show good
> reasons why he should have been joined in the first action and the old party cannot
> show any good reasons to justify a second chance.

Wright & Miller, Mutuality Abandoned—Claim Preclusion §4464.1 (3d ed. 2022).

As the treatise aptly notes, there are other ways to dispose of claims that should not proceed

besides crafting new preclusion rules that might water down existing preclusion principles.

Although a narrow rule could be crafted in this case—there is no reason why the defendants could

not have been joined in Nix's Northern District of California lawsuit, and Nix does not have any

good reason for filing yet another lawsuit—the court declines to find that claim preclusion bars

Nix's claims against the remaining defendants in this case under a theory that the Fifth Circuit has

not yet recognized.  *See Lubrizol*, 871 F.2d at 1289 (discussing the Third Circuit's decision in

*Gambocz*, but declining to make "broad pronouncements about the doctrines of mutuality or privity in this circuit"). Instead, the court dismisses Nix's claims on other grounds, addressed below.

### 1.      Defendant Zackary Britton

Britton, a member of the Association's executive committee, raises one more argument in favor of claim preclusion. Britton argues that Nix's claims against him should be dismissed based on his principal-agent relationship with the Association. (Docket Entry No. 67, at 15). The court agrees that at least one of Nix's claims against Britton should be dismissed for this reason.

The Fifth Circuit has held that claim preclusion can apply to parties who are related by a vicarious liability relationship to a defendant in a prior lawsuit. *See Lubrizol Corp.*, 871 F.2d at 1288–89 (the vicarious liability relationship between an employer and employee justified claim preclusion). In *Lubrizol Corp.*, the plaintiff, Lubrizol Corp., had sued the defendant, Exxon, in state court over a "computer dispute." The parties settled the lawsuit. Lubrizol then sued two of Exxon's employees over the same "computer dispute." The Fifth Circuit noted that Exxon could be held liable in the state lawsuit only because of actions that its employees took within the scope of their duties. The federal lawsuit sought to hold those employees liable for the same conduct. The court held that "the vicarious liability relationship between Exxon and its [two] employees, which forms the only asserted basis for Exxon's liability for the computer dispute, justifies claim preclusion." *Id.* at 1289.

Lubrizol's claims against Exxon would not have existed without the conduct of its employees. Nix's claims against Britton and the Association are slightly different. Here, at least one of Nix's allegations seek to hold Britton liable for the Association's conduct, and vice versa.

21

Nix alleges a claim of "vicarious liability" against Britton.  Nix alleges that Britton is vicariously liable for the Association's failure to "stop other MLBPA members from . . . using the banned substance IGF-1," and "had a legal duty as [the MLBPA's] appointed representative."  (Docket Entry No. 1, at 92–93).  If Nix's claims against the MLBPA are precluded, Nix's vicarious liability claim against Britton as an agent of the MLBPA should be similarly precluded.  *See Sims v. City of Madisonville*, No. H-14-2145, 2015 WL 4040575, at *7 (S.D. Tex. July 1, 2015) ("A former employee's lawsuit against the employer precludes a subsequent lawsuit against another employee only if the employer's liability in the prior lawsuit derived vicariously and exclusively from that other employee.").

In large part because Nix's allegations are unclear, however, it is difficult for the court to assess which of Nix's remaining claims against Britton are based on his principal-agent relationship with the MLBPA, and which are not.  Because these claims are readily dismissed on other grounds, the court does not decide whether these claims are also precluded.

In sum, Nix's claims against MLB are precluded, Nix's claims against MLBPA are precluded, and one of Nix's claims against Britton (vicarious liability) is precluded.  All other claims against the remaining defendants are not precluded.  Even assuming, however, that none of Nix's claims are precluded against any defendant, all the claims are dismissed under Rule 12(b)(6) for failure to state a claim.

### B.    Personal Jurisdiction

One group of defendants—the Nutrition Company Defendants—argue that Nix's claims should be dismissed under Rule 12(b)(2) because the court lacks personal jurisdiction.

When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without any evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)).

A "defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there.'" *Nuovo Pignon, SpA v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "There must be some act whereby the defendant 'purposely avails [itself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Burger King*, 471 U.S. at 379). Two types of minimum contacts exist: those that create general personal jurisdiction and those that create specific personal jurisdiction. "Specific jurisdiction exists if (1) the cause of action is related to, or arises from, the defendant's contacts with the forum, and (2) those contacts meet the due process standard. General jurisdiction, on the other hand, exists where the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are 'continuous

23

and systematic.'" *Unicorn Global, Inc. v. Golabs, Inc.*, No. 3:20-cv-02023, 2021 WL 4713309, at *1 (N.D. Tex. July 9, 2021) (citations omitted).

The Nutrition Company Defendants argue that the court lacks "both general and specific jurisdiction over the . . . [Nutrition Company Defendants] as to the non-RICO claims under traditional personal jurisdiction factors." (Docket Entry No. 15, at 47). The Nutrition Company Defendants argue that Nix "does not allege that any of the [Nutrition Company Defendants] are incorporated or have a principal place of business in the State of Texas and indeed none of the [Nutrition Company Defendants] is incorporated or has a principal place of business in the State of Texas." The Nutrition Company Defendants argue that the court lacks specific jurisdiction over them because "the only connection between the causes of action against the [Nutrition Company Defendants] and [Texas] is that Plaintiff is a Texas resident and decided to file this lawsuit in Texas." (Docket Entry No. 15, at 51).

This court does not have general jurisdiction over the Nutrition Company Defendants. Gatorade is incorporated in Delaware, with its principal place of business in Illinois. (Docket Entry No. 15-3, at 3). CytoSport is incorporated in California, with its principal place of business in Illinois. (*Id.*). NSF is incorporated in, and has its principal place of business in, Michigan. (Docket Entry No. 15-4, at 3). HVL LLC is a limited liability company formed under Delaware law with its principal place of business in Pennsylvania. (Docket Entry No. 15-5, at 3). Informed Choice is incorporated in Delaware, with its principal place of business in Kentucky. (Docket Entry No. 15-6, at 3). And Gregory Pharmaceuticals Holdings, Inc.—referenced in Nix's

complaint as NFI Consumer Products—is incorporated in Maryland, with its principal place of business in Tennessee.  (Docket Entry No. 15-7, at 3).

Nix responds in his brief that the court has specific jurisdiction, however, because he "is a Texas resident" who "purchased the nutrition supplements at issue in Texas stores and/or online, while Plaintiff was in Texas."  (Docket Entry No. 32, at 25).  Nix asserts that the Nutrition Company Defendants do business with the two Texas MLB teams and "many minor league teams in Texas," and that its "products are commonly sold in stores throughout Texas, which the [Nutrition Company Defendants] regularly do business with[.]"  (*Id.*, at 26–27).  Nix also asserts that "NSF and Informed Choice do regular business in Texas and certify many animal-based supplement products/companies, which are based in Texas.  NSF and Informed Choice even send inspectors to check on conditions and products at numerous company headquarters throughout the US, including Texas."  (*Id.*, at 24–25).

While these assertions might be sufficient to establish specific personal jurisdiction over some of Nix's claims against the Nutrition Company Defendants, *see, e.g.*, *Unicorn Global, Inc.*, 2021 WL 4713309, at *2 (the plaintiffs have alleged facts that would subject the defendant to personal jurisdiction because "[p]laintiffs allege that [the defendant] sells [its] products to [a] subsidiary in Texas," and the defendant "should have foreseen that by selling to a distributor in Texas, its products would be sold and distributed to consumers in Texas"), these statements do not appear in Nix's complaint.  *See Giles v. Bayview Loan Servicing, L.L.C.*, No. 20-2238, 2020 WL 6483119, at *3 (E.D. La. Nov. 4, 2020) (dismissing for lack of personal jurisdiction because the

plaintiff's "complaint does not allege a *prima facie* case of personal jurisdiction," and "[p]laintiff has not alleged [continuous and systematic] contacts").

The Nutrition Company Defendants concede that this court has jurisdiction over Nix's civil RICO claim, because at least one defendant is subject to personal jurisdiction in Texas.  *See David v. Signal Int'l*, 588 F. Supp. 2d 718, 723 (E.D. La. 2008) ("RICO has its own venue and jurisdiction provisions which provide for nationwide service of process so long as one of the defendants is properly before the court.").  Because the court has personal jurisdiction over the Nutrition Company Defendants for Nix's RICO claim, this court can exercise pendant jurisdiction over the Nutrition Company Defendants for "other claims in the Complaint that arise out of the same actionable conduct," even if this court otherwise lacks general or specific personal jurisdiction over these defendants.  *JMF Med., LLC v. Team Health, LLC*, 490 F. Supp. 3d 947, 971 (M.D. La. 2020).

The doctrine of pendant personal jurisdiction "exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008); *see also* Wright & Miller, § 3567 Supplemental Jurisdiction—Background and Overview of 28 U.S.C. § 1367 (3d ed.) ("Pendant personal jurisdiction permits a court to entertain a claim against a defendant over whom it lacks personal jurisdiction, but only if that claim arises from a common nucleus of operative fact with a claim in the same suit for which the court does not have personal jurisdiction over the defendant.").  "Several district courts within the Fifth Circuit have exercised

discretionary pendent jurisdiction over non-RICO claims where the district court found it had jurisdiction over the RICO claim and the non-RICO claims arose from the same nucleus of operative facts." *JMF Med., LLC*, 490 F. Supp. 3d at 971–92 (citing cases).

The Nutrition Company Defendants admit that all of Nix's claims arise out of the same nucleus of core fact in their arguments for finding claim preclusion.  (Docket Entry No. 15, at 21 ("The core of [Nix's complaint] is an alleged conspiracy and fraudulent scheme among MLB, its affiliates, and the [Nutrition Company Defendants] to 'deceive consumers about the nature of certain nutritional products' that contained a banned substance (IGF-1) because the [Nutrition Company Defendants] produce some of the supplements  at the center of the alleged conspiracy, and some had alleged licensing agreements with MLB and its affiliates.")).  Because all of Nix's claims against the Nutrition Company Defendants arise out of the same nucleus of operative fact as Nix's RICO claim, and because the Nutrition Company Defendants "would not be severely inconvenienced by litigating the non-RICO claims at the same time as the RICO claim[]," *JMF Med., LLC*, 490 F .Supp. 3d at 972, the court exercises discretionary pendant jurisdiction over Nix's non-RICO claims against the Nutrition Company Defendants.

## C.     Failure to State a Claim for Relief

Under Rule 12(b)(6), a federal court dismisses a complaint if it fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").  In reviewing a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014).  "A court reviewing a motion to dismiss under Rule 12(b)(6) may consider '(1)

27

the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201.'" *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, No. H-20-3606, 2021 WL 1232778 (S.D. Tex. Mar. 12, 2021) (quoting *Inclusive Cmtys. Proj., Inc. v. Lincoln Prop. Co*, 920 F.3d 890, 900 (5th Cir. 2019)). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).

Nix asserts four causes of action—civil RICO, fraud, mental anguish, and unjust enrichment—against all of the defendants. Nix asserts a defamation claim against two defendants, AP and Rumberg; an aiding and abetting claim against ESPN, AP, USA Today, Maxey, Britton, Muscle Milk, and Klean Athlete; a claim under the Lanham Act against Gatorade, NSF, Blue-Emu, Informed Choice, and several MLB clubs; a claim for vicarious liability against Gatorade, NSF, and Britton; and a claim for tortious interference against the League and the Association.

The court first addresses Nix's claims against all defendants.

28

i.    **Claims Against All Defendants**

Nix asserts four claims against all of the defendants: fraud, civil RICO, mental anguish, and unjust enrichment.  Each fails for a myriad of reasons.

First, Nix alleges that the defendants have committed fraud because the League has a policy banning all forms of IGF-1, but "has never suspended any player for use, promotion, distribution, or being part of a sale in relation to IGF-1."  (Docket Entry No. 1, at 84).  Nix alleges that the League "lied" to the press about its IGF-1 ban, and "[t]he AP, ESPN, and USA Today and their agents furthered the fraud as they informed Florida's Southern District and the Eleventh Circuit that all forms of IGF-1 are banned in baseball, despite knowing that the MLB sponsors animal derived protein products and MLBPA members promote these items through interstate commerce."  (*Id.*, at 84–85).  Nix alleges that the "MLB Clubs continued to provide the players with food and supplements that contain IGF-1, furthering the fraud scheme in having a policy that states IGF-1 is banned," and that the Nutrition Company Defendants "played along with the fraud as they each knew of the MLB Joint Drug Agreement and the substances which are banned, yet continued to promote their testing company and/or products as free of banned substances, along with using the logos and likeness of MLB, MLB Clubs, MLBPA, and MLBPA members."  (*Id.*, at 86).

Nix has failed to plead a fraud claim.  To state a fraud claim, Nix must allege that "(1) the defendant made a material representation that was false"; (2) the defendant knew the representation was false or made it recklessly as a positive assertion with any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan*

*Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (2018) (internal citations and quotation marks omitted).[5]

Nix has not alleged that he relied on any statement by any of the defendants.  Even if Nix has alleged that the defendants made a false statement—that the League bans IGF-1, when it in fact does not—Nix has not alleged that he relied on that statement.  In fact, Nix alleges the opposite.  Nix alleges that despite the stated ban, he produced and sold a natural supplement derived from antler tissue naturally shed by deer and elks that contained IGF-1.  Nix does not allege that he purchased any of the Nutrition Company Defendants' products because they advertised that they were "free of banned substances," or that he relied on that statement in purchasing any of their products.  Nix alleges that he purchased products knowing that the representations about them were false.  Nix's fraud claim fails.

Nix's civil RICO claim fails for similar reasons.  Nix alleges that the defendants "jointly conspired" to have "a joint policy . . . ban[ning] all forms of IGF-1," even though the "MLB does not at all enforce this ban except for against [Nix]."  (Docket Entry No. 1, at 80).  Nix alleges that "[e]ach Defendant in their [sic] own capacity engages in use, distribution, promotion, being part of a sale, or representing IGF-1 in a manner to which it may be listed on the MLB banned list, but in no way is this truly enforced or even recognized as a banned performance enhancing substance

---

[5] The parties agree that Texas state law applies to Nix's claims of fraud, mental anguish, unjust enrichment, aiding and abetting, tortious interference, and vicarious liability.  Absent a contractual choice of law provision, "this court applies Texas law unless a conflict exists between Texas law and that of the other proposed state."  *Quicksilver Resources, Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 951 (S.D. Tex. 2011).  The Media Defendants argue that this court should apply New York law only to Nix's defamation claim.  For reasons explained in this opinion, the court agrees that New York law applies to that claim.

in the natural form."  (*Id.*, at 80–81).  Nix alleges that "fraud is the underlying cause of action under Civil RICO."  (*Id.*, at 83).

These allegations fail to state a RICO claim.  To state a RICO claim, a plaintiff must allege "(1) the identification of a person, who, (2) through a pattern of racketeering activity, (3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise."  *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016) (quoting *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1996)).  Nix has not alleged a "pattern of racketeering activity," which "requires at least two acts of racketeering activity."  18 U.S.C. § 1961(5).  Nix has not alleged "at least two acts of racketeering activity."  Instead, he alleges only that "fraud is the underlying cause of action under Civil RICO."  (Docket Entry No. 1, at 83).  But, for the reasons noted above, Nix has failed to state even a fraud claim.  Nix has failed to allege any plausible racketeering activity necessary to state a civil RICO claim.

Nix's unjust enrichment claim similarly fails.  "Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain."  *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App. 2013).  "A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage.  When a person has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon that person to restore the benefits to the plaintiff."  *Id.*

Nix alleges that "[e]ach Defendant unjustly enriched themselves [sic] based on the fact that each was unwilling to follow the MLB rule that IGF-1 is banned in baseball."  (Docket Entry

No. 1, at 96).  Nix has not plausibly alleged, however, that the defendants have obtained a benefit through "fraud, duress, or the taking of an undue advantage."  Nix has also not alleged that *he* conferred a benefit on the defendants that should be rightfully restored to him.  *See David O. Kemp, P.C. v. Nationwide Agribusiness Ins. Co.*, No. 3:11-CV-745-N, 2012 WL 13019688, at *3 (N.D. Tex. June 12, 2012) ("Kemp conferred no benefit on HSB, as required under an unjust enrichment theory, and thus, his purported claim for unjust enrichment fails.").

Finally, Nix asserts a claim of "mental anguish."  But mental anguish is not a claim recognized by Texas law.  A plaintiff may receive damages for mental anguish based on the "defendant's breach of some other duty imposed by law."  *Boyles v. Kerr*, 855 S.W.2d 593, 596 (Tex. 1993); *see also SCI Tex. Funeral Servs. v. Nelson*, 540 S.W.3d 539, 543 (Tex. 2018).  Nix has not plausibly alleged that any defendant breached a duty imposed by law to entitle him to mental anguish damages, and Nix cannot allege a standalone claim for mental anguish.

### ii.    Claims Against Some Defendants

Nix asserts a Lanham Act claim against some of the Nutrition Company Defendants—Gatorade, NSF, Blue-Emu, and Informed Choice—and some of the MLB Clubs.  Nix alleges that these defendants engaged in false advertising by stating that their products, or products that they promoted, were safe and free of banned substances even though they contain IGF-1.

Section 43(a)(1)(B) of the Lanham Act forbids false descriptions of representations in the advertising and sale of goods and service.  "A prima facia case of false advertising under section 43(a) requires the plaintiff to establish: (1) A false or misleading statement of fact about a product; (2) such statement either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) The deception is material, in that it is likely to influence the consumer's purchasing

decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue." *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

Nix has failed to include allegations about the consumers of the defendants' products that could support an inference that the defendants' alleged statements had the capacity to "deceive a substantial segment of potential consumers" or were "likely to influence the consumer's purchasing decisions." Nix has not alleged that *he* was injured as a result of false advertising. Nix alleges that he purchased products to test them for IGF-1, but he does not allege that he was a consumer who relied on any false advertising when purchasing products. As a result, Nix's Lanham Act claim fails.

Nix asserts a defamation claim against two defendants, Associated Press and Rumberg. Nix's defamation claim is based on an email produced during discovery in another action, about Nix's first defamation action against Associated Press, ESPN, and USA Today. Nix alleges that "Defendant Rumberg, via his AP.org email, while working in the capacity of Defendant AP falsely stated via an email sent to MLB's Commissioners Office, stating: '*Not sure you even remember helping me with a few things on a defamation case involving <u>PED producer Neiman Nix</u> but wanted to let you know his suit was tossed out of court.*'" (Docket Entry No. 1, at 87 (emphasis in original)). Nix alleges that Rumberg's statement that Nix is a "PED producer"—PED standing for "performance enhancing drug"—is false, because "Nix's products <u>were not illegal drugs</u>, but were instead banned substances." (*Id.*, at 88).

The parties dispute whether New York or Texas law governs Nix's claim. Under New York law, Nix's claim is barred by the statute of limitations; under Texas law, it is not. Although

33

the statute of limitations in both states is one year, under Texas law, the statute of limitations did not begin to run until Nix discovered the email message in 2021. New York has no similar discovery exception.

Nix's defamation claim is governed by New York law. The conduct allegedly causing Nix's injury occurred in New York. Rumberg resides in New York, the Associated Press is headquartered in New York, and the MLB Commissioner's Office is in New York. (Docket Entry No. 25, at 20). The allegedly defamatory email was sent and received in New York. The email was about a lawsuit that Nix brought against the Associated Press, ESPN, and USA Today, for publishing an allegedly defamatory statement that was used against Nix in his New York lawsuit and allegedly obstructed Nix's attempt to expand his business to Manhattan. Although Nix alleges that he resided in Texas in 2018 when the email was sent, and that he resided in Texas in 2021 when he discovered the email, Nix also alleged in another lawsuit that he was domiciled in Florida at the time of the email. *See Nix v. ESPN, Inc.*, No. 1:18-cv-22208-UU, 2018 WL 8802885, at *4 n.1 (S.D. Fla. Aug. 30, 2018); *see also Nix v. ESPN, Inc.*, 772 F. App'x 807, 811 (11th Cir. 2019) (noting that Nix had "attached an affidavit . . . alleging that [he] had been domiciled in Florida at all relevant times," but that "Nix had alleged permanent residence in Texas when he filed suit against the MLB in the Southern District of New York, suggesting that he might be lying about his domicile in at least one of his suits"). Regardless, even if Nix resided in Texas when the allegedly defamatory email was sent, the court finds that choice of law considerations weigh in favor of applying New York law.

New York's statute of limitations for defamation claims is one year. N.Y. C.P.L.R. § 215(3); *Arvanitakis v. Lester*, 44 N.Y.S.3d 71, 72 (2016) ("A cause of action alleging defamation

is governed by a one-year statute of limitations, and accrues when the allegedly defamatory statements are originally uttered."). The challenged email was sent on September 6, 2018. This action was filed in December 2021. The one-year statute of limitations applies even if Nix alleges that he was unaware of the email until 2021. *See Latulas v. Spotcrime.com*, No. 17-cv-00802, 2021 WL 7629393, at *1 (W.D.N.Y. Nov. 18, 2021) ("[T]here is no 'discovery rule' exception to New York's one-year statute of limitations"); *Teneriello v. Travelers Companies*, 641 N.Y.S.2d 482, 483 (1996) ("[T]he action accrued when the statements were originally published . . . , not upon plaintiff's discovery of the statements two years later."); *see also id.* ("Even assuming, arguendo, that the statements were republished . . . when defendants provided the documents containing them to plaintiff's attorneys during discovery in an unrelated action, plaintiff is deemed to have consented [to republication] because the documents were provided at her request."). This reason alone bars Nix's defamation claim.

Even if Nix's claim was not barred by limitations, he fails to state a defamation claim. "In New York, a plaintiff must establish five elements to recover for defamation: (1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability." *Chau v. Lewis*, 771 F.3d 118, 126–17 (2d Cir. 2014). "The question of 'whether the statements complained of are reasonably susceptible of a defamatory connotation, thus warranting submission of the issue to the trier of fact must be resolved in the first instance by the court." *Public Relations Soc. of Am., Inc. v. Road Runner High Speed Online*, 799 N.Y.S.2d 847, 852 (Sup. Ct. 2005) (quoting *Silsdorf v. Levine*, 59 N.Y.2d 8, 12–13 (1983)). "The alleged defamatory words 'must be construed in the context of the entire statement or publication as a whole, tested against the understanding of

the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction.'" *Id.* (quoting *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985)).

Rumberg sent an email to the MLB Commissioner's Office after Nix's original defamation lawsuit was dismissed.  In that lawsuit, Nix sued ESPN, Associated Press, and USA Today, alleging claims of defamation and intentional infliction of emotional distress.  *Nix v. ESPN, Inc.*, 1:18-cv-22208-UU (S.D. Fla.), ECF No. 1-2.  That civil action "ar[o]se[] out of a news article published or republished by [the] three media companies reporting on a lawsuit that [Nix] filed in the Southern District of New York." *Id.*, ECF No. 27.  "The articles all contained the following statement about Nix's tortious interference suit [against the MLB]: 'The suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances.'"  *Id.*  That "statement g[a]ve[] rise to [Nix's] defamation claim."  *Id.*

The Southern District of Florida, affirmed by the Eleventh Circuit, dismissed Nix's defamation claim on several grounds, including that the statement the newspapers published was true and not defamatory, because "Nix admitted to selling IGF-1, and it was a banned substance." *Id.*, ECF No. 27, at 12.  The court noted that Nix had admitted in an earlier lawsuit in the Southern District of New York that IGF-1 was listed as "number 68 on the list of prohibited performance enhancing substances," and that "[o]ne of the main ingredients used by Nix . . . c[a]me from [IGF-1]." *Id.*, at 11.

Nix takes issue with Rumberg's description of him as a "PED producer," arguing that he never produced performing-enhancing drugs, but instead sold products containing performance-

enhancing substances.  Rumberg's email must, however, "be reviewed as a whole and the context in which it [was] written."  *Public Relations Soc. of Am., Inc.*, 799 N.Y.S.2d at 852.  Rumberg was clearly discussing the dismissal of the lawsuit in which the court held that Nix's defamation claim failed because "in his complaint in the Southern District of New York, Nix did admit to selling IGF-1."  *Nix v. ESPN, Inc.*, 1:18-cv-22208-UU (S.D. Fla.), ECF No. 27, at 12.  Rumberg sent this email to the MLB Commissioner's Office, which was aware of Nix's defamation lawsuit, because the Office "help[ed] [Rumberg] with a few things on [the] defamation case."  Here, a reasonable reader would understand Rumberg's reference to Nix as a "PED producer" as a description for the federal court's finding that Nix had admitted to selling products that contained banned performance-enhancing substances, not for the defamatory reading that Nix contends.  This claim too fails.

Nix also alleges a claim for tortious interference against the League and Association.  Nix alleges that the League and Association's attorneys interfered with his relationship with his attorney, Paul Golden, by "threaten[ing] sanctions against Golden if he were to take on Nix's California appeal in DNA/Nix v. MLB/MLBPA."  (Docket Entry No. 1, at 93).  Nix alleges that the League's attorney emailed Golden stating, "Should any other harassing litigation be filed we will also ask the Court to hold you and your clients accountable to the fullest extend under the law."  (*Id.*, at 94).  "Golden informed Nix that this made him feel skittish and or nervous as no attorneys had ever threatened him like this . . . therefore Golden resigned from representing Nix based on the interference of both MLB and the MLBPA."  (*Id.*).

It is unclear from Nix's allegations whether Golden was already Nix's attorney or considering serving in that role.  To succeed on a claim for tortious interference with an ongoing,

or prospective, business relationship, Nix must allege conduct that was "independently tortious or unlawful," meaning that he "must prove that the defendant's conduct would be actionable under a recognized tort." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).  Even assuming that an attorney-client relationship is a "business relationship" for a tortious interference claim—a proposition Nix provides no case law to support—Nix has not alleged conduct that was "independently tortious or unlawful."  The League informed Nix's attorney that it planned to move for sanctions if Nix filed an appeal of the very lawsuit that the League and Association had already received sanctions for in the Northern District of California.  This is not tortious conduct.

Nix also alleges that the Association "tortiously interference with [his] ability to work with prospective clients," by telling Association agents and members "not to associate with [Nix.]" (Docket Entry No. 1, at 64–65).  Nix alleges that he had "a more than reasonable probability" or "enter[ing] into a business relationship with other baseball agents."  (*Id.*, at 68).

As with Nix's tortious interference claim regarding his prospective attorney, Nix has not demonstrated how the Association's conduct is "independently tortious or unlawful."  Merely informing, or even "demanding," that baseball agents "stop speaking with [Nix]" is not tortious conduct.  (Docket Entry No. 1, at 67–68).  To succeed on a claim for tortious interference with a prospective business relationship, Nix must allege and prove that "there was a reasonable probability that [he] would have entered into a business relationship with a third party." *Coinmach Corp. v. Aspenwood Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).  Nix has not even pleaded a "reasonable probability" that he would have entered into any business relationship.  "To sufficiently plead the reasonable probability element," Nix must "describe the specifics of a proposed agreement that never came to fruition." *Pureshield, Inc. v. Allied Bioscience, Inc.*, No

38

4:20-CV-734-SDJ, 2021 WL 4492861, at *3 (E.D. Tex. Sept. 30, 2021) (citation omitted).  Nix has not alleged a specific proposed agreement, or identified a specific coaching position that fell through.  Instead, he alleges generally that he was "far more qualified" than others who received coaching jobs, and that he might have received a coaching job but for the Association's warnings about him.  These allegations are insufficient to sufficiently plead the reasonably probability element of a tortious interference with prospective business relations claim.

Finally, Nix asserts an aiding and abetting claim against ESPN, AP, USA Today, Maxey, Britton, Muscle Milk, and Klean Athlete.  Like Nix's mental anguish claim, Nix's aiding and abetting claim fails because Texas law does not recognize a claim of aiding and abetting.  *See In re DePuy Orthopaedics, Inc. v. Pinnacle Hip Implant Prod. Liabl. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018); *Taya Agricultural Feed Mill Co. v. Byishimo*, Case No. H-21-3088, 2022 WL 103557, at *4 (S.D. Tex. Jan. 11, 2022).  Nix's "vicarious liability" claim against Gatorade, NSF, and Britton similarly fails because "vicarious liability is not an independent cause of action."  *Miller v. Target Corp.*, H-19-1539, 2020 WL 2375128, at *2 (S.D. Tex. May 11, 2020) (citing *Crooks v. Moses*, 138 S.W.3d 629, 637 (Tex. App. 2004)).  Additionally, because none of Nix's claims survive, there is no basis for "vicarious liability" or "aiding and abetting" against any of these defendants.

### D.    Leave to Amend

Although leave to amend should ordinarily be freely given, an opportunity to amend is not appropriate here.  Nix's claims fail for reasons that would make amendment futile.  Nix has already been deemed a vexatious litigant in Northern District of California for his "extensive litigation history" that is "characterized by a dismissal followed by a new suit in a different venue with a

slightly new cause of action challenging the ban." *DNA Sports Performance Lab, Inc. v. Major League Baseball*, Case No. 3:20-cv-00546-WHA, (N.D. Cal. Apr. 12, 2022), ECF No. 133 (quoting ECF No. 66). That district court has described Nix's lawsuits "as abusive and [a] misuse of the judicial system," and found that Nix's "frivolous lawsuits have served primarily to harass the league and [the] union." The court finds that this lawsuit is the same, and similarly declares Nix a vexatious litigant. Leave to amend is denied.

### E.    Sanctions

The League Defendants and the Association Defendants have moved for monetary sanctions, a declaration that Nix is a vexatious litigant, and an injunction prohibiting Nix from suing them on IGF-1 related claims in any future state or federal court proceeding. (Docket Entries No. 55, 58).

The League and Association Defendants seek monetary sanctions in the form of attorneys' fees, arguing that Nix has pursued his claims in bad faith and filed a patently frivolous lawsuit. "Federal courts . . . possess 'inherent power' to assess fees as sanctions when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Moench v. Marquette Transp. Co. Gulf-Inland, L.L.C.*, 838 F.3d 586, 595 (5th Cir. 2016) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "Under this test, sanctions are warranted when a party 'knowingly or recklessly raises a[n objectively] frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *Id.* (quoting *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 561 & n.4 (5th Cir. 2015)).

The Northern District of California has already determined that "Nix's frivolous lawsuits have served primarily to harass the league and union," that "dismissal alone will not deter" Nix

40

from "filing further baseless and harassing suits," and that "Nix's litigation *modus operandi*" is to bring "a new suit in a different venue with a slightly new cause of action challenging the [IGF-1] ban," each time his lawsuit is dismissed. *DNA Sports Performance Lab, Inc. v. Major League Baseball*, Case No. 3:20-cv-00546-WHA (N.D. Cal. Apr. 12, 2022), ECF No. 133. The Northern District of California has awarded sanctions, declared Nix a vexatious litigant, and issued an injunction prohibiting Nix from filing further lawsuits relating to IGF-1 in the Northern District of California without obtaining prior leave from the court.

A New York state court similarly granted Major League Baseball's motion for sanctions after Nix and his company, DNA Sports, sued the League, the Commissioner, and several League employees alleging misconduct during the 2013 investigation of Nix's company, and then moved to reargue after the court dismissed his complaint. The court explained:

> In light of the history of plaintiffs' continuous and numerous litigations here and in Florida against defendants based on the identical allegations and claims, the majority of which have either been voluntarily or judicially dismissed, defendants show that the motion to reargue is intended to prolong the resolution of this case and/or to harass them.

(Docket Entry No. 57-13, at 5).

This lawsuit is further proof of those findings. Nix's claims against the League and Association Defendants are efforts to recast the same grievance—that the League allegedly unfairly enforced the IGF-1 ban against him—under new legal theories, against an even wider range of defendants, even though he has repeatedly failed to succeed on similar arguments raised in lawsuits over the past ten years. Despite being subject to sanctions in the Northern District of

California that he has not paid, Nix initiated this lawsuit.  This history indicates that Nix's behavior will continue in the future, and that dismissal alone is not enough to deter.

Nix's conduct in this lawsuit, and others, show an intent to harass.  When counsel for the League offered to waive service on behalf of all League Defendants if Nix agreed to an extended, shared deadline for these defendants to answer or otherwise respond to Nix's complaint, Nix refused, without any stated reason.  This court granted the requested extension, despite Nix's objections.  (Docket Entry No. 12).

Nix's conduct preceding this lawsuit also shows an intent to harass.  For example, in 2018, Nix contacted Tim Maxey—a strength and conditioning coordinator for the League—seeking information for an affidavit that he could use against the League in his then-pending litigation. When Maxey refused, Nix "became agitated," "demanded that [Maxey] prepare a written affidavit for him," "threatened to depose [Maxey], and "threatened to 'name' [him] personally in his upcoming litigation against the MLBPA."  (Docket Entry No. 55-7).  Nix then named Maxey in this lawsuit.

While the court sees ample reason to award monetary sanctions to the League and Association Defendants, the court is also aware that Nix cannot and has not paid sanctions due to other courts, and will be unable to pay added sanctions this court might issue.  Nix has represented to the Northern District of California that he does not have money to pay sanctions.  (*See* Docket Entry No. 36-1, at 6 ("Neither I nor plaintiff DNA Sports Performance Lab, Inc., have or have had sufficient funds to pay the amount of sanctions ordered by the Court.")).  The Northern District of California court has found that "Nix live[s] out of his car" and that "Nix lives on the charity of friends and family."  *DNA Sports Performance Lab, Inc. v. Major League Baseball*, Case No. 3:20-

cv-00546-WHA, ECF. No. 93.  Nix has yet to pay the sanctions he owes in the Northern District of California.

Injunctive relief is more appropriate.  *See Day v. Allstate Ins. Co.*, 788 F.2d 1110 (5th Cir. 1986) (stating that when monetary sanctions are ineffective in deterring vexatious litigation, enjoining such filings can be considered).   A court can impose a prefiling sanction on a vexatious litigant when the following factors weigh in favor of doing so:

> (1) the party's history of litigation, in particularly whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008) (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)).

These factors are all met here.  As detailed in this opinion, this is Nix's ninth lawsuit, at least six of which were against the League and its affiliates on the same or similar allegations. Nix's claims lack merit.  This court agrees with other courts to consider Nix's lawsuits that his claims are duplicative, baseless, and intended to harass the defendants.  They are a burden on the courts, as well as on the parties who must defend them.  In this case, Nix raised nine claims against 45 defendants in a 100-page complaint, requiring the defendants and this court to expend considerable effort to defend and resolve the claims.

Nix has been told that his conduct is sanctionable. He is currently subject to monetary sanctions and a prefiling order in the Northern District of California.  Monetary sanctions have so far proven inadequate to prevent Nix from filing additional lawsuits, and would similarly be

"fruitless" here "and even countereffective in that they would [likely] lead to yet further protracted litigation." *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984).

Nix has stated that, "[a]t the heart of each of [his] related lawsuits in respect to IGF-1 . . . [he] has been trying to clear [his] name and restore [his] reputation." (Docket Entry No. 57-6, at 3–4). The court has reason to believe that Nix will continue to file lawsuits in an effort to receive the result that he believes he is entitled, but which the law does not support. This future litigation "would be repetitive, vexatious, previously resolved, and meritless." *Terra Partners v. Rabo Agrifinance, Inc.*, 504 F. App'x 288, 291 (5th Cir. 2012). An injunction is necessary to prevent or respond to such filings.

That leaves the court to decide the scope of the injunction. The League and the Association Defendants ask the court for a nationwide state and federal court preclusion order that would prevent Nix from filing any lawsuit related to IGF-1 absent advance permission from this court. The court finds that this is too expansive, at least for now.

First, the court is wary, and hesitant of its authority, to issue an injunction that stretches to the state courts. Authority under the All Writs Act, which provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. § 1651, is limited by the Anti-Injunction Act, 28 U.S.C. § 2283, which generally bars federal courts from interfering with state-court litigation. The Anti-Injunction Act "bars only 'stays of suits already instituted' but does not 'preclude injunctions against the institution of state court proceedings.'" *Hill v. Washburne*, 953 F.3d 296, 308 (5th Cir. 2020) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 485 n.2 (1965)); *see also Newby v. Enron Corp.*, H-01-3624, 2002 WL 31989193, at *4 (S.D. Tex. Feb. 15, 2002)

44

("[T]he Anti Injunction Act does not curtail the Court's power to limit the commencement of future state court litigation."). But even if the court is not restricted by the Anti-Injunction Act, "[a]buse of state judicial processes is not *per se* a threat to the jurisdiction of Article III courts and does not *per se* implicate other federal interests." *Baum*, 513 F.3d at 191 (quoting *In re Martin-Trigona*, 737 F.2d at 1263); *see also id.* at 192 (holding that "the district court abused its discretion in extending the pre-filing injunction to filings in state courts, state agencies, and [the Fifth Circuit]."); *but see Hill*, 953 F.3d at 310 (affirming a "future-looking . . . injunction" that prohibited the plaintiff "from contesting the will in state (as well as federal) court"). This suggests that federal courts should hesitate before issuing injunctive relief that may impact future state court proceedings.

Second, while the Fifth Circuit has appeared to allow prefiling orders that apply to federal district courts nationwide, *see Clark v. Mortenson*, 93 F. App'x 643, 654, 655 (5th Cir. 2004) ("If the [plaintiffs] persist in a widespread practice that is deserving of" a "broader injunction[] prohibiting any filings in any federal court without leave of that court," "then such an injunction could be appropriate"), the court notes that federal courts of appeals have reached differing conclusions on this issue. The Tenth Circuit has held, for example, that while "it is appropriate for the District of Colorado to impose filing restrictions that include other federal district courts within the Tenth Circuit, . . . it is not appropriate to extend those restrictions to include federal district courts outside of this Circuit. It is not reasonable for a court in this Circuit to speak on behalf of courts in other circuits in the country; those courts are capable of taking appropriate action on their own." *Sieverding v. Colorado Bar Ass'n*, 469 F.3d 1340, 1344 (10th Cir. 2006). It

45

would be odd if this court could impose an injunction that would be enforceable in the district courts in the Tenth Circuit, when those courts could not do the same to courts in this circuit.

"[A]n 'injunction against future filings must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants.'" *Baum*, 513 F.3d at 190 (citation omitted). Nix was not subject to any prefiling preclusion order when he filed this lawsuit. It was only after this lawsuit that the Northern District of California issued its prefiling preclusion order. There has not been an opportunity to assess whether narrower injunctive relief is an effective deterrent. The court also believes that broader injunctive relief may serve only to embroil the defendants and Nix in protracted criminal contempt proceedings in this court if and when Nix violates the court's prefiling order, a result that would not benefit anyone and would take up limited court resources and time.

At this time, the court orders that Nix may not file any new pleadings, cases, or motions in the Southern District of Texas, all divisions, against the League and Association Defendants unless he obtains in advance permission to do so from the Chief Judge of the Southern District or her delegee.[6] The court also orders Nix to file a copy of this opinion with any filing that he makes in any other court. The court does not currently apply this injunctive relief to the Nutrition Company

---

[6] Those defendants are Major League Baseball; Major League Baseball Players Association; Zack Britton; MLB Commissioner Robert D. Manfred, Jr.; Tim Maxey; Angels Baseball LP; Athletics Investment Group LLC d/b/a/ Oakland Athletics Baseball Company; Atlanta National League Baseball Club, LLC; AZPB Limited Partnership; Baltimore Orioles Limited Partnership; The baseball Club of Seattle LLLP; Boston Red Sox Baseball Club Limited Partnership; Chicago Cubs Baseball Club, LLC; Chicago White Sox, Ltd.; Cleveland Guardians Baseball Company, LLC; Colorado Rockies Baseball Club, Ltd.; Detroit Tigers, Inc.; Houston Astros, LLC; Kansas City Royals Baseball Club, LLC; Los Angeles Dodgers LLC; Marlins Teamco LLC; Milwaukee Brewers Baseball Club, Limited Partnership; Minnesota Twins, LLC; New York Yankees Partnership; Padres L.P.; Pittsburgh Associates; Rangers Baseball LLC; Rogers Blue Jays Baseball Partnership; San Francisco Giants Baseball Club LLC; St. Louis Cardinals, LLC; Sterling Mets L.P.; Rays Baseball Club, LLC; The Cincinnati Reds LLC; The Phillies; and Washington Nationals Baseball Club, LLC.

Defendants and the Media Defendants, because neither group has asked the court for such relief. The court cannot *sua sponte* impose a prefiling injunction as to future lawsuits against these defendants without notice and a hearing. *See Qureshi v. United States*, 600 F.3d 523, 526 (5th Cir. 2010). If these parties want the court to issue similar injunctive relief, these parties may move for this relief.

Nix is now subject to monetary sanctions in the Northern District of California that he has not paid, a prefiling preclusion order in the Northern District of California, and a prefiling preclusion order in this court. Both this court and the Northern District of California have declared Nix a vexatious litigant. If Nix continues to engage in this vexatious behavior, the court will consider different sanctions. *See Baum*, 513 F.3d at 189 (a court may modify an existing injunction to deter vexatious filings with notice and a hearing).

## IV.    Conclusion

The defendants' motions to dismiss, Docket Entries Nos. 15, 20, 41, 56, 67, are granted. Nix's claims are dismissed with prejudice. The League Defendants' and Association Defendants' motions for sanctions, Docket Entries No. 55, 58, are granted to the extent of deeming Nix a vexatious litigant who frequently and repeatedly pursues baseless litigation for harassment. Nix may not file new pleadings, cases, or motions in the Southern District of Texas, all divisions, against the League and Association Defendants, unless he obtains advance permission to do so from the Chief Judge of the Southern District Texas or her delegee. The court also orders Nix to file a copy of this opinion with any filing that he makes in any other court. To the extent the parties seek financial sanctions, the court denies that request without prejudice based on the present record

47

of the large unpaid sanctions Nix owes in the Northern District of California.

SIGNED on June 13, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge